BAKER BOTTS L.L.P.
Wayne O. Stacy (*pro hac vice*)
wayne.stacy@bakerbotts.com
2001 Ross Avenue
Dallas, Texas 75201-2980
Telephone:    (214) 953-6500
Facsimile:    (214) 953-6503

Sarah J. Guske (SBN 232467)
sarah.guske@bakerbotts.com
Jeremy J. Taylor (SBN 249075)
jeremy.taylor@bakerbotts.com
L. May Eaton (SBN 298123)
may.eaton@bakerbotts.com
101 California Street
36th Floor, Suite 3600
San Francisco, California  94111
Telephone:    (415) 291-6200
Facsimile:    (415) 291-6300

DESMARAIS LLP
John M. Desmarais (*pro hac vice*)
jdesmarais@desmaraisllp.com
Michael P. Stadnick (*pro hac vice*)
mstadnick@desmaraisllp.com
Justin P.D. Wilcox (*pro hac vice*)
jwilcox@desmaraisllp.com
Jordan N. Malz (*pro hac vice*)
jmalz@desmaraisllp.com
Steven M. Balcof (*pro hac vice*)
sbalcof@desmaraisllp.com
230 Park Avenue
New York, NY  10169
Telephone:    (212) 351-3400
Facsimile:    (212) 351-3401

Attorneys for Defendant
CISCO SYSTEMS, INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| STRAIGHT PATH IP GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> CISCO SYSTEMS, INC., <br><br> Defendant. | Case No. 3:16-cv-03463-WHA <br><br> **DEFENDANT CISCO SYSTEMS, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT AS TO ALL CISCO PRODUCTS** <br><br><br> Honorable Judge William H. Alsup <br> Hearing Date:  November 9, 2017 <br> Hearing Time: 8:00 AM |

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................1

II.   BACKGROUND ...................................................................................2

    A.   The Patents-in-Suit and Asserted Claims Are Directed to a "Query" That Asks Whether Devices Are Connected or Online.....................................2

    B.   *Inter Partes* Review of the Asserted Claims and Federal Circuit Decisions..........6

        1.   The Sipnet IPR And Federal Circuit Appeal .................................6

        2.   The Samsung et al. IPRs And Federal Circuit Appeal................................7

    C.   Straight Path's Letter Requesting Permission to Seek Summary Judgment Based Upon The "Is Connected" terms ...........................................8

    D.   The Accused Products..............................................................9

    E.   The Functionality Of The Accused Products.............................................9

III.  LEGAL STANDARDS ..........................................................................14

    A.   Summary Judgment .............................................................14

    B.   Noninfringement ...............................................................14

IV.   ARGUMENT: SUMMARY JUDGMENT OF NONINFRINGEMENT SHOULD BE GRANTED BECAUSE THE ACCUSED CISCO PRODUCTS DO NOT PRACTICE THE "IS CONNECTED" ELEMENT REQUIRED BY EACH ASSERTED CLAIM. ...........................................................15

    A.   "Is Connected" Requires The Server To Determine Online Status Of The Callee At the Time of the Query..............................................15

    B.   Straight Path Relies Upon The 200 OK Signal As The Claimed Determination Of On-Line Status ........................................16

    C.   The 200 OK Message Does Not Determine The Online Status Of The Callee At the Time of the Alleged Query; In Fact, It Does Not Even Exist At The Time Of The Alleged Query, And Is Generated Only After A Call Rings And Is Answered. ......................................................17

V.    CONCLUSION....................................................................20

## <u>TABLE OF AUTHORITIES</u>

**<u>Pages</u>**

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)............................................................ 14

*Berger v. Rossignol Ski Co., Inc.,*
   No. 05-02523-CRB, 2006 WL 1095914 (N.D. Cal. Apr. 25, 2006) ..................................... 15

*Boss Control, Inc. v. Bombardier Inc.,*
   410 F.3d 1372 (Fed. Cir. 2005) ........................................................................................... 15

*EON Corp IP Holdings LLC v. Cisco Systems Inc.,*
   36 F. Supp. 3d 912 (N.D. Cal. 2014) ................................................................................... 14

*Netword, LLC v. Centraal Corp.,*
   242 F.3d 1347 (Fed. Cir. 2001) ........................................................................................... 15

*Olsen v. Idaho State Bd. of Med.,*
   363 F.3d 916 (9th Cir. 2004) ............................................................................................... 14

*Playtex Prods., Inc. v. Procter & Gamble Co.,*
   400 F.3d 901 (Fed. Cir. 2005) ............................................................................................. 15

*Samsung Elecs. Co., Ltd., v. Straight Path IP Group, Inc.,*
   No. 2016-2004, 2017 WL 2705311 (Fed. Cir. June 23, 2017)........................................ passim

*Sipnet EU S.R.O.,*
   IPR2013-00246, Final Written Decision, ECF 73 (PTAB May 23, 2016).............................. 7

*Straight Path IP Group, Inc. v. Sipnet EU S.R.O.,*
   806 F.3d 1356 (Fed. Cir. 2015) ........................................................................................ passim

*TVIIM, LLC v. McAfee, Inc.,*
   851 F.3d 1356 (Fed. Cir. 2017) ........................................................................................... 21

*Union Carbide Corp. v. American Can Co.,*
   724 F.2d 1567 (Fed. Cir. 1984) ........................................................................................... 14

**Rules**

Fed. R. Civ. P. 56(c) ................................................................................................................ 14

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT** Defendant Cisco Systems, Inc. ("Cisco") respectfully moves for summary judgment that the products accused of infringement by Plaintiff Straight Path IP Group, Inc. ("Straight Path") in this case do not infringe the ten asserted claims of U.S. Patent Nos. 6,009,469 (the "'469 Patent"); 6,108,704 (the "'704 Patent"); 6,131,121 (the "'121 Patent"); and 6,701,365 (the "'365 Patent") (collectively, the "Patents-in-Suit").  Subject to the Court's availability, the motion will be heard on November 9, 2017 at 8:00 AM, before the Honorable Judge William Alsup pursuant to the Court's scheduling order regarding dispositive motions.  (D.I. 26 at 4.)  Cisco bases its motion on the contemporaneously filed memorandum of points and authorities and supporting evidence set forth in the declaration of Steven Balcof and any subsequently filed supplemental briefing and accompanying papers, the pleadings and papers filed in this action, and any other arguments, evidence, and matters submitted to the Court, at the hearing or otherwise.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Cisco moves for summary judgment that the accused products do not infringe the ten asserted claims of the Patents-in-Suit:  '704 Patent claims 1, 6, 11, 22, and 39; '469 Patent claims 3, 6, and 9; '365 Patent claim 3; and '121 Patent claim 10 (collectively, the "Asserted Claims").  Cisco's products do not infringe the Asserted Claims because the products do not determine whether the phone to be called is connected to a computer network—whether it is "online"—as required by the "is connected" and counterpart limitations found in each of the Asserted Claims.  Under the Federal Circuit's construction of the "is connected" and counterpart limitations, Straight Path must show that the accused products determine whether an intended call recipient's phone is online *before a call is made*.  But rather than check on-line status of the phone to be called, as required by the claims and the Federal Circuit's construction, Cisco's accused products simply dial the number and try to make the call.  In fact, the signal that Straight Path relies upon as allegedly indicating the on-line status of a phone to be called, the 200 OK message, is not even generated *until after the phone rings and the call is answered* by the party being called.

Straight Path's reliance on a message sent after the call is answered cannot be squared with its own expert's testimony when distinguishing the prior art in this case nor with its own arguments regarding the "is connected" limitation during *inter partes* review proceedings regarding the Asserted Claims before the Patent Trial and Appeal Board ("Board") and resulting Federal Circuit appeals.  There, Straight Path argued that the Asserted Claims required a "mechanism by which [the] server may, ***at the time a first computer seeks to communicate with a second computer[,]*** . . . determine whether that second computer is ***actually*** connected to a network." Ex. 8[1] at 19 (Brief of Straight Path, *Straight Path IP Group, Inc., v. Sipnet EU S.R.O.*, No. 2015-1212 D.I. 23 (Fed. Cir. Mar. 13, 2015) ("Straight Path Br. in *Sipnet*")) (emphasis to "at the time" and "actually" in original; other emphasis added).[2]

Because no reasonable juror could find that Cisco's accused products infringe the Asserted Claims, the Court should grant summary judgment of noninfringement.

## II.    BACKGROUND

### A.    The Patents-in-Suit and Asserted Claims Are Directed to a "Query" That Asks Whether Devices Are Connected or Online.

The Patents-in-Suit describe a protocol wherein devices such as phones (referred to as "processes" in the claims) are connected to a computer network and assigned a network protocol address (*e.g.*, an internet protocol ("IP") address) upon connection to the network.  *Samsung Elecs. Co., Ltd., v. Straight Path IP Group, Inc.*, No. 2016-2004, 2017 WL 2705311, at *1 (Fed. Cir. June 23, 2017).  Each process transmits its IP address to a connection server.  *Id.*  The connection server stores the network protocol addresses in a database "and, in so doing, establishes [that each process] is active and on-line."  *Id.*  To make a call or connection between two processes connected to a network, the Patents-in-Suit explain that a

> [caller] process sends a **query** to the connection server, which searches the database to determine whether a second processing unit is active and on-line.  If the callee is active and online, the connection server sends the IP address of the callee from the database to the first processing unit, i.e., performs a point-to-point

---

[1]  All exhibits are attached to the Declaration of Steven M. Balcof, concurrently filed, unless otherwise noted.

[2]  Emphasis has been added unless otherwise noted.

> Internet protocol communication. The first processing unit then directly establishes the point-to-point Internet communication with the callee using the retrieved IP address.

*Id.*

According to Straight Path's technical expert, Mr. Cole, the key improvement of the Patents-in-Suit over the prior art is determining whether a device is connected to or online in a computer network at the time of an intended call to that device.  Mr. Cole claims that this advance determination of whether a particular device is connected or online enables prospective callers to avoid the undesirable expense of placing an unsuccessful call:

> [T]he caller is not sure whether the callee is connected to the Internet or, if connected, what the callee's current network protocol address is. Instituting a call carries an expense in time and money as well as consuming network resources such as bandwidth. The caller could attempt to make a point-to-point connection using network protocol addresses from previous connections, or make an attempt using the most recent or most commonly successful network protocol address.  In each of these cases, though, ***the caller must pay for the call setup and the call teardown – even when the call fails because the intended recipient was not even connected to the network.   By implementing the "query" elements of the Asserted Claims, though, the caller can avoid cost and uncertainty whenever the callee device is not online***.

Ex. 6 at ¶ 65 (Cole Rebuttal Rep.).  *See also* Ex. 7 at 81:9-82:5 (Cole Tr.).

As shown in Figure 17A of the '469 Patent, the determination of the callee's (WebPhone 1538) online status occurs solely between the caller (WebPhone 1536) and the server (Global Server 1500) ***at the time of the query and before setting up the call***, as outlined in red:

1
2
3
4
5
6
7
8
9
10
11
12
13
14



**Figure 17A**

15

The '469 Patent explains this process:

16
17
18
19
20
21
22
23
24

> Webphone 1536 opens a socket to global server 1500 and transmits a <CONNECT REQ> packet. . . . Connection server 1512 of global server 1500 utilizes the value of the E-mail address specified in the <CONNECT REQ> packet to perform a one-to-one mapping in the on-line table 1516B to determine the current Internet Protocol address of the indicated callee. . . . Once this mapping is performed, the server 1500 transmits to WebPhone 1536 a <CONNECT ACK> packet . . . [which] includes the IP address of the callee . . . [but] if the selected callee is off line, global server 1500 transmits to WebPhone 1536 an <OFF LINE> packet to indicate that the desired party is not on-line. . . . Following the receipt of either a <CONNECT ACK> or an <OFF LINE> packet by WebPhone 1536, the socket to global server 1500 opened by WebPhone 1536 is closed . . . [and] [i]f the current Internet Protocol address of the callee was returned from global server 1500, the packet transmission sequence illustrated between WebPhones 1536 and 1538 of FIG. 17A transpires.

25

'469 Patent at cols. 23:63-24:21.  In other words, the "packet transmission sequence" (*i.e.*,

26

starting with the call setup at step 8) does not occur until ***after*** the callee's online status is

27

determined by the first process asking a query of the server, which had kept track of the online

28

status of the second process.

1   The parties agree that this query of on-line status functionality is captured in each

2   Asserted Claim through an "is connected," "on-line," "accessible," or "connected" limitation,

3   which the parties have agreed the Court should construe to have the same meaning. *See* Joint

4   Claim Construction Chart and Prehearing Statement at 1 (Feb. 7, 2017) (D.I. 32); Exs. 1-4

5   (highlighting added to the "is connected," "on-line," "accessible," and "connected" terms in each

6   Asserted Claim).

7   Claim 1 of the '704 patent is representative of the Asserted Claims with respect to the "is

8   connected" requirement of each Asserted Claim:[3]

> 1. A computer program product for use with a computer system, the computer system executing a first process and operatively connectable to a second process and a server over a computer network, the computer program product comprising:
> a computer usable medium having program code embodied in the medium, the program code comprising:
>
> > program code for transmitting to the server a network protocol address received by the first process following connection to the computer network;
> >
> > program code for transmitting, to the server, *a query* as to whether the second process *is connected to the computer network*;
> >
> > program code for receiving a network protocol address of the second process from the server, when the second process *is connected to the computer network*; and
> >
> > program code, responsive to the network protocol address of the second process, for establishing a point-to-point communication link between the first process and the second process over the computer network.

'704 Patent at Cl. 1.  Claim 1 describes a computer program product for a communication system

involving a "first process" (*e.g.*, a phone), a "second process" (*e.g.*, a second phone), and a

"server."  The "program code" transmits a "query" to the "server" to determine whether the

"second process" is connected to the network, and therefore, able to communicate.  If so, then

the server sends the "network protocol address of the second process" to the "first process," such

---

[3] The '704 Patent has the earliest filing date of the Patents-in-Suit of September 25, 1995.  The '365 Patent issued from a divisional of the '704 Patent's application and the two patents share same specification.  The '469 and '121 Patents share virtually the same specification and are continuations-in-part of the '704 Patent.  Straight Path relies on the '704 Patent's September 25, 1995 priority date for all its Asserted Claims.

that the "first process" can "establish[] a point-to-point communication link [with] . . . the second process over the computer network."

## B.   *Inter Partes* Review of the Asserted Claims and Federal Circuit Decisions

Straight Path touted the supposedly novel aspect of its online tracking functionality as reflected in the "is connected" limitations to distinguish the Asserted Claims from prior art in multiple *inter partes* review proceedings before the Board and in two related appeals to the Federal Circuit. *See, e.g.*, Ex. 8 at 41–42 (Straight Path Br. in *Sipnet*).

### 1.   The Sipnet IPR And Federal Circuit Appeal

On October 11, 2013, the Board instituted a Sipnet EU S.R.O. ("Sipnet") IPR petition over NetBIOS and WINS. *Sipnet EU S.R.O.*, IPR2013-00246, Institution Decision at 2-3 (PTAB Oct. 11, 2013). On October 19, 2014, the Board issued its Final Written Decision finding that Sipnet "ha[d] demonstrated by a preponderance of the evidence that (1) claims 1–7, 32, and 38–42 are anticipated by NetBIOS, (2) claims 1–7 and 32–42 are anticipated by WINS, and (3) claims 33–37 are obvious over NetBIOS and WINS." *Sipnet EU S.R.O.*, IPR2013-00246, Final Written Decision at 2, 25 (PTAB Oct. 9. 2014). The Board's decision centered on the representative claim element: "program code for transmitting, to the server, a query as to whether the second process is connected to the computer network." The Board held that the "query" from the caller need only "request whatever the connection server has listed about a second unit's on-line status, even if the listed information is not accurate at the time of the query, *i.e.*, even if it lists the second unit as online when, at that time, it is in fact not online." *Straight Path IP Group, Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1359-60 (Fed. Cir. 2015) ("*Sipnet*") (emphasis omitted).

Straight Path appealed the Board's decision to the Federal Circuit. *Sipnet*, 806 F.3d at 1359. Straight Path argued that NetBIOS and WINS do not invalidate the challenged claims because both fail to disclose "any mechanism by which [the] server may, ***at the time a first computer seeks to communicate with a second computer[,]*** . . . determine whether that second computer is ***actually*** connected to a network." Ex. 8 at 19 (Straight Path Br. in *Sipnet*) (emphasis to "at the time" and "actually" in original; other emphasis added). This temporal requirement,

1   Straight Path explained, was especially critical to the invention. "A central feature of the

2   patented invention is a system for determining whether the 'second process'—the target of a

3   user's desired communication—is actually connected to the computer network *at the time the*

4   *communication is sought*. *This temporal dimension is a key part of the claimed invention*."

5   *Id.* at 25. "Contrary to the Board's conclusion that [t]he '704 patent specification and claims do

6   not limit the scope of 'connected to the computer network,' [Straight Path argued that] the

7   language of the claims in fact expressly requires a determination of whether the second process

8   (a computer program) is connected to the computer network, *at the instant in time* when the first

9   process (also a computer program) queries whether the second process is connected to the

10  computer network, and therefore available to communicate." *Id.* at 41-42 (internal quotation and

11  citation omitted).

12          The Federal Circuit agreed with Straight Path that the Board's interpretation of "is

13  connected" had been unreasonable "considering its plain meaning." *Sipnet*, 806 F.3d at 1360.

14  "Is connected" could not mean "is still registered, once was connected, and may or may not still

15  be connected." *Id.* at 1361.  In view of the plain meaning of the term, the Federal Circuit

16  construed "is connected" to mean "*is connected to the computer network at the time that the*

17  *query is transmitted to the server*." *Id.* at 1363.  As a result, the Federal Circuit reversed the

18  Board's decision and remanded the case for consideration in view of the proper construction. *Id.*

19  Upon remand, the Board upheld the validity of the instituted claims under the Federal Circuit's

20  construction of "is connected." *See Sipnet EU S.R.O.*, IPR2013-00246, Final Written Decision,

21  ECF 73 at 17 (PTAB May 23, 2016).

22          **2.       The Samsung et al. IPRs And Federal Circuit Appeal**

23           Between August of 2014 and June of 2015 multiple parties filed petitions for *inter partes*

24  review of the '704, '469, and '121 patents over WINS and NetBIOS.  The Board granted those

25  petitions and ultimately joined them in two groups for final decisions issued on March 4 and

26  May 9, 2016.[4]   The Board applied the Federal Circuit's construction of "is connected" and

27  ────────────────

28  [4] On March 4, 2016, the Board issued an identical Final Written Decision in IPR2014-01366
    ('704 Patent), IPR2014-01367 ('469 Patent), IPR2014-01368 ('121 Patent), IPR2015-01006

upheld the validity of all instituted claims based on the "is connected" or "counterpart claim phrases." *Samsung*, 2017 WL 2705311, at *1.

To distinguish the art on appeal from these IPRs, Straight Path argued that the appellants had not "pointed to any evidence that WINS or NetBIOS teaches determining whether a second computer is online *at the time the query is transmitted to the server*." Ex. 9 at 20 (Brief of Straight Path, *Samsung Electronics Co., Ltd. et al. v. Straight Path IP Group, Inc.*, No. 2016-2004, D.I. 48 (Fed. Cir. Dec. 7, 2016) ("Straight Path Br. in *Samsung*")). The references, Straight Path explained, "*do not track current online status*." *Id*. The Federal Circuit agreed with Straight Path, holding that the two prior art references did not disclose the "is connected" and counterpart claim phrases. *Samsung*, 2017 WL 2705311, at *5. The Federal Circuit explained that the Board

> properly applied our construction of the "is connected to the computer network" limitation from *Sipnet* to the WINS and NetBIOS references, concluding that *neither reference tracks a user's online status*. The Board determined that neither WINS nor NetBIOS will "determine whether the second process *is connected to the [computer] network at the time the query is transmitted to the server*," i.e., whether a user is on-line at the relevant time.

*Id.*

As indicated by the parties' February 7, 2017 Joint Claim Construction Chart And Prehearing Statement Pursuant To L.P.R. 4-3, they have adopted the Federal Circuit's construction, "is connected to the computer network *at the time that the query is transmitted to the server*," for "is connected" and the counterpart claim phrases. (D.I. 32 at 1.)

**C.**     **Straight Path's Letter Requesting Permission to Seek Summary Judgment Based Upon The "Is Connected" terms**

In Straight Path's September 27, 2017 Letter to the Court, Straight Path requested permission to file a motion for summary judgment that the prior art does not disclose the "is

---

('121 Patent), IPR2015-01007 ('469 Patent), and IPR2015-01011 ('704 Patent) (collectively, the "Samsung IPRs"). On May 9, 2016, the Board issued an identical Final Written Decision in IPR2015-00196 ('121 Patent), IPR2015-00198 ('469 Patent), IPR2015-00209 ('704 Patent), IPR2015-01397 ('121 Patent), IPR2015-01398 ('704 Patent), and IPR2015-01400 ('469 Patent) (collectively, the "LG IPRs").

connected" requirement of each Asserted Claim.  Straight Path's proposed motion would address the:

> "Query As To Whether The Second Process Is Connected" And Related Terms: All of the asserted claims of the '469, '704, '121 and '365 patents include at least one variation of the "is connected" limitation as well as related limitations (such as querying or receiving information about an online process). Defendants cannot show that these claim limitations are present in the asserted prior art.

Straight Path Letter to the Court (Sept. 27, 2017) (D.I. 120).  Straight Path explains that each Asserted Claim "requires a query that is (1) about a *specific* process or user and (2) about whether that user's process is connected *at the time of the query*."  *Id.* (emphasis in original). Straight Path states that "[i]n [Cisco's] two primary anticipation references (NetPhone and iFrag), the clients (first processes)" "do[] not meet the 'query as to whether the second process is connected' limitation" because they "use local information to create point-to-point connections" and do not use a "query as to whether the second process is connected" "*at the time of the query*."  *Id.* (emphasis in original).

## D.    The Accused Products

Based upon Straight Path's 2016 Infringement Contentions, the accused products in this case are the Cisco 9971 voice over internet protocol ("VoIP") phone, the Unified Communications Manager ("UCM"), and the Video Communications Server ("VCS").

Straight Path later added 40 new products to its infringement and damages reports that were not identified in its infringement contentions, alleging that these additional products are similar to the Cisco 9971 phone.  Cisco disputes whether these additional products are properly in this case, but this issue need not be resolved to resolve this motion as the noninfringement arguments made herein apply equally to all the accused products.

## E.    The Functionality Of The Accused Products.

For the purposes of this motion only, so there will be no factual dispute precluding Cisco's motion for summary judgment, Cisco accepts Straight Path's description of the functionality of the accused products as outlined in the reports of their expert witness, Mr. Cole,

1  and in his recent deposition testimony.

2        Mr. Cole relies on the following diagrams, which he refers to as Figures 2 and 3, to

3  demonstrate his understanding of how the accused Cisco Products establish a call.  Starting first

4  with Fig 2:

1



Ex. 5 at ¶ 32 (Cole Infringement Report) (citing CISCO-SP00005932.0070).

1   Fig 2 is Cisco's implementation of SIP in the accused products.  Ex. 7 at 43:6-19 (Cole

2   Tr.).  The caller picks up the phone, dials the numbers for the callee, this generates an invite

3   message to invite the callee to a call.  This is also the start of a call.  *Id.* at 143:25-144:18.

4   Straight Path argues that "the INVITE Step 1 that's transmitted from Phone 1000 to the CCM

5   [server]" is the claimed "query."  *Id.* at 141:17-20.  After the invite, the phone starts to ring, as

6   shown in steps 13 and 14.  *Id.* at 43:25-44:11.  If the callee answers the ringing telephone,

7   highlighted above as "Answer," only then does the callee generate a 200 OK message, which

8   gets sent to the server.  *Id.* at 44:12-45:11; 144:23-145:8.  The server then eventually sends that

9   200 OK message to the caller phone.  It is this 200 OK message from the server to the caller that

10  Straight Path says is the response to the query telling the caller that the callee is on line.  *Id.*

11  146:18-21, 175:6-16, 177:10-15.  However, as Mr. Cole agreed, that "200 (OK) being passed

12  from the CCM to the caller device . . . did not exist before the time the INVITE Step 1 was

13  transmitted from the caller device to the CCM."  *Id.* 177:16-20.  Moreover, as is clear from the

14  diagram, the 200 OK is not sent until after the call is made, the phone rings, and the call is

15  answered by the callee.  *Id.* at 44:25-45:3 (agreeing that "according to [Fig. 2], the 200 (OK) that

16  is sent from Phone 2000 [the callee] to the CCM occurs after Phone 2000 is answered").

17  Turning then to Fig 3:

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16  Ex. 5 at ¶¶ 33, 34, 136, 143, 211, 222, 228, 291, 299, 310, 374, 381, 418, 423, 495, 505, 512,

17  577, 588, 596, 651, 664, 700 (Cole Infringement Report) (each citing CISCO-SP00756813).

18  Again, Straight Path asserts that Figure 3 accurately depicts Cisco's implementation of the

19  Accused Products.  Ex. 7 at 18:11-22 (Cole Tr.).  Mr. Cole provides the following description of

20  "Figure 3" in relevant part:

21          In Figure 3, the directory number "1004" is dialed at
            telecommunications process "1003."  As a result,
22          *telecommunications process "1003" sends an INVITE message
            (labeled [1]) to the UCM*. When received by the UCM, the UCM
23          looks up the IP address of the telecommunications process "1004."
            As shown in Figure[] 3, the UCM then sends an INVITE message
24          (labeled [3] in Figure 3 . . . ) to phone process "1004." *After the
            call is answered (not shown in Figure 3 . . . ),
25          telecommunications process "1004" eventually sends a 200 OK
            message (labeled [7] in Figure 3* . . . ).

26  Ex. 5 at ¶ 34 (Cole Infringement Report) (internal citations omitted).  Thus, again, Straight Path

27  makes clear that the 200 OK message, which it asserts is the determination of on-line status, does

28  not even get sent to the caller phone until after the call has been made, the phone rings, and the

call has been answered by the callee.  At his recent deposition, Mr. Cole went further and testified that the ***server does not even know whether 1004 is connected at the time the invite message is sent***.  Ex. 7 at 21:18-20 (Cole Tr.) ("At the initiation of the call, [the CCM] does not appear" to know "whether 1004 is connected.").

Under Straight Path's own description of the Cisco accused products then, as discussed below, they do not meet the "is connected" and counterpart limitations of the Asserted Claims, as construed by the Federal Circuit.

## III.   LEGAL STANDARDS

### A.   Summary Judgment

Summary judgment is appropriate when "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also EON Corp IP Holdings LLC v. Cisco Systems Inc.*, 36 F. Supp. 3d 912, 918 (N.D. Cal. 2014 ("*Cisco*").  "An issue is 'genuine' only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party, and 'material' only if the fact may affect the outcome of the case." *Cisco*, 36 F. Supp. at 918 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  "All reasonable inferences must be drawn in the light most favorable to the non-moving party." *Id.* (*citing Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004)).  These standards apply with full force to summary judgment motions involving patent infringement claims. *Id.* (*citing Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1571 (Fed. Cir. 1984)).

### B.   Noninfringement

"A determination of patent infringement consists of two steps: (1) the court must first interpret the claim, and (2) it must then compare the properly construed claims to the allegedly infringing device." *Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 905–06 (Fed. Cir. 2005).  "To prove infringement, the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents."  *Id.* at 906 (citation omitted).  "To support a summary judgment of noninfringement it must be shown that, on the

correct claim construction, no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee."  *Network, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001).  If the Court grants Cisco's motion for summary judgment of noninfringement as to all Cisco products, it need not adjudicate any validity issues.  *See, e.g., Berger v. Rossignol Ski Co., Inc.*, No. 05-02523-CRB, 2006 WL 1095914, at *6 (N.D. Cal. Apr. 25, 2006) (*citing Boss Control, Inc. v. Bombardier Inc.*, 410 F.3d 1372, 1374 (Fed. Cir. 2005)).

## IV.   ARGUMENT: SUMMARY JUDGMENT OF NONINFRINGEMENT SHOULD BE GRANTED BECAUSE THE ACCUSED CISCO PRODUCTS DO NOT PRACTICE THE "IS CONNECTED" ELEMENT REQUIRED BY EACH ASSERTED CLAIM.

Cisco's accused products do not infringe the Asserted Claims because they do not meet the "is connected" limitation found in each claim.  Under the Federal Circuit's construction of this limitation—which the parties agree controls and should apply in this case—the accused products must determine whether an intended call recipient is connected to the computer network (*i.e.*, online) ***at the time the query is transmitted from the caller to the server***—prior to the call being placed, prior to dialing the phone number of the person to be called, and certainly prior to someone answering the ringing phone.  Otherwise, the claimed query to check the online status of the person to be called would be meaningless, as the phone call with that person would already be underway.  The accused products, as described by Mr. Cole, do not determine whether the intended call recipient is online.  Instead, in the Cisco accused products, a caller simply picks up the phone, dials a number, and if someone answers the ringing phone, the call is connected.  There is no determination ahead of time as to whether the callee is on-line.  For this reason alone, summary judgment is appropriate because no reasonable juror could find that the accused products meet the "is connected" limitations.

### A.   "Is Connected" Requires The Server To Determine Online Status Of The Callee At the Time of the Query.

As explained above, the Patents-in-Suit have been the subject of multiple *inter partes* review proceedings resulting in two appeals to the Federal Circuit.  Those appeals focused on the

very claim limitations at issue here—the "is connected" and counterpart limitations.  Straight Path argued that the "is connected" limitation is the critical novel distinction that distinguished the Asserted Claims from the prior art asserted in the *inter partes* review proceedings.  Ex. 8 at 41–43 (Straight Path Br. in *Sipnet*).  Here in this case, Straight Path is also arguing that same point to distinguish the prior art—*e.g.*, its technical expert argues that the prior art does not disclose the "is connected" limitations "***at the time the query was transmitted rather than a different time***" (Ex. 6 at ¶ 351 (Cole Rebuttal Report)), and Straight Path argued in its letter to the Court regarding summary judgment that the prior art does not determine whether the second process is connected "***at the time of the query***" (D.I. 120) (emphasis in original).

Indeed, as recently stated by Straight Path and its expert, the very goal of the Patents-in-Suit is to determine on-line status ***prior to call setup*** to "avoid cost and uncertainty whenever the callee device is not online."  Ex. 6 at ¶ 65 (Cole Rebuttal Report); *see also* Ex. 7 at 81:9-82:5 (Cole Tr.).  And, Mr. Cole admitted at his recent deposition that, unlike the Cisco accused products, he does not know of any embodiment in the patents where a call is made before the claimed "query."  Ex. 7 at 208:19-209:3 (Cole Tr.).  Thus, it is not surprising that the Federal Circuit construed "is connected" to mean "is connected to the computer network ***at the time that the query is transmitted to the server***."  *Sipnet*, 806 F.3d at 1363.

Here, Cisco's accused products do not meet the "is connected" limitation because the server does not determine whether the callee is connected to the network at the time any alleged query is transmitted to the server.  Instead, the Cisco products simply dial a phone number and try to complete a call, without first checking whether the callee device is on-line at the other end.  Sometimes those calls connect.  Sometimes they fail.

## B.    Straight Path Relies Upon The 200 OK Signal As The Claimed Determination Of On-Line Status

According to Straight Path, after a caller places a call by dialing a phone number, after the called phone rings, and after the callee answers the phone, the 200 OK message, which is generated for the first time after the phone is actually answered, represents the determination of on-line status under the claims.  Ex. 5 at ¶ 147 (Cole Infringement Report) ("[T]he 200 OK

1   message received by the caller device will only be received when the recipient callee device is

2   connected to the computer network."); *see also id.* ¶¶ 139, 144, 225, 232, 233; Ex. 7 at 44:12-

3   45:11; 144:23-145:8 (Cole Tr.).  Specifically, Straight Path's expert, Mr. Cole, identifies the 200

4   OK message transmitted from the server to the caller—which occurs after a 200 OK message is

5   generated from the callee to the server—as the claimed determination of on-line status.  Ex. 7 at

6   175:6-20 (Cole Tr.).

7           **C.**        **The 200 OK Message Does Not Determine The Online Status Of The Callee**

8                       **At the Time of the Alleged Query; In Fact, It Does Not Even Exist At The**

                    **Time Of The Alleged Query, And Is Generated Only After A Call Rings And**

9                       **Is Answered.**

10        The 200 OK message is not a determination of whether the "second process" (*i.e.*,

11   intended call recipient) "is connected to the computer network *at the time* that *the query is*

12   *transmitted to the server*."  As seen in Figure 2 below, the INVITE, outlined in red, is generated

13   after the caller picks up the phone and dials the telephone number of the person he or she is

14   calling.  Ex. 7 at 144:5-18 (Cole Tr.).  After the call is dialed, then, of course, the called phone

15   rings, and the called phone is answered by the person being called. *Id.* at 44:12-45:11; 144:23-

16   145:8.  Up until this point, the 200 OK message does not even exist.  *Id.* at 177:16-178:1

17   (agreeing the 200 OK did not exist at the time of the query).  At some point later, the 200 OK is

18   eventually sent back to the caller, outlined in green, below.  In the words of Straight Path's

19   expert Mr. Cole, "[a]fter the call is answered (not shown in Figure 3, but shown by the box

20   labeled "Answer" in Figure 2), telecommunications process [2000] *eventually* sends a 200 OK

21   message (labeled [7] in Figure 3 and [15] in Figure 2) to the UCM."  Ex. 5 at ¶ 34 (Cole

22   Infringement Report).

23

24

25

26

27

28

1



Ex. 5 at ¶ 32 (Cole Infringement Report ) (citing CISCO-SP00005932.0070) (annotation added).

Once this call sequence is made clear, and for the purposes of this motion, both parties are in agreement on the sequence, it is obvious that the 200 OK message—which is generated *after* the alleged query (the Invite) is transmitted to the server, *after* the phone is dialed, *after* the phone rings and *after* the phone call is actually answered by the person being called—cannot meet the claimed "is connected to the computer network *at the time the query is transmitted to the server*." *See Sipnet*, 806 F.3d at 1363; Ex. 7 at 35:4-8 (Cole Tr.). In fact, as Mr. Cole agreed, that "200 (OK) that is being passed from the CCM to the caller device . . . didn't exist at the time that the Step 1 INVITE was transmitted from the caller device to the CCM." *Id*. at 177:21-178:1. Moreover, at his recent deposition, he also admitted that the Cisco accused server does not even know whether the called phone (1004 from Fig 3 above) is connected at the time the Invite message is sent. *Id*. at 21:18-20 ("At the initiation of the call, [the CCM] does not appear" to know "whether 1004 is connected."). The accused Cisco system cannot be checking on-line status at the time of the query if it does not know at that time whether the callee is connected or not. Nor is there anything about the 200 OK that provides the alleged benefit of the Patents-in-Suit to "avoid cost and uncertainty [of setting up a call] whenever the callee device is not online" as the 200 OK is sent only after the call has already been made and answered. *See* Ex. 6 at ¶ 65 (Cole Rebuttal Report).

Straight Path argued on appeal that the prior art references did not meet the Federal Circuit's claim construction because "the prior art . . . *never* determines whether the second unit is online *at the time of the query*." Ex. 9 at 3 (Straight Path Br. in *Samsung*) (emphasis to "never" in original). The Federal Circuit agreed with Straight Path that the prior art references did not meet the claim construction. *Samsung*, 2017 WL 2705311, at *5. Having prevailed on its "is connected" arguments at the Board and on appeal to defend the validity of the Asserted Claims, Straight Path cannot reverse course now to suit its infringement theories in this case. *See* Ex. 8 at 42–43 (Straight Path Br. in *Sipnet*); Ex. 9 at 3 (Straight Path Br. in *Samsung*). Furthermore, even here Straight Path is trying to have it both ways. To distinguish the prior art in this case, Mr. Cole argues that "[a] person of ordinary skill in the art understands that this construction requires online status of the process *at the time the query was transmitted rather*

1    *than a different time* . . ." Ex. 6 at ¶ 351 (Cole Rebuttal Report); *see also id.* at ¶¶ 152, 267, 279,

2    283, 297, 352.

3         The problem for Straight Path is that the construction for validity must be the same as

4    that used for the determination of infringement.  *See TVIIM, LLC v. McAfee, Inc.*, 851 F.3d 1356,

5    1362 (Fed. Cir. 2017) ("Claim terms must be construed the same way for the purpose of

6    determining invalidity and infringement."). So, when Straight Path distinguishes the prior art by

7    arguing that it "*never* determines whether the second unit is online *at the time of the query*,"

8    (Ex. 9 at 3 (Straight Path Br. in *Samsung*) (emphasis to "never" in original)), because the accused

9    Cisco products also work that way—they never determine whether the intended call recipient is

10   online at the time of the alleged query, they cannot infringe.

11        In accordance with Straight Path's arguments to the PTAB and the Federal Circuit and

12   their arguments in this case, a "200 OK," which is generated *after* the alleged query (the Invite)

13   is transmitted to the server, *after* the phone is dialed, *after* the phone rings, and *after* the phone

14   call is eventually answered, cannot meet the "is connected" limitation of each Asserted Claim,

15   which require on-line status determination at the time of the Invite.  Cisco's products accordingly

16   do not infringe the Asserted Claims.

17   **V.      CONCLUSION**

18        For the foregoing reasons, because no reasonable juror could find infringement of the

19   Asserted Claims under Straight Path's own infringement theory, summary judgment of

20   noninfringement is appropriate.

21   Dated: October 5, 2017                              Respectfully submitted,

22
                                                        BAKER BOTTS LLP
23                                                      Sarah J. Guske (SBN 232467)
                                                        sarah.guske@bakerbotts.com
24                                                      Jeremy J. Taylor (SBN 249075)
                                                        jeremy.taylor@bakerbotts.com
25                                                      L. May Eaton (SBN 298123)
                                                        may.eaton@bakerbotts.com
26                                                      Wayne O. Stacy (*pro hac vice*)
                                                        wayne.stacy@bakerbotts.com
27

28                                                      DESMARAIS LLP

1
2
3
4
5
6

John M. Desmarais (*pro hac vice*)
jdesmarais@desmaraisllp.com
Michael P. Stadnick (*pro hac vice*)
mstadnick@desmaraisllp.com
Justin P.D. Wilcox (*pro hac vice*)
jwilcox@desmaraisllp.com
Jordan N. Malz (*pro hac vice*)
jmalz@desmaraisllp.com
Steven M. Balcof (*pro hac vice*)
sbalcof@desmaraisllp.com

7

By:   /s/   John M. Desmarais

8
9

*Attorneys for Defendant*
*Cisco Systems, Inc.*

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28