| | |
|---|---|
| BAKER BOTTS L.L.P.<br>Wayne O. Stacy (*pro hac vice*)<br>wayne.stacy@bakerbotts.com<br>2001 Ross Avenue<br>Dallas, Texas 75201-2980<br>Telephone:     (214) 953-6500<br>Facsimile:       (214) 953-6503<br><br>Sarah J. Guske (SBN 232467)<br>sarah.guske@bakerbotts.com<br>Jeremy J. Taylor (SBN 249075)<br>jeremy.taylor@bakerbotts.com<br>L. May Eaton (SBN 298123)<br>may.eaton@bakerbotts.com<br>101 California Street<br>36th Floor, Suite 3600<br>San Francisco, California  94111<br>Telephone:     (415) 291-6200<br>Facsimile:       (415) 291-6300 | DESMARAIS LLP<br>John M. Desmarais (*pro hac vice*)<br>jdesmarais@desmaraisllp.com<br>Michael P. Stadnick (*pro hac vice*)<br>mstadnick@desmaraisllp.com<br>Justin P.D. Wilcox (*pro hac vice*)<br>jwilcox@desmaraisllp.com<br>Jordan N. Malz (*pro hac vice*)<br>jmalz@desmaraisllp.com<br>Steven M. Balcof (*pro hac vice*)<br>sbalcof@desmaraisllp.com<br>230 Park Avenue<br>New York, NY  10169<br>Telephone:     (212) 351-3400<br>Facsimile:       (212) 351-3401 |

Attorneys for Defendant
CISCO SYSTEMS, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| STRAIGHT PATH IP GROUP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>Defendant. | Case No. 3:16-cv-03463-WHA<br><br>**DEFENDANT CISCO SYSTEMS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**<br><br>Honorable Judge William H. Alsup<br>Hearing Date:  November 9, 2017<br>Hearing Time: 8:00 AM |

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................................1

II. ARGUMENT ......................................................................................................................2

    A. Cisco's UCM Registration Does Not Meet The "Is Connected" Limitation Because It Does Not Track Current Online Status. ...................3

    B. The Combination Of Cisco's UCM Registration And SIP Messages Does Not Meet The "Is Connected" Limitation Because It Does Not Track Online Status At The Time Of The Query. ........................................5

    C. Cisco's Arguments Do Not, As Straight Path Suggests, Impose A "Hypertechnical Timing Requirement." ......................................................7

III. CONCLUSION ..................................................................................................................8

# TABLE OF AUTHORITIES

**Cases**

*Berger v. Rossignol Ski Co.*,
  No. C 05-02523 CRB, 2006 WL 1095914 (N.D. Cal. Apr. 25, 2006), aff'd, 214 F. App'x 981 (Fed. Cir. 2007) ............................................................................................................... 5

*Samsung Elecs. Co., Ltd., v. Straight Path IP Group, Inc.*,
  No. 2016-2004, 2017 WL 2705311 (Fed. Cir. June 23, 2017) .................................................... 4

*Straight Path IP Group, Inc. v. Sipnet EU S.R.O.*,
  806 F.3d 1356 (Fed. Cir. 2015) ................................................................................................... 2

*TVIIM, LLC v. McAfee, Inc.*,
  851 F.3d 1356 (Fed. Cir. 2017) ................................................................................................... 8

## I. INTRODUCTION

No dispute exists that systems and methods for making phone calls over computer networks, including the Internet, were known in the art before the filing of the September 1995 patent application that led to the patents-in-suit. Acknowledging that technical legacy, Straight Path contends that the incremental novelty of the patents-in-suit lies in the ability to determine whether an intended call recipient's phone is connected to a network *without contacting or querying the phone*, thereby avoiding the cost of unnecessary communications with offline phones.

The patents-in-suit allegedly disclose a solution to that purported need—a connection server that tracks *both* when a device has connected to the network *and* when it has disconnected. To use the purported invention, a prospective caller first queries the connection server for information—already in the server's possession—as to whether the intended call recipient's phone is connected to the network. Critically, the connection server must already have that online information. Indeed, Straight Path admitted in multiple proceedings before the Patent Trial and Appeals Board ("Board") and Federal Circuit that such functionality is the only thing that distinguishes the patents-in-suit from the prior art.

Cisco's accused products simply do not work that way. Straight Path nevertheless contends that Cisco's products infringe when an intended call recipient answers the phone, thereby allegedly indicating that the phone "is connected" to the network or "online." Such basic functionality—as old as telephony itself—is not and cannot be covered by the asserted claims. Cisco's accused products simply do not query whether an intended call recipient's phone is online before making a call. Moreover, even under Straight Path's strained infringement theory, Cisco's products do not track whether devices are connected to the network or online. Rather, after receiving the purported query (and after a call is made), Cisco's UCM (the alleged "server") must connect the call with the intended call recipient's phone, and the intended call recipient must actually answer the call, *before* any alleged determination that the callee device is connected. That is not the alleged invention; that is how a typical phone works and has worked for generations.

## II. ARGUMENT

Cisco's accused products do not infringe because they query no server as to whether a target phone "is connected" to the network before contacting the target phone itself. The parties have agreed that the pertinent construction of that language advocated by Straight Path itself, and adopted by the Federal Circuit, should apply here: "is connected" means "is connected to the computer network at the time that the query is transmitted to the server." *Straight Path IP Group, Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1363 (Fed. Cir. 2015) ("*Sipnet*"). As set forth in Cisco's opening brief, the accused products do not determine whether an intended call recipient is connected to the computer network (*i.e.*, online) ***at the time the query is transmitted from the caller to the server***, even under Straight Path's infringement theory, in light of the following undisputed facts:

1. The alleged "query"—a Session Initiation Protocol ("SIP") "INVITE" message—is generated after a caller dials a phone number (*i.e.*, makes a call);
2. After receipt of the alleged query, the INVITE message, the alleged "server"—Cisco's Unified Communications Manager ("UCM")—***does not*** (and cannot) respond at that time with information regarding the "online status" of the intended call recipient's phone. In fact, Straight Path's expert admitted that when it receives the "query," the "server" does not even know if the called phone is online (Ex. 1[1] at 34:10-35:8 (Cole Tr.));
3. Instead, the UCM sends a series of communications or messages ***to the intended call recipient's phone***;
4. If an intended call recipient answers, the receiving phone generates and sends to the server a "200 OK" message; and
5. Only then does the calling phone receive a 200 OK message.

No dispute exists that Cisco's accused products do ***not*** determine whether an intended recipient phone is network connected until ***after*** both (1) the caller sends an INVITE message to

---

[1] Unless otherwise noted, all "Ex." citations refer to exhibits attached to the Declaration of Steven M. Balcof in Support of Defendant Cisco System, Inc.'s Reply in Support of its Motion for Summary Judgment of Non-infringement (Oct. 26, 2017).

the UCM (*i.e.*, the alleged "server"), and (2) the UCM sends the INVITE message to the intended call recipient's phone. Opp'n at 1. Upon receiving the INVITE message, the UCM does not (and cannot) respond with an indication as to whether the intended call recipient's phone is online, as required by the asserted claims and taught in the patents-in-suit. Instead, as Straight Path admits, because the UCM does not know the online status of the called phone when the invite is received (*see, e.g.*, Ex. 1 at 34:10-35:8 (Cole Tr.)), the UCM sends the INVITE to the intended call recipient's phone (*i.e.*, the claimed "process"), thereby incurring the risk of an unnecessary communication with an offline phone. Opp'n at 1 ("the UCM [Cisco] server will send an invite message to the callee process to determine whether that process is online"). No reasonable juror could conclude in light of those concessions that Cisco's accused products determine whether a device is connected to the computer network *at the time* that the INVITE (*i.e.*, the alleged "query") is transmitted to the UCM (*i.e.*, the alleged "server").

In its opposition brief, Straight Path nevertheless recasts its infringement theory, arguing now that it is the combination of the UCM's "relatively current" registration information and certain SIP messages generated after an INVITE message is received by the UCM, including the 200 OK message generated after the call is answered, that somehow provides the necessary determination that the intended call recipient's device "is connected" at the time of the INVITE message. *Id.* at 10-11. But, as explained below, any such "online" status response at that time would be meaningless, as the phone call has already been answered, and certainly is not what the asserted claims require.

**A.   Cisco's UCM Registration Does Not Meet The "Is Connected" Limitation Because It Does Not Track Current Online Status.**

Upon connection to a network, each Cisco phone registers its IP address with the UCM server. Opp'n at 5. ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ The server maintains a registration database that maps each registered phone to its respective IP address. *Id.* When a UCM receives an INVITE message, it consults the registration database to determine whether the intended callee has a valid registration. *Id.* If it does, the UCM transmits the INVITE message to the callee's IP address. *Id.*

But a valid UCM registration can become stale—a fact confirmed by Straight Path's own technical expert, Mr. Cole. Ex. 1 at 148:18-20 (Cole Tr.) ("Q. Well, you agree in Cisco's system it's possible to have a stale IP address in the CCM, right? A. Yes."). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As a result, the UCM will continue to route INVITE messages to the registered IP address of that phone even though it has become disconnected. *Id.* Therefore, a valid UCM registration, as Straight Path concedes, is not an indication that a phone is connected to the network at the time an INVITE message (*i.e.*, the alleged "query") is transmitted. Opp'n at 10 ("*relatively* current on-line information").[2] Rather, a UCM registration means that a phone once was connected and may or may not still be connected.

The Cisco UCM registration system is similar to the WINS/NetBIOS registration system that the Federal Circuit and the Board found did not disclose the "is connected" claim limitations. *Samsung Elecs. Co., Ltd., v. Straight Path IP Group, Inc.*, No. 2016-2004, 2017 WL 2705311, at *3-4 (Fed. Cir. June 23, 2017). In the WINS/NetBIOS name registration system, which linked the name of a device to an IP address, an "active" or valid name registration "simply refers to a name that has been registered and that has not yet been de-registered, independent of whether the associated computer is or is not connected to the computer network." *Id.* at *3. The Federal Circuit concluded that the WINS/NetBIOS registration system does not meet the "is connected" limitation under the same construction applied in this case because an active name registration means only that a device "once was connected, and may or may not still be connected." *Id.* at *5.

For the same reason that the Federal Circuit concluded that WINS/NetBIOS does not meet the "is connected" limitation, a valid UCM registration for a Cisco phone does not meet that limitation. And, Straight Path does not argue otherwise. Instead, Straight Path tries to avoid the Federal Circuit holding by now arguing that it is the combination of Cisco's registration system and later generated SIP messages *that meet* the claimed "is connected" limitation. For the reasons below, including the fact that the relevant SIP messages are not even generated until after the called phone has rung and been answered, Straight Path's new argument similarly fails.

---

[2] Emphasis has been added unless otherwise noted.

### B. The Combination Of Cisco's UCM Registration And SIP Messages Does Not Meet The "Is Connected" Limitation Because It Does Not Track Online Status At The Time Of The Query.

Straight Path now contends that the combination of the UCM registration information and post-INVITE SIP messages, such as the 100 Trying and 200 OK messages, meet the "is connected" limitation because those messages supposedly confirm that a device is connected at the time the INVITE (*i.e.*, the alleged "query") was sent to the UCM (*i.e.*, the alleged "server"). *See, e.g.*, Opp'n at 10. But for multiple reasons, no reasonable jury could find that to be the case.

As an initial matter, in addition to not being contained in Straight Path's Infringement Contentions,[3] Straight Path's new reliance on the 100 Trying message depends entirely on unsupported argument. *Berger v. Rossignol Ski Co.*, No. C 05-02523 CRB, 2006 WL 1095914, at *6 (N.D. Cal. Apr. 25, 2006), aff'd, 214 F. App'x 981 (Fed. Cir. 2007) (granting summary judgment of non-infringement and explaining that the "Patent Local Rules are designed to prevent exactly what plaintiffs are attempting to do here: alter their infringement theory after it became apparent that they were going to lose"). Indeed, Straight Path's infringement expert not only failed to cite that message in his infringement expert report (*see, e.g.*, D.I. 131, Ex. 5 ¶¶ 221–26 (Cole Infr. Rep.)), but at his recent deposition, he did not even know what it was. Referring to the 100 Trying message, he testified just a few weeks ago as follows: "I am not sure what happens there. That is just a message sent back. I am not sure of the import." Ex. 1 at 35:9–16 (Cole Tr.).

Furthermore, it makes sense that Mr. Cole did not rely upon that message, as this new infringement theory directly contradicts the arguments that Straight Path made to defend the validity of the asserted claims before the Board. Indeed, as Straight Path argued in support of the claim construction for "is connected" that the Federal Circuit adopted:

> [T]he specification discloses a two-step mechanism that tracks both when a process has connected to the network and when it has disconnected from it, so that the query regarding the process's on-

---

[3] Straight Path's argument that the combination of the UCM registration and 100 Trying message somehow meets the "is connected" limitation is a new theory never disclosed in Straight Path's Patent Local Rule 3-1 contentions. *See, e.g.*, Ex. 2 at 5 (Exhibit B to Straight Path's October 6, 2016 Infringement Contentions) (identifying the 200 OK message as the indicator of "is connected" status).

line status at the very moment the realtime communication is sought
can be—and is—answered reliably.

Ex. 3 at 26 (Straight Path's Sipnet Br.). The 100 Trying and 200 OK messages—generated after the INVITE is received by the UCM—did not exist at the time the query was transmitted from the caller to the server—"the very moment the real time communication is sought." In fact, they are not even generated until after the called phone has already rung and been answered.

Contrary to Straight Path's new argument (Opp'n at 14), the intrinsic record fully supports that the determination of the callee's online status must occur *at the time of the query and before the call is set up and answered*. Figure 17A of the '469 patent, provided below, illustrates that order of events. The query and response are outlined in red and the call and answer are outlined in green:



Figure 17A

With reference to Figure 17A, the '469 Patent explains that Webphone 1536, the caller device, first transmits the "6 <CONNECT REQ>" packet (*i.e.*, a "query") to the server. '469 Patent at cols. 23:63-24:21. Then, the server determines the current IP address of the intended callee, Webphone 1538. *Id.* If Webphone 1538 is connected, the server transmits the "7A <CONNECT ACK>" packet to Webphone 1536 with the callee's IP address. *Id.* Alternatively, if the intended callee is not connected, the server transmits the "7B <OFF LINE>" packet to the caller. Following the receipt of either "7A <CONNECT ACK>" or "7B <OFF LINE>," the socket from WebPhone 1536 to global server 1500 is closed. If the intended callee (WebPhone 1538) is determined to be

1   online, Webphone 1536 proceeds with the "8 <Call>" packet to Webphone 1538 and Webphone
2   1538 either rejects the call (9A), indicates that it is busy (9B), sends the call to an answering
3   machine (9C), or transmits a "9D <CALL ACK>" packet and answers (10). *Id.* at col. 24:18–
4   25:26. In other words, the call (step 8) and answer (step 10) do not occur until *after* the callee's
5   online status is determined by a query from the first process **to the server** at step 6 and **the server**
6   response at step 7. As the claims make clear, the online status check is a communication between
7   the calling phone and the server, not between the calling phone and the phone called.
8       In short, Straight Path's new argument that the combination of the Cisco UCM registration
9   and the SIP messages first generated by the called phone *after* it is answered, infringes, turns the
10  patented invention on its head. Such a reading of the claims is the opposite of the alleged invention,
11  which sought to determine online status before a call is made, and is contrary to what Straight Path
12  repeatedly told the Board and the Federal Circuit to preserve the validity of the claims. Because
13  the combination of the Cisco UCM registration and SIP messages do not determine whether a
14  called phone is connected to the network *at the time* the INVITE message (*i.e.*, the alleged
15  "query") is sent to the UCM (*i.e.*, the alleged "server"), no reasonable juror could conclude that
16  Cisco's accused products meet the "is connected" limitation.

17      **C.    Cisco's Arguments Do Not, As Straight Path Suggests, Impose A
18          "Hypertechnical Timing Requirement."**

19      Straight Path suggests that Cisco's argument—that the messages generated after the UCM
20  receives an INVITE message, such as the 200 OK, do not indicate whether a device is connected
21  to the network at the time of the claimed "query"—imposes a "hypertechnical timing requirement"
22  unsupported by the intrinsic record. Opp'n at 14. Straight Path describes Cisco's argument as
23  focused on the "processing and propagation time" in responding to the INVITE message, or in
24  other words, the latency or lag time inherent in any electronic device. *Id.* That characterization is
25  incorrect.
26      To be clear, Cisco's argument does not focus on system latency, which necessarily requires
27  that the response to an INVITE message occurs after the message is received. Rather, Cisco's
28  argument focuses on the fact that because, as both parties agree, the UCM does not track or

1  maintain up-to-date information on which devices are connected to the system, after receiving an

2  INVITE message, the UCM cannot answer the "query" and instead must communicate with an

3  intended call recipient's device to determine if it is still available for communication—the very

4  communication the patented invention was designed to prevent.

5        Moreover, rather than Cisco trying to add a timing requirement to the claims, Cisco's

6  argument merely holds Straight Path to its own prior representations to the Federal Circuit:

> the language of the claims . . . expressly requires a determination of whether the second process (a computer program) is connected to the computer network, ***at the instant in time*** when the first process (also a computer program) queries whether the second process is connected to the computer network, and therefore ***available to communicate***.

11  Ex. 3 at 41-42 (Straight Path's Sipnet Br.) (internal quotation and citation omitted). Straight Path's

12  current position disavows those very arguments, which the Federal Circuit adopted in concluding

13  that the asserted claims are valid over certain prior art.  The only way Cisco's accused products

14  determine whether the called phone is "available to communicate," is to call the intended recipient

15  to see if they answer the phone—just like Alexander Graham Bell did.  Plaintiff Straight Path

16  cannot have it both ways—the asserted claims must be applied in the same manner for purposes

17  of infringement and validity.  *See TVIIM, LLC v. McAfee, Inc.*, 851 F.3d 1356, 1362 (Fed. Cir.

18  2017) ("Claim terms must be construed the same way for the purpose of determining invalidity

19  and infringement.").

20  **III.   CONCLUSION**

21        For the reasons set forth in its opening brief and this reply brief, Cisco respectfully requests

22  that the Court grant Cisco's motion for summary judgment of non-infringement as to all Cisco

23  products.

24  Dated: October 26, 2017                              Respectfully submitted,

25

26                                                  BAKER BOTTS LLP
                                                Sarah J. Guske (SBN 232467)

27                                                  sarah.guske@bakerbotts.com
                                                Jeremy J. Taylor (SBN 249075)

28                                                  jeremy.taylor@bakerbotts.com
                                                L. May Eaton (SBN 298123)

| | |
|---|---|
| 1 | may.eaton@bakerbotts.com |
| | Wayne O. Stacy (*pro hac vice*) |
| 2 | wayne.stacy@bakerbotts.com |
| 3 | DESMARAIS LLP |
| | John M. Desmarais (*pro hac vice*) |
| 4 | jdesmarais@desmaraisllp.com |
| | Michael P. Stadnick (*pro hac vice*) |
| 5 | mstadnick@desmaraisllp.com |
| 6 | Justin P.D. Wilcox (*pro hac vice*) |
| | jwilcox@desmaraisllp.com |
| 7 | Jordan N. Malz (*pro hac vice*) |
| | jmalz@desmaraisllp.com |
| 8 | Steven M. Balcof (*pro hac vice*) |
| 9 | sbalcof@desmaraisllp.com |
| 10 | By:  /s/ Steven M. Balcof |
| | Steven M. Balcof |
| 11 | |
| 12 | *Attorneys for Defendant* |
| | *Cisco Systems, Inc.* |

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically via ECF in compliance with Local Rule 5-5(a) on October 26, 2017.  As such, this document was served on all counsel who have consented to electronic service.

> By:  /s/ Steven M. Balcof
> Steven M. Balcof
>
> Attorney for Defendant
> *CISCO SYSTEMS, INC.*