BAKER BOTTS L.L.P.
Wayne O. Stacy (SBN 314579)
wayne.stacy@bakerbotts.com
Sarah J. Guske (SBN 232467)
sarah.guske@bakerbotts.com
Jeremy J. Taylor (SBN 249075)
jeremy.taylor@bakerbotts.com
101 California Street
36th Floor, Suite 3600
San Francisco, California  94111
Telephone:      (415) 291-6200
Facsimile:      (415) 291-6300

Attorneys for Defendant
CISCO SYSTEMS, INC.

DESMARAIS LLP
John M. Desmarais (*pro hac vice*)
jdesmarais@desmaraisllp.com
Justin P.D. Wilcox (*pro hac vice*)
jwilcox@desmaraisllp.com
Jordan N. Malz (*pro hac vice*)
jmalz@desmaraisllp.com
Steven M. Balcof (*pro hac vice*)
sbalcof@desmaraisllp.com
Jennifer Przybylski
jprzybylski@desmaraisllp.com
230 Park Avenue
New York, NY  10169
Telephone:      (212) 351-3400
Facsimile:      (212) 351-3401

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| STRAIGHT PATH IP GROUP, INC., | Case No. 3:16-cv-03463-WHA |
| Plaintiff, | **DEFENDANT CISCO SYSTEMS, INC.'S MOTION FOR ATTORNEYS' FEES AND COSTS** |
| v. | |
| CISCO SYSTEMS, INC., | |
| Defendant. | |
| | Honorable Judge William H. Alsup |
| | Hearing Date: August 1, 2019 |
| | Hearing Time: 8:00 AM |

## TABLE OF CONTENTS

I.      INTRODUCTION...................................................................................................1

II.     BACKGROUND ...................................................................................................2

    A.      After suing Cisco In 2014, Straight Path Voluntarily Dismissed that
        Action Pending Resolution of IPRs Regarding the Patents-In-Suit......2

    B.      The Patents-In-Suit Claim a Single, Narrow Invention Reflected In
        the "Is Connected" Limitations. ..................................................................3

    C.      Straight Path Preserved the Validity of Its Patents During IPR With
        Its Narrow Construction of "Is Connected."...........................................4

        1.      The *Sipnet* IPR Appeal - The Federal Circuit Holds That
            "Is Connected" Means "Is Connected to the Computer
            Network At the Time That the Query Is Transmitted To
            the Server."........................................................................................4

        2.      The *Samsung* IPR Appeal - Straight Path "Boxed [Itself]
            Into a Pretty Narrow Infringement Argument." .......................5

    D.      Straight Path Filed a Second Suit Despite Lacking a Viable Theory
        of Infringement Under Its Construction of "Is Connected." ................6

    E.      This Court Granted Summary Judgment of Noninfringement
        Based On the "Is Connected" Limitation. ...............................................7

III.    LEGAL STANDARD ...........................................................................................8

    A.      An Award of Attorney's Fees Under 35 U.S.C. § 285 Is Appropriate
        in "Exceptional Cases." ...............................................................................8

    B.      This Court May Exercise Its Inherent Authority To Impose
        Sanctions Against a Party for Bad Faith Conduct...................................9

    C.      Pursuant To 28 U.S.C. § 1927, an Attorney Whose Litigation
        Conduct Is Reckless May Be Held Liable for Attorneys' Fees and
        Costs. ..............................................................................................................9

IV.     ARGUMENT ......................................................................................................10

    A.      This Court Should Award Cisco Its Attorneys' Fees Because this Is
        an 'Exceptional' Case Under *Octane Fitness*........................................10

        1.      Straight Path's Infringement Case Was Meritless Because
            It Failed To Apply the Federal Circuit's Construction of
            "Is Connected." ...............................................................................10

        2.      Straight Path's Infringement Theory Was Frivolous and
            Unreasonable Because, as the Court Correctly Concluded,
            It Attempted to Read Its Patents On Technology as Old as
            the Telephone Itself.......................................................................12

            3.      Straight Path's Litigation Conduct Was Unreasonable
                    Because It Disregarded the Local Patent Rules and This
                    Court's Authority ........................................................................13

    B.      This Court Should Exercise Its Inherent Authority To Award Cisco
            Its Non-Taxable Costs Because Straight Path's Lawsuit Was
            Conducted in Bad Faith ...........................................................................15

    C.      Straight Path's Attorneys Should Be Held Jointly Liable for All of
            Cisco's Fees and Costs Under 28 U.S.C. § 1927 Because They
            Recklessly Multiplied the Proceedings Unreasonably and
            Vexatiously ...............................................................................................16

V.  FINANCIAL JUSTIFICATION FOR THE AMOUNT OF FEES AND
    COSTS THAT CISCO SEEKS TO RECOVER .............................................17

    A.      Cisco's Request For $3,840,292.91 In Attorneys' Fees Is
            Reasonable. ...............................................................................................18

            1.      Legal Standard .................................................................18

            2.      Cisco's Flat Fee Agreements. ...........................................18

            3.      Cisco's Fees Are Reasonable For A Litigation of this
                    Complexity and Magnitude ..............................................20

    B.      Cisco's Request For $1,508,387.54 In Costs Is Reasonable .................23

            1.      Legal Standard .................................................................23

            2.      Cisco's Taxable Costs ......................................................23

            3.      Cisco's Non-Taxable Costs ..............................................24

    C.      Pre- and Post-Judgment Interest.............................................................24

VI. CONCLUSION ...................................................................................................25

1

# TABLE OF AUTHORITIES[1]

2

**Cases**

3

*A & L Tech. v. Resound Corp.*,
    No. 93-c-00107, 1995 WL 415146 (N.D. Cal. June 29, 1995)........................................ 9

4

5

*Asus Comp. Int'l v. Round Rock Research, LLC*,
    Case No. 12-cv-02099 JST (NC), 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014) ...................... 14

6

*Burlington v. Dague*,
    505 U.S. 557 (1992).......................................................................................... 18

7

8

*Bywaters v. U.S.*,
    670 F.3d 1221 (Fed. Cir. 2012) .............................................................................. 18

9

*Christian v. Mattel, Inc.*,
    286 F.3d 1118 (9th Cir. 2002) ......................................................................... 9, 15

10

11

*Fink v. Gomez*,
    239 F.3d 989 (9th Cir. 2001) .......................................................................... 9, 15

12

*Homeland Housewares, LLC v. Sorensen Research*,
    581 Fed. App'x 877 (Fed. Cir. 2014) ....................................................................... 18

13

14

*Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enters., Inc.*,
    No. 08-cv-7587, 2009 WL 9137315 (C.D. Cal. Dec. 14, 2009)...................................... 18

15

16

*Kilopass Tech., Inc. v. Sidense Corp.*,
    82 F. Supp. 3d 1154 (N.D. Cal. 2015) ...................................................... 18, 19, 21, 23

17

*Linex Technologies, Inc. v. Hewlett-Packard Co.*,
    Case No. C 13-159 CW, 2014 WL 4616847 (N.D. Cal. September 15, 2014)........................... 11

18

19

*Mathis v. Spears*,
    857 F.2d 749 (Fed. Cir. 1988) ........................................................................ passim

20

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014)................................................................................... passim

21

22

*Oracle America, Inc. v. Google Inc.*,
    2001 WL 4479305 (N.D. Cal. Sept. 26, 2011) ........................................................... 14

23

*Phonometrics, Inc. v. Westin Hotel Co.*,
    350 F.3d 1242 (Fed. Cir. 2003) ..................................................................... 9, 11, 17

24

25

*Qualcomm Inc. v. Broadcom Corp.*,
    No. 05-cv-1958-B, 2007 WL 9677112 (S.D. Cal. Oct. 29, 2007), *report and recommendation
    adopted by* 2007 WL 4351017 (S.D. Cal. Dec. 11, 2007).................................... 22, 23, 24, 25

26

27

*Samsung Elecs. Co., Ltd. v. Straight Path IP Group, Inc.*,
    No. 2016-2004, 2017 WL 2705311 (Fed. Cir. June 23, 2017)............................................. 3, 5, 6

28

---

[1] Emphasis has been added unless otherwise noted.

*Samsung Elecs. Co., Ltd. v. Straight Path IP Grp., Inc.*,
   696 F. App'x 1008 (Fed. Cir. 2017) ............................................................................. 6

*Segan v. Zynga*,
   131 F. Supp. 3d 956 (N.D. Cal. 2015) ....................................................................... 13

*Straight Path IP Group, Inc. v. Cisco Systems, Inc.*,
   No. 14-cv-04312, D.I. No. 1 (N.D. Cal. Sept. 24, 2014) ........................................... 2

*Straight Path IP Group, Inc. v. Sipnet EU S.R.O.*,
   806 F.3d 1356 (Fed. Cir. 2015) ............................................................................... 4, 5

*Straight Path IP Group, LLC v. Apple Inc.*,
   Nos. 18-1491, 18-1492, D.I. 86 (Fed. Cir. January 23, 2019) ................................... 8

*Thermolife Int'l, LLC v. Myogenix Corp.*,
   No. 13-cv-651, 2018 WL 325025 (S.D. Cal. Jan. 8, 2018) ........................................ 9

*TVIIM, LLC v. McAfee, Inc.*,
   851 F.3d 1356 (Fed. Cir. 2017) ............................................................................... 15

**Statutes**

28 U.S.C. § 1927 ................................................................................................... passim

28 U.S.C. § 1961 ........................................................................................................ 25

35 U.S.C. § 285 ..................................................................................................... passim

Cal. Const. art 15, § 1 ............................................................................................... 25

**Rules**

Fed. R. Civ. Proc. 54(d)(1) ....................................................................................... 23

L.R. 54 ....................................................................................................................... 23

1

## NOTICE OF MOTION AND MOTION

2

**PLEASE TAKE NOTICE THAT** Defendant Cisco Systems, Inc. ("Cisco") respectfully

3

moves for attorneys' fees and costs pursuant to 35 U.S.C. § 285, the Court's inherent authority,

4

and 28 U.S.C. § 1927.  In accordance with the Court's Order Setting Briefing Schedule For

5

Attorney's Fees, the motion will be heard on August 1, 2019 at 8:00 AM, before the Honorable

6

Judge William Alsup.   D.I. 209.   Cisco bases its motion on the contemporaneously filed

7

memorandum of points and authorities and supporting evidence set forth in the declarations of

8

Steven Balcof, Jennifer Przybylski, Justin P.D. Wilcox, Wayne Stacy, and Laurie Wall and any

9

subsequently filed supplemental briefing and accompanying papers, pleadings and papers filed in

10

this action, and any other arguments, evidence, and matters submitted to the Court, at the hearing

11

or otherwise.

12

## STATEMENT OF RELIEF REQUESTED

13

Pursuant to 35 U.S.C. § 285, the Court's inherent authority, and 28 U.S.C. § 1927, Cisco

14

seeks attorneys' fees and costs from August 2016 through November 2017.

15

## MEMORANDUM OF POINTS AND AUTHORITIES

16

## I.     INTRODUCTION

17

Straight Path's meritless patent infringement suit against Cisco is the poster-child for

18

"exceptional" cases under 35 U.S.C. § 285 and the Supreme Court's decision in *Octane Fitness,*

19

*LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  Before it filed this case,

20

Straight Path defended the validity of certain Patents-In-Suit[2] in *inter partes* review proceedings

21

("IPRs") by persuading the Federal Circuit to narrowly construe the claim limitation "is

22

connected"—Straight Path's sole distinction from the prior art.  Throughout this litigation,

23

however, Straight Path prosecuted its infringement case untethered to that construction or its IPR

24

validity arguments, flouting black-letter law that patent claims must be applied the same way for

25

both validity and infringement.  But the Court cut through Straight Path's doubletalk, granting

26

summary judgment of noninfringement in favor of Cisco:

27

28

---

[2] The Patents-in-Suit are U.S. Patent Nos. 6,009,469, 6,108,704, 6,131,121, and 6,701,365.

> The essence of this order is that the patent owner saved its patents from invalidity by making clear-cut representations to the Federal Circuit—representations that it cannot now disavow in order to prove its infringement case.  Being bound by the Federal Circuit's rulings as a result of the patent owner's prior representations, this order holds that there is no way defendants' accused products infringe the asserted claims at issue.

D.I. 164 at 1–2.  No doubt exists that Straight Path litigated untenable claims in an unreasonable manner, rendering this case exceptional.

Straight Path's counsel recklessly litigated this case, warranting sanctions under 28 U.S.C. § 1927.  *First*, Straight Path's attorneys should have known before they filed this suit that their infringement claims were untenable because (a) the Federal Circuit had already construed the "is connected" limitation; and (b) documentation regarding the operation of Cisco's accused products was publicly available when the case was filed.  For example, the fact that Cisco's accused products practiced the Session Initiation Protocol ("SIP") communication standard and the details of that standard—the crux of Straight Path's infringement case—were public knowledge.  *Second*, Straight Path's counsel litigated this case untethered to its client's previous positions and the Federal Circuit's rulings.  And, *third*, Straight Path's counsel violated the Patent Local Rules, the law of this District, and the Court's order by adding fifty new products to the case during expert discovery—products that it never disclosed in its court-required contentions.

In short, Cisco respectfully requests that the Court grant Cisco its reasonable attorneys' fees and costs detailed herein, based upon the exceptional nature of this case, counsel for Straight Path's reckless conduct, and this Court's inherent authority.

## II.    BACKGROUND

### A.    After suing Cisco In 2014, Straight Path Voluntarily Dismissed that Action Pending Resolution of IPRs Regarding the Patents-In-Suit.

Straight Path originally filed suit against Cisco for alleged infringement of the Patents-in-Suit on September 24, 2014.  *Straight Path IP Group, Inc. v. Cisco Systems, Inc.*, No. 14-cv-04312, D.I. No. 1 (N.D. Cal. Sept. 24, 2014).  Shortly thereafter, Straight Path and Cisco entered into a standstill agreement in view of various pending IPR proceedings regarding certain of the Patents-in-Suit.  As a result, Straight Path voluntarily dismissed that suit pending the resolution of those IPR proceedings on December 24, 2014.  *Id.*, D.I. No. 37.

**B.      The Patents-In-Suit Claim a Single, Narrow Invention Reflected In the "Is Connected" Limitations.**

Although the Patents-in-Suit[3] are generally directed to the very broad field of computer network communications, they claim a single, narrow invention—checking whether an intended communication or call recipient's device is connected to the network (or in other words, is "on-line") *before* attempting to call that device.  To make a call between two devices connected to a network, the Patents-in-Suit explain that the calling device must first "query" a server to determine if the callee device is connected to the network or on-line:

> [A caller] process sends a ***query*** to the connection server, which searches the database to determine ***whether a second processing unit is active and on-line***.  If the callee is active and online, the connection server sends the IP address of the callee from the database to the first processing unit, i.e., performs a point-to-point Internet protocol communication. The first processing unit then directly establishes the point-to-point Internet communication with the callee using the retrieved IP address.

*Samsung Elecs. Co., Ltd. v. Straight Path IP Group, Inc.*, No. 2016-2004, 2017 WL 2705311, at *1 (Fed. Cir. June 23, 2017).

As shown in Figure 17A of the '469 Patent, the caller's phone (WebPhone 1536) first checks whether the intended callee's phone (WebPhone 1538) is on-line by querying the server (Global Server 1500), as outlined in red:



*Figure 17A*

The '469 Patent specification explains that the calling device (Webphone 1536) opens a connection to Server 1500 and transmits a <CONNECT REQ> packet containing the callee's e-mail address. Server 1500 then uses the callee's email information to determine whether the callee's device is online, and if so, the IP address for the callee device (Webphone 1538).  If the callee's device is

---

[3] The four Patents-in-Suit share the same alleged inventors and are related.

online, Server 1500 transmits the IP address within a <CONNECT ACK> packet to the calling device (Webphone 1536), which the calling device uses to initiate a "Call" with the callee device. If, however, the selected callee device is off line, Server 1500 transmits an <OFF LINE> packet to the caller device (Webphone 1563), indicating that the desired party is not on-line. '469 Patent at 23:63-24:21.

The parties agreed that the query of on-line status functionality is captured in each Asserted Claim through an "is connected," "on-line," "accessible," or "connected" limitation, which the parties have agreed should all be construed to have the same meaning. *See* D.I. 32 at 1.

### C. Straight Path Preserved the Validity of Its Patents During IPR With Its Narrow Construction of "Is Connected."

#### 1. The *Sipnet* IPR Appeal - The Federal Circuit Holds That "Is Connected" Means "Is Connected to the Computer Network At the Time That the Query Is Transmitted To the Server."

The Patent Trial and Appeals Board (the "Board") issued a Final Written Decision in an IPR of Straight Path's '704 patent, finding that the majority of the claims were unpatentable over two prior art references called NetBIOS and WINS. *Sipnet EU S.R.O.*, IPR2013-00246, Final Written Decision at 2, 25 (PTAB Oct. 9. 2014). In reaching that decision, the Board determined that the claimed "query" as to whether an intended call recipient "is connected" need only "request whatever the connection server has listed about a second unit's on-line status, even if the listed information is not accurate at the time of the query." *Straight Path IP Group, Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1360 (Fed. Cir. 2015) ("*Sipnet*").

Straight Path appealed the Board's decision to the Federal Circuit, arguing that the Board's construction of "is connected" was too broad, and therefore, erroneous. In its brief, Straight Path explained that:

> A central feature of the patented invention is a system for determining whether the 'second process'—the target of a user's desired communication—is actually connected to the computer network *at the time the communication is sought*. This temporal dimension is a key part of the claimed invention.

D.I. 164 at 5 (emphasis in original). According to Straight Path, "[t]he language of the claims in fact expressly requires a determination of whether the second process (a computer program) is connected to the computer network, ***at the instant in time*** when the first process (also a computer

program) queries whether the second process is connected to the computer network, and therefore available to communicate." Balcof Ex.[4] A, Straight Path Br., *Sipnet*, No. 2015-1212, D.I. 23 at 41–42 (quotation and citation omitted).

The Federal Circuit agreed with Straight Path. *Sipnet*, 806 F.3d at 1360; *see also* D.I. 164 at 7. Specifically, the Federal Circuit found that "is connected" could not mean "is still registered, once was connected, and may or may not still be connected"—all possibilities covered by the Board's construction. *Id.* In view of the plain meaning of the term, the Federal Circuit construed "is connected" to mean "is connected to the computer network ***at the time that the query is transmitted to the server***." *Id.* at 1363. As a result, the Board's decision was reversed and the case was remanded for consideration in view of that construction. *Id.* Upon remand, the Board upheld the validity of the instituted claims. *See Sipnet EU S.R.O.*, IPR2013-00246, Final Written Decision, ECF 73 at 17 (PTAB May 23, 2016).

### 2. The *Samsung* IPR Appeal - Straight Path "Boxed [Itself] Into a Pretty Narrow Infringement Argument."

Between August 2014 and June 2015, the Board instituted multiple IPR petitions for the '704, '469, and '121 patents over WINS and NetBIOS and joined them in two groups for final decisions issued on March 4, and May 9, 2016.[5] The Board upheld the validity of all instituted claims based on its application of the Federal Circuit's construction of "is connected." *Samsung Elecs. Co., Ltd. v. Straight Path IP Group, Inc.*, No. 2016-2004, 2017 WL 2705311, at *1 (Fed. Cir. June 23, 2017) ("*Samsung*"). The petitioners appealed that decision.

On appeal, Straight Path argued that WINS and NetBIOS do not track online status. Again, the Federal Circuit agreed with Straight Path, holding that the two references did not disclose the "is connected" query because "not only is the prior art not designed to keep track of current online

---

[4] All references to Balcof Ex. identify exhibits to the Declaration of Steven Balcof filed in support of Cisco System Inc.'s Brief In Support Of Its Motion For Attorneys' Fees And Costs.

[5] On March 4, 2016, the Board issued an identical Final Written Decision in IPR2014-01366 ('704 Patent), IPR2014-01367 ('469 Patent), IPR2014-01368 ('121 Patent), IPR2015-01006 ('121 Patent), IPR2015-01007 ('469 Patent), and IPR2015-01011 ('704 Patent). On May 9, 2016, the Board issued an identical Final Written Decision in IPR2015-00196 ('121 Patent), IPR2015-00198 ('469 Patent), IPR2015-00209 ('704 Patent), IPR2015-01397 ('121 Patent), IPR2015-01398 ('704 Patent), and IPR2015-01400 ('469 Patent).

status, it is not designed to check online status when responding to a query for a user's IP address." *Samsung Elecs. Co., Ltd. v. Straight Path IP Grp., Inc.*, 696 F. App'x 1008, 1013 (Fed. Cir. 2017). Notably, one panel member remarked that Straight Path's construction had substantially narrowed the claims:

> **The Court**: You've boxed yourself into a pretty narrow infringement argument, though, haven't you, with this claim construction?

Balcof Ex. B, *Samsung* Tr. at 28:25–29:2.

### D. Straight Path Filed a Second Suit Despite Lacking a Viable Theory of Infringement Under Its Construction of "Is Connected."

On June 21, 2016,[6] Straight Path filed a second suit against Cisco—this case—for allegedly infringing the Patents-in-Suit.  In its Complaint, Straight Path explained that the Patents-in-Suit require the query of on-line status functionality:  "Because real-time point-to-point communications can only be established between applications that ***are on-line at the time the desired communication is sought***, the Patents-in-Suit disclose a point-to-point Internet communications protocol that enables: (1) a first computer program to query a connection server to determine if a second computer program ***is currently connected to the network . . .***"  D.I. 1 at 3 (citations omitted).  Moreover, Straight Path acknowledged that "the Federal Circuit confirmed the claim construction [of 'is connected']"—which requires the query of on-line status before a call is attempted.  *Id*. at 5.  Straight Path nevertheless did not explain in its Complaint how the accused Cisco products satisfied that pivotal limitation under the Federal Circuit's construction despite the fact that the accused Cisco products' use of a publicly available communication standard—SIP—formed the basis of its infringement allegation.  D.I. 1 at 7, 10, 13, 17 ("[o]n information and belief, [Cisco's] VoIP products utilize SIP (Session Initiation Protocol) to . . . track the network addresses and online status of users").

In October 2016, Straight Path provided its Patent L.R. 3-1 Infringement Contentions ("Infringement Contentions"), which lacked a viable theory of infringement under the Federal

---

[6] Straight Path filed this case following the Board's final written decisions in *Samsung*, but did not wait for the resolution of the petitioners' appeals.

1    Circuit's "is connected" construction.  Relying on the publicly available SIP industry standard,

2    Straight Path contended that a SIP "INVITE" message—which is transmitted from a caller's phone

3    to a server after the caller dials the callee's phone number and attempts a call—constituted the

4    claimed "query."  Balcof Ex. C, Infringement Contentions Ex. A at 12–15.  Straight Path contended

5    that the SIP "200 OK" message—which is not generated until after the callee answers her ringing

6    phone—constituted the "is connected" limitation under the Federal Circuit's construction.  *Id.*

7    However, the "200 OK" message (*i.e.*, the alleged indication of online status) occurs after the call

8    is answered and not at the time the "query" is transmitted to the server as required by that

9    construction.  Subsequently, the parties adopted the Federal Circuit's construction for "is

10   connected" in this litigation (D.I. 32 at 1), and the case proceeded through expert discovery.

11   Straight Path's technical expert, Mr. Cole, adopted the same flawed infringement theory in

12   his expert reports.  *See* D.I. 164 at 12 (citation omitted).  In his opinion, the claimed "query is the

13   SIP invite" (Balcof Ex. D, Cole Tr. at 146:14–17), and he "specifically rel[ied] on the '200 (OK)'

14   [messages as] the indication of online status." (*Id.* at 146:18–21).  Significantly, Mr. Cole admitted

15   that (1) the Cisco server does not know whether a phone is connected without first sending the SIP

16   INVITE message to that phone (*id.* at 152:3–14), and (2) that the '200 (OK)' message is generated

17   only after a caller answers a phone.  *Id.* 146:22–24.  Thus, Straight Path's expert's infringement

18   opinion directly contradicted Straight Path's validity arguments in the IPRs and was untenable in

19   view of the Federal Circuit's "is connected" claim construction.

20       **E.    This Court Granted Summary Judgment of Noninfringement Based On the**
21       **"Is Connected" Limitation.**

22   On October 5, 2017, Cisco filed a motion for summary judgment of noninfringement that

23   the accused Cisco products do not meet the "is connected" limitation.  Cisco explained that the

24   undisputed facts showed that its accused products do not track whether a device "is connected to

25   the computer network at the time the query is transmitted to the server."  This Court granted

26   summary judgment of noninfringement in favor of Cisco.  D.I. 164.

27   This Court found that the undisputed facts showed that Cisco's accused products did not

28   meet the "is connected" limitation under the Federal Circuit's construction.  It explained that "[t]he

invention that Straight Path described to the Federal Circuit requires a server that is able to, *at the very moment in time* that a first process asks, determine whether or not a second process is online by *checking its own database*, which must always remain accurate by continuously *tracking* the online or offline status of endpoint processes so that it can answer this very question." D.I. 164 at 13 (emphasis in original). This Court concluded that "Cisco's accused system simply does not work [that] way" because

> the undisputed *facts* show that Cisco's server does not track the current online or offline statuses of endpoint processes, nor can it determine that information by asking its own database *at the very moment in time* that it is queried. Instead, when the accused server receives an INVITE message or 'query' from a first process, it simply attempts to make the requested call using periodically-updated registration information regardless of whether or not the second process is *actually* online *at that very moment*.

*Id.* at 13, 16 (emphasis in original). This Court also found that the "200 OK" message—that Straight Path argued is an indication that the callee device "is connected"—is not generated unless and until the callee answers the phone. D.I. 164 at 13.

In addition to granting summary judgment, the Court *sua sponte* ordered Straight Path and its counsel to "SHOW CAUSE why they should not be held liable for defendants' attorney's fees by virtue of this being an 'exceptional' case within the meaning of Section 285 of Title 35 of the United States Code." D.I. 164 at 22. On January 4, 2018, the Court stayed the issue of attorneys' fees pending the resolution of Straight Path's appeal. D.I. 179.

After full briefing and oral argument, the Federal Circuit summarily affirmed the Court's summary judgment of noninfringement pursuant to Federal Circuit Appellate Rule 36. *Straight Path IP Group, LLC v. Apple Inc.*, Nos. 18-1491, 18-1492, D.I. 86 (Fed. Cir. January 23, 2019).

## III.   LEGAL STANDARD

### A.   An Award of Attorney's Fees Under 35 U.S.C. § 285 Is Appropriate in "Exceptional Cases."

35 U.S.C. § 285 provides that courts "may award attorney fees to the prevailing party" "in exceptional cases." An "exceptional case" is "one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC*, 134 S. Ct. at 1756. To determine whether a case is

1   "exceptional," district courts must exercise "equitable discretion" in considering "the totality of

2   the circumstances," including considerations of "frivolousness, motivation, objective

3   unreasonableness (both in the factual and legal components of the case) and the need in particular

4   circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6.

### B. This Court May Exercise Its Inherent Authority To Impose Sanctions Against a Party for Bad Faith Conduct.

7          In addition to its statutory authority, the Court has inherent authority to impose sanctions.

8   "To impose sanctions under its inherent authority, the district court must make an explicit finding

9   . . . that counsel's conduct constituted or was tantamount to bad faith." *Christian v. Mattel, Inc.*,

10  286 F.3d 1118, 1131 (9th Cir. 2002). "Sanctions [under a court's inherent authority] are available

11  for a variety of types of willful actions, including recklessness when combined with an additional

12  factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989,

13  994 (9th Cir. 2001). A district court's inherent equitable power and informed discretion allow it

14  to award expenses in addition to those expressly identified in 35 U.S.C. § 285. *Mathis v. Spears*,

15  857 F.2d 749, 755–56 (Fed. Cir. 1988); *see also Thermolife Int'l, LLC v. Myogenix Corp.*, No. 13-

16  cv-651, 2018 WL 325025, *13–14 (S.D. Cal. Jan. 8, 2018) (awarding expert fees under the court's

17  inherent authority); *A & L Tech. v. Resound Corp.*, No. 93-c-00107, 1995 WL 415146, *4 (N.D.

18  Cal. June 29, 1995) (awarding expert fees because "the use of experts in this case was a necessity").

### C. Pursuant To 28 U.S.C. § 1927, an Attorney Whose Litigation Conduct Is Reckless May Be Held Liable for Attorneys' Fees and Costs.

21         28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in

22  any case unreasonably and vexatiously may be required by the court to satisfy personally the

23  excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." To

24  impose § 1927 sanctions, the Ninth Circuit requires a finding that counsel was reckless in is

25  litigation conduct. *Fink*, 239 F.3d at 993. A district court may impose the same fee and cost

26  sanctions on counsel as those imposed on its client under § 285 and/or its inherent authority. *See,*

27  *e.g.*, *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242 (Fed. Cir. 2003).

28

1

## IV.    ARGUMENT

2

### A.    This Court Should Award Cisco Its Attorneys' Fees Because this Is an 'Exceptional' Case Under *Octane Fitness*.

3

4    The totality of the circumstances demonstrates that this is an exceptional case.  Straight

5   Path never asserted a viable infringement claim under the Federal Circuit's claim construction that

6   it had previously advocated to preserve the validity of the Patents-in-Suit during IPRs.  Indeed,

7   Cisco prevailed on summary judgment, and the Federal Circuit summarily affirmed.   These

8   rulings, in addition to other circumstances discussed below, unequivocally show that (1) Straight

9   Path's litigation position was, at best, exceptionally weak, and (2) it litigated this case in an

10  unreasonable manner—either of which alone is sufficient to render this case exceptional.  *See*

11  *Octane Fitness*, 134 S. Ct. at 1756.

12

### 1.    Straight Path's Infringement Case Was Meritless Because It Failed To Apply the Federal Circuit's Construction of "Is Connected."

13

14    Straight Path's infringement theory was irreconcilable with the Federal Circuit's

15  construction of "is connected" and its prevailing validity arguments in the IPRs.  Before the Federal

16  Circuit, Straight Path advocated a narrow construction of "is connected"—"is connected to the

17  computer network *at the time that the query is transmitted to the server*"—to differentiate the

18  Patents-In-Suit from the prior art.  The Federal Circuit adopted that construction, allowing Straight

19  Path to preserve the validity of the Patents-in-Suit in the IPRs.  But Straight Path's Federal Circuit

20  victory came at a cost—it "boxed [Straight Path] into a pretty narrow infringement argument."

21  Balcof Ex. B, *Samsung* Tr. at 28:25–29:1.  Straight Path refused, however, to be constrained by

22  the consequences of the Federal Circuit's construction.  Indeed, it asserted infringement against

23  Cisco untethered to the limitations on the asserted claims resulting from that construction and far

     exceeding the narrow claim scope that Straight Path preserved in the IPRs.  D.I. 164 at 13.

24

25    This Court found that the undisputed facts showed that Cisco's accused products do not

26  determine whether a callee phone is connected to the network *at the time that the query is*

27  *transmitted to the server* as required by the construction.  D.I. 164 at 13.  Even under Straight

28  Path's own infringement theory, the accused products do not meet that limitation.  Indeed, under

     that theory, the indication that the callee phone is connected to the network is a signal generated

by that phone—not the server—and not unless that phone is answered.  *Id.*  Yet, Straight Path previously told the Federal Circuit that the claimed "server must ask its own always-accurate database for the answer to a query about the second process's online or offline status."  *Id.*  As the Court recognized, Straight Path's expert even admitted in deposition "that the accused server cannot determine whether or not the second process is actually connected to the computer network at the moment in time that the first process sends [the alleged query] to the server."  *Id.*  In short, Straight Path's infringement theory was untenable.

Straight Path's assertion of a meritless infringement theory in direct conflict with the Federal Circuit's claim construction renders this case exceptional under § 285.  In *Phonometrics*, the Federal Circuit affirmed an exceptional case finding on similar facts.  *Phonometrics, Inc.*, 350 F.3d 1242.[7]  There, the accused infringer also won summary judgment of noninfringement because the patent owner advanced an infringement theory that was not viable under a previous Federal Circuit claim construction of the asserted claims.  *Id.* at 1245–1248.  The patent owner "never once accused [the defendant] of violating the patent" as the Federal Circuit had construed it.  *Id.* at 1247.  The district court found that plaintiff's disregard for binding Federal Circuit precedent rendered the case exceptional and awarded attorneys' fees.  *Id.* at 1245.

Another court in this District reached a similar result in *Linex Technologies, Inc. v. Hewlett-Packard Co.*, Case No. C 13-159 CW, 2014 WL 4616847 (N.D. Cal. September 15, 2014) ("*Linex*").  There, the patent owner had asserted the patent-in-suit on three previous occasions in different fora, and in each of those cases, the same technology accused in *Linex* was found not to infringe.  *Id.* at *1–2.  The district court found that even though the other judgments were not controlling, plaintiff "knew or should have known that its . . . claims were meritless."  *Id.* at *5.  Plaintiff's "actions and admissions, considered alongside several fora's decisions rejecting its litigation arguments, show[ed] that [the patent owner] knew the limits of [technology] that was

---

[7] The Federal Circuit vacated the actual award due to a miscalculation and remanded for recalculation of the fee award.  *Id.* at 1250.  While this Federal Circuit decision predates *Octane Fitness*, it remains valid precedent because the pre-*Octane Fitness* exceptional case standard was more stringent.  *Id.* at 554-558.  Thus, the Federal Circuit's conclusion would have been the same after *Octane Fitness*.

1   crucial to the novelty of the patents." *Id.* As a result, the court determined that the case was

2   exceptional under § 285 and awarded fees to the defendant. *Id.*

3       As the Court's grant of summary judgment and the Federal Circuit's summary affirmance

4   indicate, Straight Path's infringement theory was meritless. As discussed earlier, Straight Path

5   understood that its patents had a limited scope in the wake of the *Sipnet* and *Samsung* appeals and

6   the specific defects in its case against Cisco were obvious from the start. *See* Sections II.C, II.D.

7   Accordingly, the Court should find that this case is "exceptional" and award Cisco, at a minimum,

8   the reasonable attorneys' fees it incurred in defending Straight Path's baseless infringement claims.

9
10
         **2.**    **Straight Path's Infringement Theory Was Frivolous and Unreasonable Because, as the Court Correctly Concluded, It Attempted to Read Its Patents On Technology as Old as the Telephone Itself.**

11       Straight Path's infringement theory, that answering a ringing phone satisfies the "is

12   connected" limitation under the Federal Circuit's construction, is frivolous. *See* D.I. 164 at 16

13   (emphasis in original). No dispute exists that the Patents-In-Suit are directed to and the Asserted

14   Claims require a system that determines whether an intended callee is connected to the network

15   *before* attempting any communication with the intended callee's phone. D.I. 164 at 14 (noting the

16   claimed invention's purported purpose is "streamlining point-to-point communications by

17   obviating the need to attempt potentially-unsuccessful contact with the second process"). But the

18   Court concluded (and the Federal Circuit summarily affirmed) that Cisco's products do not work

19   that way. *Id.* In fact, not only do Cisco's SIP products not work that way, under Straight Path's

20   infringement theory, the accused system does not determine whether the callee's phone is

21   connected until after the callee *answers the phone*. Of course once someone answers a phone, the

22   system knows that the phone is connected to the network—but Straight Path's Asserted Claims do

23   not cover that technology, which is as old as the telephone itself. *See,* D.I. 164 at 16 ("Of course,

24   if the second process answers the call, then that necessarily implies it was online at the time of the

25   attempt—but this truism proves nothing for Straight Path."). As the Court remarked:

26
27
28
       **THE COURT:** You know, sounds like me in the old days. When I was in high school, and nobody had a computer, I would pick up my dial phone, and call one of my buddies to see if they were home. And maybe if they answered the phone, then they're registering with

1

me that they're home. If they didn't answer their phone, then they're
not available . . . That goes back to about a thousand years ago.

2

D.I. 163 at 13:6–14.  As a result, "Straight Path's claim to ownership lapses into absurdity insofar

3

as it attempts to capture the truism that a second process that *answers a call* must necessarily have

4

been *accessible at the time of the call*."  D.I. 164 at 16 (emphasis in original).

5

Straight Path's unreasonable infringement theory by itself is "exceptional."  In *Segan v.*

6

*Zynga*, for example, the case was deemed 'exceptional' because, like here, it was "obvious" that

7

the patent at issue was "very different" from the accused products.  131 F. Supp. 3d 956, 960 (N.D.

8

Cal. 2015).  The patent owner, in an attempt to salvage its lawsuit, advanced a claim construction

9

that the court described as "exceptional" "[e]ven in the world of patent law, where lawyers and

10

experts often take great liberties with words."  *Id.* at 961.  After ruling against the patent owner's

11

proposed construction, the district court granted summary judgment of noninfringement.  *Id.* at

12

960.  The district court subsequently ruled that "[patent owner's] claim construction positions and

13

infringement theory were so unreasonable as to make [the] case 'exceptional.'"  *Id.*

14

In sum, Straight Path's assertion of the Patents-in-Suit to cover functionality as old as the

15

telephone itself is plainly unreasonable and frivolous, rendering this case exceptional under § 285.

16

**3.      Straight Path's Litigation Conduct Was Unreasonable Because It Disregarded the Local Patent Rules and This Court's Authority.**

17

18

Straight Path's litigation misconduct also makes this case exceptional under 35 U.S.C. §

19

285.  Contrary to the Local Patent Rules and this Court's order denying Straight Path's request to

20

amend its contentions, Straight Path added 50 accused products to this case—products that it had

21

not disclosed in its Infringement Contentions—after the close of fact discovery, including them in

22

its expert reports.

23

In its Infringement Contentions, Straight Path identified only three accused products—the

24

9971 IP Phone, Video Communications Server ("VCS"), and Unified Communications Manager

25

("UCM").  Pursuant to that disclosure, Cisco provided discovery for those three products.  D.I. 74

26

at 3.  Straight Path believed, however, that it had provided notice for a larger set of products and

27

moved the Court to compel Cisco to produce discovery for those products.  D.I. 74 at 2.  Along

28

with that request, Straight Path provided prospective amended infringement contentions that were

1   revised to identify more than fifty Cisco products.  D.I. 74 at 5.  Magistrate Judge Beeler declined

2   to rule on Straight Path's motion, concluding as follows:

3               Straight Path's infringement contentions identify only a handful of
            specific subcomponents (see above), but its draft proposed amended
4           contentions identify over fifty. Even considered as a "system"
            theory of infringement, *the court cannot say that the contentions*
5           *provide adequate notice to warrant discovery into all of these*
            *subcomponents*.

6   *Id*.

7       Straight Path subsequently moved for leave to amend its Infringement Contentions to add

8   the 50 new products.  (D.I. 80 at 1, 8, 9.)  Straight Path sought to *expand* its Infringement

9   Contentions to include those products—none of which Straight Path had disclosed or charted in

10  its 2016 Infringement Contentions.

11      But this Court unequivocally denied Straight Path's motion to amend its contentions:

12          All right.  The motion to amend is denied.  It's too late.  We're not going to do
            it….We're too close to trial, and it's a shifting sands.  No.  N-O.  So the motion to
13          amend against Cisco is denied.

14  D.I. 91 at 24:23–25:4 ("Discovery Order").  This Court also denied Straight Path's alternative

15  requested relief to deem the original Infringement Contentions as having disclosed the new

16  products.  (D.I. 90.)

17      Undeterred by the Court's Discovery Order, Straight Path improperly served infringement

18  and damages expert reports that included the 50 new products.  In addition to violating the

19  Discovery Order and the Patent Local Rules, Straight Path's untimely introduction of new accused

20  products in its expert reports violated the law of this District prohibiting the use of expert reports

21  to expand the scope of a case.  *Asus Comp. Int'l v. Round Rock Research, LLC*, Case No. 12-cv-

22  02099 JST (NC), 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014) ("[A] party may not use an

23  expert report to introduce . . . new infringing instrumentalities . . . not disclosed in the party's

24  infringement contentions."); *Oracle America, Inc. v. Google Inc.*, 2001 WL 4479305, at *3 (N.D.

25  Cal. Sept. 26, 2011) (ruling that "infringement theories may be directed only toward accused

26  products that were specifically named in . . . infringement contentions" and excluding phones not

27  specifically named).  Because this issue was not resolved prior to the deadline for Cisco's expert

28

reports, Cisco was constrained to address in its rebuttal expert reports all the new accused products that Straight Path had improperly added to the case in its damages report. This resulted in a material increase in the cost of preparing those reports.

Straight Path's disregard for the Court's Discovery Order, the Local Rules, and the law of this District constitutes unreasonable litigation conduct under the *Octane Fitness* standard and illustrates why this case is "exceptional" and an award of reasonable attorneys' fees is justified.

**B.    This Court Should Exercise Its Inherent Authority To Award Cisco Its Non-Taxable Costs Because Straight Path's Lawsuit Was Conducted in Bad Faith.**

The Court should impose sanctions under its inherent authority because Straight Path conducted this case in bad faith. Straight Path lacked a viable patent claim against Cisco from day one, ignoring the Federal Circuit's claim construction ruling in the *Sipnet* and *Samsung* appeals and Straight Path's own arguments during those proceedings ***on which it prevailed***. Indeed, Straight Path's tortuous infringement theory was untethered to that construction or its IPR validity arguments, flouting black-letter law that patent claims must be applied the same way for both validity and infringement. *See TVIIM, LLC v. McAfee, Inc.*, 851 F.3d 1356, 1362 (Fed. Cir. 2017) ("Claim terms must be construed the same way for the purpose of determining invalidity and infringement."). Furthermore, Straight Path's application of the Federal Circuit's claim construction in asserting infringement was so unreasonable, that the Court described it as "absurd." D.I. 164 at 16. Straight Path also disregarded the Court's Discovery Order, the Local Rules, and the law of this District by accusing products in its expert reports that were not previously disclosed in its contentions. *Fink*, 239 F.3d at 989 (finding that "willful disobedience of a court order" is sanctionable under a court's inherent authority.)

Straight Path's bad faith merits sanctions under the Court's inherent authority. *See, e.g.*, *Christian*, 286 F.3d at 1131. The Court should sanction Straight Path by awarding Cisco's costs, including attorney and staff travel, trial deposit/shipping costs, litigation support vendors, trial graphics support, and expert witness fees. *See, e.g.*, *Mathis*, 857 F.2d 749 at 757–758 ("Nothing in the Rule or statutes impedes or precludes a district court from exercising its inherent equitable power to make whole a party injured by an egregious abuse of the judicial process."), 758-759.

**C.    Straight Path's Attorneys Should Be Held Jointly Liable for All of Cisco's Fees and Costs Under 28 U.S.C. § 1927 Because They Recklessly Multiplied the Proceedings Unreasonably and Vexatiously.**

By litigating a claim that could not meet the standard for infringement from the outset of the case, Straight Path recklessly multiplied these proceedings unreasonably and vexatiously.[8] ***First***, Straight Path's attorneys should have known before they filed this suit that their infringement claims against Cisco's accused products were untenable because (a) the Federal Circuit had already construed the "is connected" limitation; and (b) documentation regarding the operation of Cisco's accused products relevant to this case was publicly available when the case was filed.  Straight Path's counsel possessed the knowledge that their underlying infringement theory directly conflicted with the Federal Circuit's *Sipnet* and *Samsung* decisions and the positions Straight Path (and its IPR counsel) took during those proceedings.  For example, the fact that Cisco's accused products practiced the SIP communication standard and the details of that standard—the crux of Straight Path's infringement case—were public knowledge.  Despite that knowledge, Straight Path's trial counsel filed the case and continued to litigate through summary judgment until Cisco prevailed.

***Second***, Straight Path's counsel litigated this case untethered to its client's previous positions and the Federal Circuit's rulings.  Further, as discussed above, Straight Path's counsel also advanced a frivolous infringement theory that the Court deemed absurd.  Specifically, Straight Path's counsel advocated an infringement position that Straight Path's Patents-in-Suit covered ***answering*** the phone—functionality as old as the telephone itself.  As the Court found, "the 200 OK message [that Straight Path argued indicates that the callee is connected] is not generated unless and until *after* the call has been answered by the second process."  D.I. 164 at 13 (emphasis in original).

***Third***, Straight Path's counsel also acted recklessly by disregarding the Court's Discovery

---

[8] As discussed with respect to inherent authority sanctions, the Court should find that Straight Path's attorneys acted in bad faith.  Even if, however, the Court determines that Straight Path's counsel did not act in bad faith, it should find that counsel acted recklessly by filing and continuing to litigate a lawsuit in conflict with controlling Federal Circuit law.  In either scenario, the Court should hold Straight Path's counsel jointly liable for the entirety of Cisco's fees, expenses, and costs pursuant to § 1927.

Order, the Local Rules, and the law of this District by attempting to use its expert reports to increase the number of accused products from three to over 50.  Because the product identification issue was not resolved prior to the deadlines for responsive expert reports, Cisco was forced to address all of the new accused products that Straight Path improperly added to the case in its rebuttal non-infringement and damages report.  Due to the large volume of new products identified in the reports and the variations amongst them, Straight Path's counsel unreasonably and vexatiously multiplied the various costs associated with Cisco's rebuttal expert reports.

In *Phonometrics*, the Federal Circuit held that arguably less egregious conduct merited sanctions under § 1927.  There, like this case, the patentee's counsel was aware of a Federal Circuit claim construction that rendered untenable its infringement position, but counsel filed new cases and proceeded to litigate that untenable position.  350 F.3d at 1248.  Because "plaintiff had continued to litigate . . . knowing that its claim could not meet the standard for infringement," the Federal Circuit found that the court below had "correctly determined that [plaintiff] had violated section 1927" under the bad faith standard.  *Id.* (internal quotations and citations omitted).

The same reasoning applies here.  Straight Path's attorneys proceeded with an infringement case against Cisco, despite knowledge that its claim could not meet the standard for infringement under the Federal Circuit's claim construction.  Moreover, they attempted to support that claim with frivolous arguments.  That misconduct—filing and litigating a clearly baseless patent infringement suit—is the epitome of recklessly multiplying proceedings.  Thus, Straight Path's counsel should be held liable for the entirety of Cisco's attorneys' fees and costs under § 1927.

## V. FINANCIAL JUSTIFICATION FOR THE AMOUNT OF FEES AND COSTS THAT CISCO SEEKS TO RECOVER

Cisco requests that the Court award $3,840,292.91 in attorneys' fees and $1,509,161.46 in litigation costs to Cisco—a total of $5,349,454.37.[9, 10]   Cisco requests this amount after

---

[9] Although Cisco is entitled to fees incurred through the Federal Circuit appeal and any future Supreme Court appeal, Cisco seeks only those fees incurred through November 2017 in this District, when the Court granted summary judgment of noninfringement in favor of Cisco.

[10] Cisco provides this accounting to streamline the Court's review of the fees and costs issue. Should the Court require additional documentation or briefing related to the identification of fees and costs, Cisco can provide such upon the Court's request.

significantly reducing or omitting various fees and costs actually incurred.  As explained below, Cisco's request is well within the realm of reasonable attorneys' fees determined by courts in similar cases.

### A.  Cisco's Request For $3,840,292.91 In Attorneys' Fees Is Reasonable.

#### 1.  Legal Standard

35 U.S.C. § 285 provides that reasonable attorney fees may be awarded to the prevailing party in an exceptional case.  "Federal Circuit precedent controls the calculation of attorneys' fees in patent cases."  *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1165 (N.D. Cal. 2015) (citing *Bywaters v. U.S.*, 670 F.3d 1221, 1227–28 (Fed. Cir. 2012)).  However, district courts retain "'considerable discretion' in determining the amount of reasonable attorney fees under § 285," based upon their "superior understanding of the litigation."  *Homeland Housewares, LLC v. Sorensen Research*, 581 Fed. App'x 877, 881 (Fed. Cir. 2014) (quotations omitted).

Although the law presumes that the "lodestar represents the 'reasonable' fee," *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992), a court may consider fee arrangements other than invoicing billable hours, *Kilopass*, 82 F. Supp. 3d at 1167–1168.  "In intellectual property cases, federal courts routinely rely on the American Intellectual Property Law Association ("AIPLA") economic survey results published every other year" to evaluate whether requested fees are reasonable.  *Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enters., Inc.*, No. 08-cv-7587, 2009 WL 9137315, *3 (C.D. Cal. Dec. 14, 2009), citing *Mathis*, 857 F.2d at 755–756; *see Kilopass*, 82 F. Supp. 3d at 1171, 1173 n.14 (relying on AIPLA survey in awarding fees).

#### 2.  Cisco's Flat Fee Agreements.

Cisco hired Baker Botts LLP ("Baker Botts") and Desmarais LLP ("DLLP") through monthly flat fee arrangements, without any billable hour component.  Although this case does not present the traditional "billable hour" fee arrangement amenable to a lodestar analysis, the Court may consider alternative fee arrangements "when determining a reasonable fee to the extent it is representative of the prevailing rate in the relevant community."  *Kilopass*, 82 F. Supp. 3d at 1168 (considering a contingency agreement in determining reasonable fees) (quotations omitted).  In fact, the "attorney-client fee arrangement [itself] can often provide valuable indication of the

1    prevailing reasonable rate in the community."  *Id*. at 1167.

2        Cisco's agreements mirror a growing trend to depart from the traditional billable hour

3    structure.  For example, in July 2017, Microsoft announced that it "would shift 90 percent of its

4    legal work to alternative fee arrangements within two years."   Balcof Ex. E, S. Reisman,

5    "Microsoft's Embrace of Alternative Fees Shows Wider Trend," Law360 (Aug. 2, 2017, 9:20 PM

6    EDT)   https://www.law360.com/articles/950642/microsoft-s-embrace-of-alternative-fees-shows-

7    wider-trend.  As a result of this trend, clients have found that "the different arrangements produce

8    better results, more efficient services and closer ties with their outside counsel."  *Id*.

9        Alternative fee arrangements—in other words, alternatives to the billable hour—benefit

10   both the client and outside counsel.  Cisco prefers such arrangements because they provide

11   predictability in legal spending through up-front negotiations of costs that eliminate potential

12   surprises from hourly billing.  *See* Kathryn Hayes Tucker, "Cisco GC Leads Charge for Fixed

13   Rates, Patent Reform," LAW.COM (Jan. 18, 2018, 12:00 AM); R.D. Lang & L.E. Benessere,

14   "Alternative Fee Arrangements' Challenge to the Billable Hour," N.Y.L.J., 258:38 (Aug. 24,

15   2017).  Moreover, alternative fee arrangements incentivize outside counsel to provide efficient,

16   quality work rather than simply billing the most hours possible.  M. Rozen, "Smaller Firms'

17   Message to Big Law on Alternative Fees:  Join the Club," LAW.COM (Aug. 11, 2017, 3:12 PM)

18   https://www.law.com/2017/08/11/smaller-firms-message-to-big-law-on-alternative-fees-join-the-

19   club/.

20           (a)    **Cisco's Agreement With Baker Botts**

21       From August 2016 through November 2017, Cisco paid Baker Botts pursuant to a flat

22   monthly fee arrangement, whereby the fee varied based upon the stage of the litigation.  Wall

23   Decl.[11] ¶¶ 9-11.  Cisco seeks only those fees incurred from Baker Botts' representation up through

24   and including July 2017.  Although Cisco continued to pay Baker Botts for its representation

25   through November 2017, Cisco also paid DLLP for its representation from August 2017 through

26   November 2017, and accordingly does not seek Baker Botts' fees for the months that it overlapped

27

28

---

[11] "Wall Decl." refers to the Declaration of Laurie Wall and exhibits thereto.

1    with DLLP.  Wall Decl. ¶¶ 9–16; Przybylski Decl.[12] ¶ 12.  The monthly amounts paid by Cisco

2    ranged from $100,346.98 to $325,000 per month depending on the stage of the case and anticipated

3    work to be performed.  Wall Decl. ¶¶ 9–11.  Cisco therefore seeks $2,281,959.59 in fees for Baker

4    Botts' defense of this litigation.  Eight attorneys—three partners, one special-counsel, and five

5    associates—from Baker Botts worked on this matter from August 2016 through July 2017.  Stacy

6    Decl.[13] ¶¶ 5-14, Ex. 1.  A breakdown of the key milestones in the case for those months are

7    identified in Mr. Stacy's Declaration at paragraph 17.

8                              **(b)     Cisco's Agreement With DLLP**

9          In August 2017, Cisco retained DLLP.  Baker Botts transitioned the case to DLLP, and

10   DLLP assumed responsibility for Cisco's defense.  Cisco also engaged DLLP through an

11   agreement to flat monthly fee payments for this litigation.  Cisco paid DLLP a flat rate of

12   $389,583.33 per month for this litigation.  Wall Decl. ¶ 12.  Cisco seeks four months of those fees

13   paid to DLLP, totaling $1,558,333.32.  Przybylski Decl. ¶¶ 10–13.  The monthly amount takes into

14   account the stage of the litigation, including the amount of work to be done on expert discovery,

15   summary judgment motions, and pre-trial preparation.  Cisco and DLLP's agreement also included

16   "success bonuses," but Cisco does not seek to recover any success bonuses paid under the

17   agreement.  Wall Decl. ¶¶ 12–14; Przybylski Decl. ¶ 12.  Eight attorneys—two partners, one of-

18   counsel, and five associates—from DLLP worked on this matter from August 2017 through

19   November 2017.  Wilcox Decl. ¶¶ 8-17, Ex. 1.  A breakdown of the key milestones in the case for

20   those months are identified in Mr. Wilcox's Declaration at paragraph 19.

21                  **3.     Cisco's Fees Are Reasonable For A Litigation of this Complexity and
                            Magnitude.**

22

23         This case involved four patents related to computer networking.  Straight Path's damages

24   expert, Mr. Dell, opined that this litigation could be valued at as much as $41 million in base

25   damages.  *See e.g.*, D.I. 176-2 at 2 (Cisco's Opposition to Straight Path's Motion to Strike, citing

26   Mr. Dell's calculations).  Moreover, Straight Path asserted willful infringement, requesting treble

27   damages, enlarging the potential value of this case to $123 million.  *See, e.g.*, D.I. 1 at 19.  The

28   _____

[12] "Przybylski Decl." refers to the Declaration of Jennifer M. Przybylski and exhibits thereto.
[13] "Stacy Decl." refers to the Declaration of Wayne Stacy and exhibits thereto.

case proceeded through summary judgment, causing Cisco to litigate complex and time-consuming fact discovery, claim construction, and expert discovery issues.  Stacy Decl. ¶¶ 7-17.  Cisco's attorneys also invested significant time into pre-trial work, including preparing pre-trial disclosures, meeting with potential trial witnesses, preparing direct and cross examinations, and developing trial strategies.[14]  Wilcox Decl. ¶¶ 10-19.

Cisco paid $5,266,204.95 in attorneys' fees through November 2018 to defend this litigation, inclusive of success bonuses and the costs of litigating the Federal Circuit appeal.[15]  Przybylski Decl. ¶¶ 10; Wall Exs. 1–3.  However, Cisco has chosen to seek only those fees up through its successful summary judgment motion, excluding any bonuses or overlapping payments to Baker Botts and DLLP.  Therefore, Cisco's overall fees requested—$3,840,292.91—are reasonable considering the value of the case and the scope of the representation required to litigate against Straight Path's unreasonable infringement positions.

Based upon the facts of the case, Cisco's request for fees is well below what has been deemed reasonable by other courts, including courts within this District.  For example, in *Kilopass*, a patent litigation that similarly resolved on summary judgment, the court awarded ***$5,315,315.01 in fees alone***.  82 F. Supp. 3d at 1175.  Cisco requests less than 75% of that amount in this case that is very similar in scope and procedural posture to *Kilopass*:

|  | **Straight Path v. Cisco** | **Kilopass v. Sidense** |
|---|---|---|
| **Jurisdiction** | Northern District of California | Northern District of California |
| **Number of Patents** | 4 | 3 (82 F. Supp. 3d at 1159) |
| **Technology** | Computer networking | Semiconductors (*id.* at 1159–1160) |
| **Financial Stake** | $123 Million | $60 Million (*id.* at 1173 n.14) |
| **Reason for "irreconcilable" infringement position** | Claim construction and IPR proceedings narrowed claims | Claim construction and IPR proceedings narrowed claims (*id.* at 1160-1161) |
| **Disposition of case in district court** | Grant of summary judgment of noninfringement | Grant of summary judgment of noninfringement (*id.* at 1161–1162) |
| **Outcome of appeal** | Summary affirmance | Summary affirmance (*id.* at 1163) |

Similarly, in *Qualcomm Inc. v. Broadcom Corp.*, the district court awarded $6,753,749.60 in

---

[14] The Court notified the parties on November 7, 2017, that the pending pretrial conference was continued from November 29, 2017, to February 28, 2018.  D.I. 157.  The Court granted summary judgment of noninfringement on November 13, 2017.  D.I. 164.

[15] This amount does not include the fees that Cisco will incur if Straight Path files a successful petition for certiorari to the Supreme Court or the fees paid for the work on the present motion.

attorneys' fees in a patent litigation case that proceeded through trial.  No. 05-cv-1958-B, 2007 WL 9677112, *9 (S.D. Cal. Oct. 29, 2007), *report and recommendation adopted by* 2007 WL 4351017 (S.D. Cal. Dec. 11, 2007).  Cisco seeks less than 60% of the fees awarded in *Qualcomm* despite the fact that it resolved on summary judgment less than a month before trial was scheduled to begin.

Cisco's request is also well within range of the fees and costs identified by the AIPLA 2017 Report of the Economic Survey (hereafter "AIPLA").[16]  The AIPLA survey instructed respondents "to estimate [total litigation costs] based on a single IP asset, such as one patent at issue."  AIPLA at 3.  For the purposes of surveying the cost of litigation, the AIPLA breaks down its data by (1) the value of the litigation, and (2) the stage of the litigation, considering factors such as location of the case.  The present case falls in the ">$25M" category and between two of the AIPLA's stage of the litigation categories—"Discovery, Motions, and Claim Construction," and "Pre-Trial, Post-Trial, and Appeal."  The following is a summary of the relevant AIPLA statistics:

| AIPLA Category | Mean | Third Quartile |
|---|---|---|
| Litigation-Patent Infringement, All Varieties >$25M Inclusive of discovery, motions, and claim construction in San Francisco | $2.325M | $4.750M |
| Litigation-Patent Infringement, All Varieties >$25M Inclusive of pre-trial, trial, post-trial, and appeal in San Francisco | $4.250M | $7.500M |

These statistics do not take into account the number of asserted patents or the technology involved.

Cisco's request for $3,840,292.91 in fees falls well within the amounts surveyed by the AIPLA in the San Francisco area.  This demonstrates that Cisco's request is reasonable especially given (a) that this case was valued nearly $100 million more than the lowest valued cases surveyed in the AIPLA categories, and (b) the number of patents and the technology involved in this case.

Cisco also notes that its fees request is slightly less than Apple's request in this proceeding, $3,925,045.01.  16-cv-3582, D.I. 215 at 7.  The parity of the requested fees independently incurred by Cisco and Apple in related litigations involving similar patents demonstrates the reasonability

---

[16] Although the AIPLA's Estimated Litigation Costs take into account both fees and costs, including "legal and paralegal services, local counsel, associates, paralegals, travel and living expenses, fees and costs for court reporters, photocopies, courier services, exhibit preparation, analytical testing, expert witnesses, translators, surveys, jury advisors, and similar expenses," it is instructive on estimating the costs of litigation.  AIPLA at 3.

of Cisco's requested fees pursuant to its alternative fee arrangements with counsel. *See Kilopass*, 82 F. Supp. 3d at 1167 ("Negotiation and payment of fees by sophisticated clients are solid evidence of their reasonableness in the market.") (quotations omitted).

**B.      Cisco's Request For $1,508,387.54 In Costs Is Reasonable.**

Cisco seeks costs against Straight Path and its counsel under 28 U.S.C. § 1927 and 35 U.S.C. § 285, including taxable costs under Fed. R. Civ. Proc. 54(d)(1)[17] and non-taxable costs under Fed. R. Civ. Proc. 54(d)(2).

**1.      Legal Standard**

Federal Rule of Civil Procedure 54(d)(1) permits recovery of certain costs to the prevailing party in an action. *See also* L.R. 54. Allowable taxable costs in this District include (1) fees for filing and service of process; (2) reporter's transcripts; (3) depositions; (4) reproduction and exemplification; (5) witness expenses; (6) fees for masters and receivers; (7) costs on appeal; and (8) costs of bonds and security. L.R. 54-3. "The district court's inherent equitable power and informed discretion" allow the court to award expenses in addition to fees expressly provided under 35 U.S.C. § 285. *Mathis*, 857 F.2d 749 at 754; *see also Qualcomm*, 2007 WL 9677112, at *8 (awarding expert fees through court's inherent power).

**2.      Cisco's Taxable Costs**

Cisco seeks only a subset of its taxable costs in this litigation. Of the eight categories permitted under the local rules, Cisco seeks only its fees for the following categories: (1) fees for filing and service of process [$10,106.28]; (3) depositions [$91,908.58]; and (5) witness expenses [$3,317.99]. *See* L.R. 54-3. These expenses include travel for witnesses, court and subpoena fees, and deposition costs, totaling $105,332.85. Przybylski Decl. ¶¶ 14–30, Ex. 3; Wall Exs. 2–3. To the extent the Court deems any such costs not eligible as taxable costs, Cisco requests that the Court award these costs as part of its inherent authority to award non-taxable costs.

---

[17] Because these taxable costs are sought as part of the Court's discretion in awarding sanctions under 28 U.S.C. § 1927 and 35 U.S.C. § 285, a formal bill of costs is not submitted herewith. Should the Court require, Cisco will separately submit a bill of costs for the taxable costs pursuant to L.R. 54.

### 3.     Cisco's Non-Taxable Costs

Cisco incurred numerous costs throughout the course of this litigation, which it would not have incurred but for Straight Path's vexatious pursuit of its untenable claims. Cisco does not seek recovery for many of the costs incurred, including copying and printing expenses, online research expenses, meals for attorneys, arbitrators and mediators, or non-testifying experts. Przybylski Decl. ¶¶ 14–30; Wall Exs. 2–6. Cisco requests only the following categories of expenses:

- **Attorney and Staff Travel.** This includes travel required for depositions, travel required for witness preparation in anticipation of trial, and travel required for court appearances. Cisco does not seek costs for non-refundable rescheduled/cancelled travel. These costs total $99,973.18. *See, e.g., Qualcomm*, 2007 WL 9677112, at *7 (awarding $520,822.11 for travel expenses).

- **Trial Deposit/Shipping Costs.** Due to the busy hotel market in San Francisco, particularly around the holidays, Cisco incurred significant costs to place a deposit on hotel space for its out-of-town counsel for the anticipated December 2017 trial, which was forfeited upon Cisco's success at summary judgment. Cisco's counsel also shipped numerous supplies and attorney materials out to the hotel prior to the Court's order adjourning (and later vacating) the trial date. These costs total $84,831.33. *See, e.g., id.* (awarding $520,822.11 for travel expenses and $44,086.31 for miscellaneous expenses).

- **Litigation Support Vendors.** Cisco seeks the costs for litigation support vendors both hired through its counsel and independently by Cisco. These include vendors assisting with document processing, production, and privilege review. Cisco does not seek costs for vendors who solely provided duplication services. These costs total $240,331.18.

- **Trial Graphics Support.** In preparing for both summary judgment and trial, Cisco contracted with trial graphics vendors to assist counsel. These costs total $32,167.36. *See, e.g., id.* (awarding $114,174.64 for legal graphics services).

- **Expert Fees.** Cisco seeks the costs incurred in retaining experts in this litigation, which include their fees for writing expert reports, consulting on issues in the litigation, and preparing for depositions. Cisco does not seek costs for any non-testifying experts. These costs total $946,525.56. *See, e.g., id.* (awarding $852,652.72 for expert fees).

Przybylski Decl. ¶¶ 14–30, Exs. 3–4; Wall Exs. 2–6. Cisco asks the Court to award these fees through its inherent power to sanction Straight Path.

### C.     Pre- and Post-Judgment Interest

"[A] district court [has] authority, in cases of bad faith or other exceptional circumstances to award prejudgment interest on the unliquidated sum of an award made under Section 285." *Mathis*, 857 F.2d at 761 (quotations omitted). Cisco requests that the Court use its discretion to award prejudgment interest on any award for fees and expenses granted to Cisco. *See Qualcomm*, 2007 WL 9677112 at *9 (awarding defendant prejudgment interest). As explained above, Straight

Path knew the mechanics of its infringement positions relying on SIP and was aware of the unreasonableness of those positions in light of its IPR proceedings before the filing of the complaint. Cisco therefore requests that the Court award prejudgment interest at the state statutory rate of 7%, running from the date of the filing of the complaint (June 21, 2016) through the date of the Court's grant of summary judgment (November 13, 2017). Cal. Const. art 15, § 1; *see Qualcomm*, 2007 WL 9677112 at *9 (applying state rate to the total fees and costs award from time of filing of the complaint through last day of trial, totaling $691,351.85). This prejudgment interest amounts to $523,220.60.

28 U.S.C. § 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court" and "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *See also Mathis*, 857 F.2d at 760 ("'[a]ny judgment' in Section 1961 includes a judgment awarding attorneys fees"). Because "[i]nterest on an attorney fee award [] runs from the date of the judgment establishing the right to the award, not the date of the judgment establishing its quantum," Cisco requests post-judgment interest at the rate of 1.82 percent from the date of entry of final judgment in this case, January 4, 2018, through Straight Path's actual payment of any awarded fees and costs. *See Qualcomm*, 2007 WL 9677112 at *9 (awarding post-judgment interest from date final judgment was entered). For example, as of the date of the hearing on this motion, August 1, 2019, the total post-judgment interest on Cisco's requested fees and costs would be $154,123.33.

## VI.    CONCLUSION

For the reasons stated herein, Cisco respectfully requests that the Court award attorneys' fees, reasonable expenses, and costs in the amount of $5,349,454.37 pursuant to 35 U.S.C. § 285, the Court's inherent authority, and 28 U.S.C. § 1927.

Dated: June 17, 2019

Respectfully submitted,

By:    */s/ Justin P.D. Wilcox*

BAKER BOTTS LLP
Sarah J. Guske (SBN 232467)
sarah.guske@bakerbotts.com
Jeremy J. Taylor (SBN 249075)
jeremy.taylor@bakerbotts.com
L. May Eaton (SBN 298123)
may.eaton@bakerbotts.com
Wayne O. Stacy (*pro hac vice*)
wayne.stacy@bakerbotts.com

DESMARAIS LLP
John M. Desmarais (*pro hac vice*)
jdesmarais@desmaraisllp.com
Justin P.D. Wilcox (*pro hac vice*)
jwilcox@desmaraisllp.com
Jordan N. Malz (*pro hac vice*)
jmalz@desmaraisllp.com
Steven M. Balcof (*pro hac vice*)
sbalcof@desmaraisllp.com
Jennifer Przybylski (*pro hac vice*)
jprzybylski@desmaraisllp.com

**Attorneys for Defendant**

*Cisco Systems, Inc.*