RUSS, AUGUST & KABAT
Marc A. Fenster, SBN 181067
mfenster@raklaw.com
Brian D. Ledahl SBN 186579
bledahl@raklaw.com
Benjamin T. Wang, SBN 228712
bwang@raklaw.com
12424 Wilshire Boulevard
Twelfth Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991


Attorneys for Plaintiff
STRAIGHT PATH IP GROUP, INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| STRAIGHT PATH IP GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> CISCO SYSTEMS, INC. <br> Defendant. | **Case No. 16-cv-03463-WHA** <br><br> **PLAINTIFF'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION FOR ATTORNEYS' FEES AND COSTS** <br><br> Judge: Hon. William Alsup <br> Hearing Date: August 1, 2019 <br> Hearing Time: 8:00 AM |

# TABLE OF CONTENTS

I.   SUMMARY: THIS CASE IS NEITHER EXCEPTIONAL, NOR IN BAD FAITH AND NO AWARD OF FEES IS WARRANTED..........................1

II.  THIS CASE IS NOT EXCEPTIONAL - IT REASONABLY PRESENTED INFRINGEMENT BASED ON AN AGREED CLAIM CONSTRUCTION..............2

III. STRAIGHT PATH ASSERTED A REASONABLE THEORY OF INFRINGEMENT ...................................................................4

   A.  Cisco's Accused UCS Systems Functioned Consistent With the Aims of Straight Path's Patents ......................................5

   B.  Straight Path Analyzed Infringement Under the Agreed Construction.................6

   C.  Straight Path Presented A Reasonable Theory Of Infringement Under The Agreed Claim Construction ..............................10

   D.  Cisco's Systems Do Not Operate on "Technology as Old as the Telephone Itself"..........................................................14

IV.  STRAIGHT PATH LITIGATED THIS CASE REASONABLY AND IN GOOD FAITH..................................................................15

V.   CISCO FAILS TO MEET THE FAR HIGHER BAD FAITH BURDEN FOR SECTION 1927 OR THE COURT'S INHERENT POWERS. ...................17

   A.  Straight Path Pursued This Case In Good Faith.............................18

   B.  Straight Path's Counsel Pursued This Case In Good Faith ...................21

VI.  CISCO FAILS TO JUSTIFY THE AMOUNTS IT SEEKS.........................23

   A.  Cisco Fails To Present Required Lodestar Analysis and Proof.............23

   B.  Cisco's Cost Requests Are Not Properly Justified.........................24

VII. CONCLUSION: CISCO FAILS TO MEET ITS BURDEN TO ESTABLISH ANY BASIS FOR AN AWARD OF FEES OR NON-TAXABLE COSTS..............25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Cases**

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
　　23 F.3d 374 (Fed. Cir. 1994) ...................................................................... 25

*Biax Corp. v. Nvidia Corp.*,
　　626 Fed. Appx. 968 (Fed. Cir. 2015) ....................................................... 3, 13

*City of Burlington v. Dague*,
　　505 U.S. 557 (1992) ..................................................................................... 23

*Collectors Universe, Inc. v. Blake*,
　　2015 WL 12698449 (C.D. Cal., Mar. 16, 2015) .......................................... 3

*Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*,
　　2016 WL 5842187 (C.D. Cal., Oct. 5, 2016) ................................................ 3

*Fink v. Gomez*,
　　239 F.3d 989 (9th Cir. 2001) ...................................................................... 18

*Fogerty v. Fantasy, Inc.*,
　　510 U.S. 517 (1994) ....................................................................................... 3

*Hensley v. Eckerhart*,
　　461 U.S. 424 (1983) ..................................................................................... 24

*In re Keegan Mgmt. Co., Sec. Litig.*,
　　78 F.3d 431 (9th Cir. 1996) ........................................................................ 18

*In re Protegrity Corp.*,
　　2017 WL 747329 (N. D. Cal., Feb. 27, 2017) ............................................. 17

*Kilopass Technology, Inc. v. Sidense Corp.*,
　　112 U.S.P.Q.2d 1376; 2014 WL 3956703 (N.D. Cal., Aug. 12, 2014) ............... 13, 23, 24

*Lieb v. Topstone Indus., Inc.*,
　　788 F.2d 151 (3d Cir. 1986) .......................................................................... 3

*Liew v. Breen*,
　　640 F.3d 1046 (9th Cir. 1981) .................................................................... 21

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
　　2014 WL 6844821 (N.D. Cal. Sept. 15, 2014) ........................................17, 21

*Mathis v. Spears*,
　　857 F.3d 749 (Fed. Cir. 1988 ..................................................................... 25

*Morgan v. County of Yolo*,
　　277 Fed.Appx. 735 2008 WL 2019591 (9th Cir., May 8, 2008) .................... 18

*New Alaska Dev. Corp. v. Guetschow*,
　　869 F.2d 1298 (9th Cir. 1989) .................................................................17, 25

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
　　134 S. Ct. 1749 (2014) ............................................................................. 3, 13

RUSS, AUGUST & KABAT

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986) ............................................................................... 24

*Phonometrics, Inc. v. Westin Hotel Co.*,
    350 F.3d 1242 (Fed. Cir. 2003) ............................................... passim

*Roadway Express, Inc. v. Piper*,
    447 U.S. 752 (1980) ............................................................................... 23

*Samsung Elecs. Co., Ltd. v. Straight Path IP Group, Inc.*,
    696 Fed. Appx. 1008 (Fed. Cir. 2017) ................................... passim

*See Kilopass Technology, Inc. v. Sidense Corp.*,
    82 F.Supp.3d 1154 (N.D Cal. 2015) ................................................. 23

*Segan LLC v. Zynga Inc.*,
    131 F.Supp.3d 956 (N.D. Cal. 2015) ................................................. 23

*Small v. Implant Direct Mfg. LLC*,
    2014 WL 5463621 (S.D.N.Y., Oct. 23, 2014) .................................. 3

*Stone Basket Innovations LLC v. Cook Medical LLC*,
    892 F.3d 1175 (Fed. Cir. 2018) ........................................................... 2

*Straight Path IP Group, Inc. v. Sipnet EU S.R.O.*,
    806 F.3d 1356 (Fed. Cir. 2015) ........................................................... 6

*Welch v. Met. Life Ins. Co.*,
    480 F.3d 942 (9th Cir. 2007) ............................................................. 24

*West Virginia Univ. Hosps., Inc. v. Casey*,
    499 U.S. 83 (1991) ............................................................................... 25

**Statutes**

35 U.S.C. § 285 .............................................................................................. 2

iii

## I. SUMMARY: THIS CASE IS NEITHER EXCEPTIONAL, NOR IN BAD FAITH AND NO AWARD OF FEES IS WARRANTED

Cisco asserts this case so violated the norm that the Court should award attorneys' fees under Section 285, and further asserts both Straight Path and its counsel acted in bad faith. Straight Path does not seek to relitigate the summary judgment of non-infringement. However, Straight Path respectfully submits that throughout this case Straight Path and its counsel subjectively and reasonably believed in the merits of its infringement assertion. The subjective belief in the merits and the reasonableness of the belief are not negated by a ruling in favor of Cisco; in every case a party wins and a party loses.

While not rearguing the summary judgment, Straight Path seeks to explain its understanding of the applicable claim construction and how it accordingly analyzed infringement reasonably and in good faith. Neither Section 285 nor the more stringent requirements of Section 1927 or the Court's inherent power were intended for cases like this one – a good faith dispute over application of a claim construction ultimately resolved in favor of one party.

Straight Path brought this case believing it had far more than a bare, facially sufficient claim. Challenged in IPR proceedings by Cisco and many others, Straight Path's patent claims were upheld, creating IPR estoppel to validity challenges by Cisco. The Federal Circuit reversed a PTAB finding that the claims were invalid and issued a claim construction of a key term based on its plain meaning. Straight Path analyzed that construction and concluded Cisco's Unified Communications Solution voice over Internet Protocol ("VoIP") systems met the Federal Circuit's construction and infringed the patent claims. Further, after this case was filed, appeal of the PTAB's upholding the patent claims resulted in a Federal Circuit opinion reaffirming its prior construction and affirming validity of the claims. Few patent holders find themselves in similarly favorable circumstances.

Ignoring this, Cisco asserts every aspect of Straight Path's analysis was wrong, and Straight Path and its counsel knew it was wrong. But the *only* evidence Cisco puts forward is that the end result was not as Straight Path reasonably and in good faith believed it would be. Cisco does not show a prior court considered and rejected the infringement theory or, indeed, any infringement

1

theory. Cisco does not show Straight Path ignored opinions or evidence directly contradicting its infringement theory. At most, Cisco shows Straight Path and its counsel did not draw the same conclusions about the evidence the Court ultimately did. While hindsight may be 20/20, it is not an appropriate mechanism to evaluate Cisco's claims for attorneys' fees. Straight Path respectfully submits, as shown below and in the accompanying declarations of counsel and former Chief Judge Michel of the Federal Circuit, and in the extensive prior briefing before this Court and the Federal Circuit, Straight Path developed a reasonable and good faith infringement theory based on application of an agreed claim construction to the operation of Cisco's systems.

## II. THIS CASE IS NOT EXCEPTIONAL - IT REASONABLY PRESENTED INFRINGEMENT BASED ON AN AGREED CLAIM CONSTRUCTION

Straight Path alleged certain Cisco Unified Communication System ("UCS") (Cisco's brand describing its suite of VoIP products operating in the same manner) VoIP communication systems infringed Straight Path's patents. Like the claims of the patents-in-suit, Cisco's systems create point-to-point network communications between two devices over computer networks *only* after first engaging in signaling communications with a central connection server to facilitate creating the connection. While Cisco's systems are designed to closely mimic operation of a traditional telephone from a user perspective, Cisco's systems used a different underlying technology Straight Path reasonably understood practiced the claims of Straight Path's patents.

Ultimately, the Court concluded Cisco's systems did not infringe because they did not meet the "is connected" limitation of the claims, due to characterizations of the limitation in oral argument before the Federal Circuit regarding the IPR petitions challenging validity. Again, Cisco asserts, as a consequence, this case is exceptional under 35 U.S.C. § 285.[1]

A case is not exceptional because one party prevails; much more must be shown. "[A] strong or even correct litigating position is not the standard by which we assess exceptionality." *Stone Basket Innovations LLC v. Cook Medical LLC*, 892 F.3d 1175, 1180 (Fed. Cir. 2018)

---

[1] Straight Path notes the relevant legal standards and other aspects of the issues presented in this motion are similar to those raised in Apple's motion for fees, set for concurrent hearing. Straight Path repeats the relevant information here for purposes of completeness and clarity of the relevant record.

(affirming denial of attorneys' fees). "[W]here a party has set forth some good faith argument in favor of its position, it will generally not be found to have advanced 'exceptionally meritless' claims." *Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, 2016 WL 5842187, *4 (C.D. Cal., Oct. 5, 2016) (quoting *Small v. Implant Direct Mfg. LLC*, 2014 WL 5463621, *3 (S.D.N.Y., Oct. 23, 2014)).

Put simply, "[e]xceptional cases are, by definition, the exception." *Collectors Universe, Inc. v. Blake*, 2015 WL 12698449, *1 (C.D. Cal., Mar. 16, 2015) (denying fee motion for party that obtained summary judgment of invalidity). Under *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1757 (2014), Cisco must show this case is an outlier to justify fees under Section 285 by establishing it "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness,* 134 S. Ct. at 1756. Relevant factors include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, n. 19 (1994) (citing L*ieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)).

Cisco asserts two theories attempting to meet this high threshold: Straight Path's infringement theory was so without merit as to make the case exceptional; and Straight Path violated or abused this Court's Local Patent Rules. Neither is correct.

Straight Path presented an infringement theory it understood to be consistent with an agreed claim construction Cisco never sought to modify or clarify. The parties disagreed about the construction's implications, and the Court ultimately resolved that disagreement in Cisco's favor. That does not make this case frivolous or objectively unreasonable. *See generally Biax Corp. v. Nvidia Corp.*, 626 Fed. Appx. 968, 971-73 (Fed. Cir. 2015) (reversing grant of fees under Section 285 as an abuse of discretion because a claim construction meaning disagreement was not resolved until summary judgment, and it was not unreasonable for the plaintiff to argue infringement under the literal language of the claim construction).

As further evidence of reasonableness and good faith, Straight Path submits the

RUSS, AUGUST & KABAT

accompanying declaration of former Chief Judge Michel of the Federal Circuit, with whom counsel consulted prior to oral argument. Chief Judge Michel states he "became convinced that the arguments why the evidence met the standard needed to avoid summary judgment, consistent with the claim construction by the appellate court in its opinion in an appeal from a decision in an IPR, were reasonable and had factual support in the record below." Michel Decl. ¶ 3. Chief Judge Michel further states "I did not form any opinion that the arguments [by Straight Path] were objectively unreasonable or exceptionally weak, especially in light of the Federal Circuit case law on claim construction." *Id.*

Cisco also asserts this Court ruled Straight Path's infringement contentions were limited to a small number of devices, notwithstanding Straight Path's accusation of Cisco's integrated UCS products. Cisco suggests this Court ruled amendment was necessary to implicate the full scope of accused products and denied such amendment. But this Court actually indicated it was *not* ruling on whether amendment was necessary, stating "If it only clarifies – I don't know what it does. I don't know what it does, but whether it's unnecessary or not, we'll find out later." Cisco omits these statements by the Court. Straight Path continued to pursue what it understood to be the scope of the infringement contentions in light of the Court's ruling.

## III. STRAIGHT PATH ASSERTED A REASONABLE THEORY OF INFRINGEMENT

Straight Path's patents relate to techniques to allow computer processes to establish direct, point-to-point communications over a computer network like the Internet. The claims recite, for example, "a method for enabling point-to-point communication between a first process and a second process over a computer network." Ledahl Decl., Ex. A[2] ('704 patent), claim 4. Point-to-point communications can be used for voice and video. *Id.* at Col. 1:48-50. Establishing such communications requires the two devices to know one another's device address, such as an Internet Protocol ("IP") address. *Id.* at Col. 1:22-26. Because many devices connect to the Internet with temporary IP addresses (not necessarily known to other devices), establishing point-to-point

---

[2] Unless otherwise indicated, all exhibit references are to the accompanying Declaration of Brian Ledahl.

communications can be difficult. *Id.* at Col. 1:53-56.

Straight Path's patents solved this problem by allowing a device to communicate with a server to determine if the other device is connected to the network at the time the caller places the call, and if so, providing the other device's current IP address to the caller, to enable the devices to establish a direct, unmediated, point-to-point communication. The patent claims, such as claim 4 of the '704 patent (from which asserted claim 6 depends), claimed a protocol where a first process would contact a server with a query about the connected status of a second process, and the server would only provide the first (querying) process with the IP address of the second process if it was currently connected to the network. These communications could be thought of as Phase 1 of the process, signaling communications between endpoint and server. Only after the server provided the IP address of the second process would the first and second process switch to Phase 2, where they establish point-to-point communication with one another, no longer intermediated by the connection server. Phase 1 is just signaling to set up Phase 2.  No audio or video is conveyed in Phase 1 (because the devices are not yet connected). The direct point-to-point communication between the devices is the "call" and allows audio/video communication.

A.     **Cisco's Accused UCS Systems Functioned Consistent With the Aims of Straight Path's Patents**

Straight Path's analysis of Cisco's accused UCS systems reasonably concluded this was how Cisco's systems worked, and thus infringed. Cisco's systems give users the illusion of working like a traditional telephone call, but Cisco's systems actually work very differently. In Cisco's systems, Phase 1 involves a first device sending a message to a central server. The central server then sends a message to the second device, causing it to ring. At the second device, if the user "accepts" the communication, the second device sends an acceptance message to the server (not to the first device). Cisco's server makes a determination of whether the second process is currently on-line and willing to accept the call at the time when the caller placed the query. At this time, the first and second devices have still not begun Phase 2 of establishing a point-to-point communication between one another. Thus, when a call recipient "answers" a call by picking up a ringing handset, that recipient is not yet connected to the caller in any way. Instead, after the server

receives the second device's accept message, the server sends a message to the first device, containing the second device's IP address. Only then do the first and second devices begin Phase 2 of setting up the point-to-point communication between them. *See generally*, Ex. B (Cole Infringement Report) at ¶¶ 18-38. While this entire process seems instantaneous to a human user (so that the user may not perceive a meaningful time delay between accepting the communication and being connected), the devices actually perform this complex exchange of messages with the server (and not each other) before they begin to establish the actual point-to-point communication.

B. **Straight Path Analyzed Infringement Under the Agreed Construction**

This Court's summary judgment turned on the "is connected/on-line status" claim term. In claim 1 of the '704 patent, for example, the claim recites "program code for transmitting, to the server, a query as to whether the second process is connected to the computer network." Claim 4 recites "B. receiving a query from the first process to determine the on-line status of the second process; C. determining the on-line status of the second process." The parties agreed that "is connected" and "on-line status" had the same meaning. Specifically, both terms meant "is connected to the computer network at the time that the query is transmitted to the server." That construction came verbatim from the Federal Circuit. *See Straight Path IP Group, Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1363 (Fed. Cir. 2015).

No language in the construction restricted the mechanism or process by which the server must determine connection status. The construction does not require that the determination must be made by means of a connection server contacting an always-accurate database.[3] The Federal Circuit never included such a requirement in its construction, and Straight Path reasonably did not understand the construction to contain such a further requirement. In its claim construction disclosures and submissions to this Court, Cisco never requested such a requirement. *See* Dkt. # 32 (Joint Claim Construction Statement). To the extent Cisco believed the proper construction of the claim was more limited than the express language of the Federal Circuit's construction, it never disclosed that position in its local patent rule claim construction disclosures.

_____

[3] During appellate oral argument, Cisco's counsel acknowledged this point, stating in response to a question from the bench, "Yes. I'm not necessarily saying that we should read database into the claim." Ex. C (Jan. 11, 2019 Appeal argument transcript) at 35:16-22.

Straight Path understood the claim construction required determination of whether the second process was connected at the time the query is transmitted to the server, but did not specify how that determination must be made. Straight Path understood this to be akin to a question like: "Is the temperature 75 degrees now?" when transmitted at 4:00 p.m. To answer such a question, one would need immediately to consult a thermometer, or check some other information, before responding either yes or no, based on the actual temperature at 4:00 p.m. The fact that the response might be determined at 4:01 p.m. by looking at the information that was current at 4:00 p.m. (the relevant time of the query) would not change the fact that the response matched the query by providing accurate information for the time of the query.

Straight Path submitted evidence Cisco's systems worked exactly this way: they received a query, effectively asking (among other things) "is the second process connected now?" Cisco's systems promptly checked and would only respond positively if the second process was, in fact, connected at the precise moment that the query was transmitted. While this determination was, in part retroactive, it still answered precisely the question asked. Importantly, it did so immediately upon receiving the query, in real time, right when the caller wanted to place the call. *See Samsung Elecs. Co., Ltd. v. Straight Path IP Group, Inc.* 696 Fed. Appx. 1008, 1013 (Fed. Cir. 2017) (recognizing that the asserted prior art will not "determine whether the second process *is connected* to the [computer] network *at the time the query is transmitted to the server*, *i.e.*, whether a user is on-line at the relevant time." (internal quotations omitted)).

Nothing in the claim construction prohibited this manner of responding to the query, nor did Straight Path understand the construction to exclude a system like Cisco's. Straight Path subjectively understood the construction not to impose such a limit, and that subjective understanding was objectively reasonable in light of the lack of any restriction on the manner of responding to the query in the claim language, in the words of the claim construction, and because Straight Path did not understand arguments during IPR proceedings and appeals to have imposed any such limit. This Court, and Cisco in its motion, focus heavily on arguments made to the Federal Circuit by Straight Path's IPR counsel. Straight Path and its current counsel reviewed those materials before filing this action (with respect to the *Sipnet* decision), and when they became

available (with respect to the *Samsung* decision), and reasonably concluded those arguments and decisions were consistent with infringement by Cisco.

Cisco repeatedly quotes a passage from the *Samsung* Federal Circuit oral argument, but it only quotes a part of the exchange. The Court asked, "You've boxed yourself into a pretty narrow infringement argument, though, haven't you, with this claim construction?" Ex. D (Samsung App. Tr.) at 28-29. But Cisco omits the rest of the question: "In other words, a system that *only* does what – what NetBIOS or WINS did wouldn't infringe, right?" *Id.* (emphasis added). Straight Path reasonably believed this exchange was consistent with its theory of Cisco's infringement.

Cisco suggests its systems function in the same manner as the prior art distinguished in the IPR proceedings. That is not correct, and Straight Path was reasonable in believing it was not correct. In the prior art WINS and NetBIOS systems, a first process would query a server about a second process. The server would look up potentially stale registration data from its database and *provide that data directly to the first process*. *See Samsung*, 696 Fed. Appx. at 1012, 1014. Then, the first process (not the server) would try to establish a connection to the second process, but might fail because the server provided old data to the first process. *Id.* In Cisco's systems, the server starts by looking up potentially stale registration data in its database in response to a query, but it does not simply send that potentially stale information to the first process. Instead, it executes a series of messages that confirm that the second process is still connected (essentially updating its registration information) before any IP address is sent back to the first process. Ex. B (Cole Infr. Rept.), at ¶¶ 18-38, 362-389; Ex. E (Cole Reply Infr. Rpt.) at ¶¶ 45, 47-48, 55; Ex. F (Cole Decl., Dkt. # 140-1), at ¶¶ 15-18; Ex. H (Brody (Cisco expert) Tr.) at 325:13-326:9, 419:2-420:7, 435:2-15, 465:8-19. Similarly, Cisco incorrectly asserts that in its system, the second process provides the confirmation of its connection status back to the first process. Cisco Brief (Dkt. # 210) at 10-11. In fact, the second process sends the confirmation of its connection status to the *server*, and then the server sends a message to the first process. Ex. B (Cole Infr. Rpt.) at ¶¶ 32-38, 131; Ex. E (Cole Reply Infr. Rpt.) at ¶¶ 45-48, 55; Ex. H (Brody Tr.) at 431:7-15; 434:16-21. Only after that series of messages does the first process have the necessary IP address to attempt the point-to-point connection with the second process. Put simply, the prior art would

provide stale IP address information to the first process, which it then would use to attempt a point-to-point communication. Cisco's systems are designed *never* to provide stale address information to the first process, because the Cisco server checks the connection status of the second process before providing an IP address back to the first process. In light of this important distinction, Straight Path reasonably understood Cisco's systems to be within the "narrow box" reflected in the Federal Circuit's oral argument question.

Straight Path's reasonable belief that nothing in the proceedings before the Federal Circuit excluded Cisco's infringement was reinforced by the *Sipnet* and *Samsung* opinions. In both, the Federal Circuit stated it was construing the "is connected" claim language based on its plain meaning. Straight Path was reasonable in believing the construction was not based on a disclaimer because the Federal Circuit never stated its construction was grounded in any disclaimer. Additionally, Straight Path understood any disclaimer must be clear and unmistakable, and the full context of the statements made during oral argument included numerous statements by Straight Path's counsel that the claims allowed for many ways of determining online status, including polling users. Ex. I (*Sipnet* IPR Trial Tr.) at 43; Ex. J (*LG* POPR) at 18, 22, 39-40, 47; Ex. K (*Samsung* IPR Trial Tr.) at 58, 66; Ex. L (*LG* IPR Trial Tr.) at 31, 51; Ex. D (*Samsung* Fed. Cir. Hearing Tr.) at 16-17. Further, Straight Path reasonably understood the *Samsung* opinion to state the construction would cover a system like Cisco's that checked the on-line status of the second process before the server sent the second process IP address to the first process. *Samsung* stated "not only is the prior art not designed to keep track of current online status, it is not designed *to check online status when responding to a query* for a user's IP address." *Samsung*, 696 Fed. Appx. at 1013 (emphasis added). Cisco's systems check online status when responding to a query. Cisco's expert conceded the server need not know that the second process is online in advance of the query, and that the determination of online status does not have to be instantaneous after receiving the query. Ex. G (Brody Tr.) at 133:22-134:2; Ex. M (Brody Invalidity Rpt.) at pp. 266-267, 285-86. Straight Path's understanding of the construction was reasonable in light of the many contextual indications that could reasonably lead to the conclusion it did not preclude a system that operates like Cisco's.

C. **Straight Path Presented A Reasonable Theory Of Infringement Under The Agreed Claim Construction**

That this Court ultimately concluded otherwise does not make Straight Path's analysis unreasonable or inconsistent with a reasonable understanding of the Federal Circuit's construction. Cisco's systems implement a signaling protocol called SIP in which messages are exchanged between endpoint devices and a server before the server provides the first device with the information to establish a point-to-point communication between the two devices. Cisco's documents contained the figure reproduced in the appendix to this brief (and other similar figures) depicting the progress of such messages which was addressed by Cisco's witnesses and expert. Ex. N (Stormes Tr.) at 27:6-30:18, 37:11-39:7; Ex. H (Brody Tr.) at 335:4-19.

We have annotated the figure to show the separation between the signaling between the devices and the server (Phase 1) – shown in a red box, and establishing the point-to-point connection between the devices (Phase 2) – shown in a blue box. Cisco's expert conceded the actual "call" (the audio communication) takes place only at the bottom of the figure labeled "media cut-through." Ex. H (Brody Tr.) at 318:5-16.

In Cisco's systems, when a caller wants to make a call, he or she enters the information about the callee to whom the call is to be placed. The caller device (labeled Phone 1000 in the figure) then sends a message (labeled "[1] INVITE") to the Cisco server (labeled CCM in the figure). Ex. B (Cole Infr. Rpt.) at ¶¶ 32-38, 117, 137-138, 373-389; Ex. E (Cole Reply Rpt.) at ¶¶ 24, 45; Ex. F (Cole Decl.) at ¶ 15; Ex. H (Brody Tr.) at 325:13-326:9, 419:2-420:7. The Cisco Server then looks up whether the callee device (labeled Phone 2000 in the figure) is registered in the server's database of connected devices. Ex. B (Cole Infr. Rpt.) at ¶¶ 32-38, 117, 137-138, 144, 147-149, 373-389; Ex. E (Cole Reply Rpt.) at ¶¶ 24, 45-48, 55; Ex. F (Cole Decl.) at ¶ 15-18; Ex. H (Brody Tr.) at, 325:13-326:9, 419:2-420:7, 435:2-15, 470:8-18. If it is not, the server will not provide a positive connection response to the caller device. Ex. B (Cole Infr. Rpt.) at ¶¶ 32-38, 117-119, 137-138, 373-389; Ex. E (Cole Reply Rpt.) at ¶¶ 24, 45; Ex. F (Cole Decl.) at ¶ 15-18; Ex. H (Brody Tr.) at 312:1-315:17, 317:4-318:4, 321:9-322:10, 325:13-326:9, 403:13-21, 415:11-416:11, 419:2-420:7, 435:2-15, 465:8-19. If the callee device is registered, the server will

immediately send a message to the callee device (labeled "[11] INVITE") to the callee device to determine if the callee device is online. Ex. B (Cole Infr. Rpt.) at ¶¶ 32-38, 117-119, 137-138, 144-149, 373-389; Ex. E (Cole Reply Rpt.) at ¶¶ 24, 45-48, 55; Ex. F (Cole Decl.) at ¶ 15-18; Ex. H (Brody Tr.) at 312:1-315:17, 317:4-318:4, 321:9-322:10, 325:13-326:9, 403:13-21, 415:11-416:11, 418:20-420:7, 435:2-15, 465:8-19, 470:8-18.

If the callee device is online and accepts the communication (such as by pressing a button or picking up a handset to "answer" a call), the callee device sends a message back to the Cisco server (labeled "[15] 200 OK"). Ex. B (Cole Infr. Rpt.) at ¶¶ 32-38, 117-119, 131, 137-138, 144-149, 373-389; Ex. E (Cole Reply Rpt.) at ¶¶ 24, 45-48, 55; Ex. F (Cole Decl.) at ¶ 15-18; Ex. H (Brody Tr.) at 312:1-315:17, 317:4-318:4, 321:9-322:10, 325:13-326:9, 403:13-21, 415:11-416:11, 418:20-420:7, 431:7-15, 434:16-21, 435:2-15, 465:8-19, 470:8-18. That message is sent to the server (CCM), not directly to the caller device. *Id.* Even though the callee has "answered" the call at this point, the two devices are still not connected to one another and cannot yet begin direct communications. *Id.*

When the Cisco server receives the "[15] 200 OK" message, it determines that the second device is connected to the network at the time of the query. It knows this because it sent its "[11] INVITE" message to the last known IP address for the callee (the registered address) to confirm if the callee is still connected. If the callee receives the message, it necessarily means it is not only online now but has been online continuously since its last registration with the database (which predated the query). Thus, by receiving the "[15] 200 OK" message, the server determines that the callee is both presently connected, and was connected at the time that the query was transmitted to the server. As Cisco's expert stated, "CCM [the Cisco server] registration system has to determine if [callee device] is online. That starts the negotiation with [callee device]. And then at some point there it determines it's online and then eventually a 200 OK gets back to [caller device] with [callee device's] IP address. Q: Once that happens [caller device] will actually start the all, meaning start sending voice packets to [callee device] and vice versa, correct? A: Right . . . ." Ex. H (Brody Tr.) at 325:13-326:9; *see also,* Ex. B (Cole Infr. Rpt.) at ¶¶ 32-38, 117-119, 137-138, 144-149, 373-389; Ex. E (Cole Reply Rpt.) at ¶¶ 24, 45-48, 55; Ex. F (Cole Decl.) at ¶ 15-18; Ex. H (Brody Tr.)

at 312:1-315:17, 317:4-318:4, 321:9-322:10, 403:13-21, 415:11-416:11, 418:20-420:7, 435:2-15, 465:8-19, 470:8-18.

Having determined the callee device "is connected," the Cisco server ("CCM") sends a message to the caller device (labeled "[17] 200 OK"). This message confirms the second device's availability, and, for the first time, provides the first device with the second device's IP address. Ex. B (Cole Infr. Rpt.) at ¶¶ 32-38, 117-119, 137-138, 144-149, 373-389; Ex. E (Cole Reply Rpt.) at ¶¶ 24, 45-48, 55; Ex. F (Cole Decl.) at ¶ 15-18; Ex. H (Brody Tr.) at 312:1-315:17, 317:4-318:4, 321:9-322:10, 325:13-326:9, 403:13-21, 415:11-416:11, 418:20-420:7, 435:2-15, 465:8-19, 470:8-18. Cisco's server will not provide the callee's IP address to the caller's device unless the callee was connected at the time that the query was sent. Ex. B (Cole Infr. Rpt.) at ¶¶ 32-38, 117-119, 137-138, 147-149, 386; Ex. E (Cole Reply Rpt.) at ¶¶ 24, 45-48, 55; Ex. F (Cole Decl.) at ¶ 15-18; Ex. H (Brody Tr.) at 312:1-315:17, 317:4-318:4, 321:9-322:10, 325:13-326:9, 403:13-21, 415:11-416:11, 418:20-420:7, 435:2-15, 465:8-19, 470:8-18. At this point, the two devices still have not established any direct point-to-point communication, even though the callee has "answered" a ringing telephone. *Id.* Only after receiving the "[17] 200 OK" message from the server can the two devices start setting up the point-to-point communication. *Id.* Only after that can they begin to exchange audio data (talk to one another). *Id., see also,* Ex. H (Brody Tr.) at 318:5-16. All of these messages and the point-to-point communication set-up can take place nearly instantaneously from the user perspective, but they happen in a precise sequence. Without successful completion of the messages between the devices and the server (Phase 1), there is no set-up (or even attempted set-up) of a point-to-point communication (Phase 2).

Straight Path's belief this system met the agreed claim construction was reasonable. As discussed above, after receiving the query from the first device, Cisco's server immediately sends an "[11] INVITE" message to determine that the second device is currently on-line. The Cisco server receives a "[15] 200 OK" message from the second device, and, based on the server receiving that message, the server has determined that the callee device is on line at that time (and was necessarily on line since its last registration with the server, including at the precise time of

the query). Only then does Cisco's server provide the IP address of the callee device to the caller device so they can begin setting up a point-to-point communication.

Straight Path believed in good faith that this was consistent with the agreed claim construction and developed substantial evidence to support its infringement claims. This evidence included detailed expert testimony that Cisco's system literally and expressly met the agreed claim construction. Ledahl Decl., Ex. B (Cole Infr. Rpt.) at 18-38, 57-60, 117-119, 131, 137-138, 144-149, 324-399, 400-439; Ex. F (Cole Decl.) at ¶¶ 15-18.

Ultimately, the dispute addressed in this Court's summary judgment turned on the interpretation of the claim construction of the "is connected" terms. Straight Path's theory of infringement was reasonably grounded in the literal words of the agreed claim construction. Prior to summary judgment, Cisco never suggested it applied an understanding of that construction different from its literal language. Cisco proposed no clarifying construction during claim construction proceedings. Only in its summary judgment ruling did the Court make clear the meaning it was applying to that term in granting summary judgment. Under such circumstances, the Federal Circuit has held it is an abuse of discretion to find a case exceptional under Section 285, even after *Octane Fitness*. *See Biax Corp.*, 626 Fed. Appx. at 971-73 (reversing grant of fees under Section 285 as abuse of discretion because disagreement about the meaning of a claim construction was not resolved until the district court ruled on summary judgment and it was not unreasonable for the plaintiff to assert infringement under literal language of the construction).

Cisco attempts to analogize this case to the *Kilopass* decision from this District, but the analogy fails.[4] In *Kilopass*, the patentee received an opinion from outside counsel before filing its case that the accused products would not literally infringe the claims. *Kilopass Technology, Inc. v. Sidense Corp.*, 112 U.S.P.Q.2d 1376; 2014 WL 3956703, *10 (N.D. Cal., Aug. 12, 2014). Notwithstanding the opinion, Kilopass asserted literal infringement. *Id.* Additionally, the *Kilopass* plaintiff asserted a factual position that "bitlines" and "wordlines" are interchangeable during claim construction, but asserted the opposite factual position (that the two are not interchangeable)

RUSS, AUGUST & KABAT

---

[4] Cisco cites *Kilopass* setting the amount of fees awarded (82 F.Supp.3d 1154 (N.D. Cal., 2015), but fails to cite the previous decision stating the actual basis for the award.

to the patent office. *Id. Kilopass* also found the plaintiff fundamentally shifted its theory of equivalents infringement while ignoring specific information about non-equivalents revealed during pre-filing investigation. *Id.* at \*11. Finally, *Kilopass* found the plaintiff had retained multiple firms prior to its litigation counsel to perform pre-filing analyses, but concealed portions of those analyses from its litigation counsel. *Id.* at \*11-12. *None of these factors are present here.* Straight Path never received an opinion Cisco's products do not infringe, nor did it take factually inconsistent positions. Rather, as addressed above, Straight Path reasonably understood its statements and the Federal Circuit's rulings differently than Cisco. Cisco revealed its differing assertions in its summary judgment briefing and the Court ultimately accepted them, but Straight Path presented a consistent, reasonable, theory of infringement based on its good-faith understanding of the Federal Circuit's claim construction.

Straight Path maintained a consistent theory during proceedings here, and explained that theory on appeal of this Court's ruling to the Federal Circuit. The Federal Circuit issued no ruling stating Straight Path's theory or interpretation of the claim construction was in any way unreasonable or frivolous. The Federal Circuit gave no notice, and no party filed a motion contending, the appeal was frivolous under Fed. R. App. P. 38. Further, a review of oral argument before the Federal Circuit reveals no suggestion that Straight Path's position was frivolous or otherwise unreasonable. Ex. C (Jan. 11, 2019 Appeal Hrg. Tr.). Instead, the Federal Circuit sought to clarify aspects of the argument and to make certain it understood the details of the argument. Similarly, it asked defense counsel to respond to the arguments presented by Straight Path. Nothing in oral argument suggested a conclusion that Straight Path's argument was in any way unreasonable or in bad faith.

D. **Cisco's Systems Do Not Operate on "Technology as Old as the Telephone Itself"**

Cisco asserts Straight Path's infringement theory would "read its patents on technology as old as the telephone itself." This is false. Cisco asserts that because a callee "answers the phone" its servers are not making any determination of on-line status. But, as detailed above, the act of "answering the phone" in Cisco's systems does not actually connect the caller and the callee, even

though that might appear to be what happens from the perspective of a human user. Cisco's systems use that act as a way to confirm the on-line status of the second process *before* any attempt is made to create a point-to-point connection between the two endpoints. Thus, it is the server that uses the message generated by the callee device when the phone is "answered" to confirm the callee's on-line status, and only then to allow the caller to begin creating the point-to-point communication (by providing the caller device, for the first time, with the callee device's IP address). This mechanism of signaling before creating a direct point-to-point communication link over a computer network is not "as old as the telephone itself" as Cisco suggests. While it allows computer devices to mimic the functionality of traditional telephones, the actual underlying function bears no resemblance to traditional telephones.

## IV. STRAIGHT PATH LITIGATED THIS CASE REASONABLY AND IN GOOD FAITH

Cisco argues that Straight Path disregarded this Court's Patent Local Rules in connection with its infringement contentions as an additional basis to support its assertion of exceptionality. Cisco further accuses Straight Path of ignoring this Court's prior rulings on this issue. Cisco's argument and accusation are incorrect.

Straight Path identified Cisco's UCS systems as accused in its initial infringement contentions. Cisco's documentation described the UCS systems as an integrated product offering. Ex. O (Cisco Mktg. Doc.). Cisco described the product as a "comprehensive, integrated IP communications system of voice, video, data, and mobility products and applications." *Id.* at p. 2. Cisco described the UCS as a "single, smart solution." *Id.* Cisco further stated "Cisco Unified Communications can be purchased and deployed from Cisco channel partners." *Id.* at 5. Cisco further described leasing and financing options to purchase the UCS. *Id.* at 6.

Because the nature of the patent claims involved servers as well as telephone handsets, Straight Path accused the UCS systems Cisco marketed and sold. The systems could be purchased with a variety of different included handsets, which would all function the same with regard to the patent claims. In illustrating infringement in its contentions, Straight Path described a representative handset to illustrate the way the overall system infringed, but never suggested it was

RUSS, AUGUST & KABAT

accusing individual handsets, rather than Cisco's UCS systems. In discovery, Cisco asserted, contrary to its own literature and documents, it did not offer UCS as a product, and that this was not a proper accusation with respect to the systems it sold which might include handsets other than the exemplary handsets used to illustrate Straight Path's infringement theory in its contentions. Ledahl Decl., ¶¶ 4-5.

Based on Cisco's assertion, Straight Path sought to clarify its contentions to confirm that its accusation was of these systems sold by Cisco, including the various possible handset options (which all functioned the same for purposes of the patent claims). Ledahl Decl., ¶¶ 6-7, *see also*, Dkt. ## 61, 80. Straight Path maintained this clarification should not be necessary, but did so in an excess of caution in light of Cisco's discovery positions. *Id.*

This Court denied the motion to amend the contentions, referring to the reasons stated during hearing on the motion. Dkt. # 90. Cisco suggests the Court ruled on whether amendment was necessary in light of Straight Path's contentions, and specifically that the Court ruled amendment was necessary but would not be permitted. Cisco Brief at 14. Again, Cisco relies on a partial quotation of what the Court said, which omits a critical part of the Court's ruling. After Cisco's quotation in its brief, this Court stated "If it only clarifies – I don't know what it does. I don't know what it does, but whether it's necessary or not, we'll find out later." Dkt. # 91 (7/20/2017 Hrg. Transcript) at 24:23-25:4. Far from resolving the question of whether amendment was necessary, as Cisco argues, this Court expressly did not resolve that issue.

Cisco also omits the subsequent history of this issue. It argues Straight Path's expert reports improperly included products (components of Cisco's UCS systems) that were not part of the infringement contentions. But Straight Path's expert, Mr. Cole, explained the UCS systems were sold as an integrated product with various components and that the integrated product offering was accused. Ex. B (Cole Infr. Rpt.) at ¶¶ 18-21, 57-60; Ex. E (Cole Reply Rpt) at ¶ 30. Cisco's brief fails to note that Cisco requested leave to file a motion to strike those portions of the expert reports. Dkt. # 111. The Court denied Cisco's request without prejudice to it potentially being raised at the summary judgment stage. Dkt. # 114. Cisco also, later, sought leave to file a motion for summary judgment regarding this issue. Dkt. # 122. The Court did not, however, grant Cisco leave to file

such a motion. Dkt. # 123. Cisco fails to mention these further events which show the Court did not actually rule on this issue. Thus, the full record does not show a violation of the Patent Local Rules, but rather a disagreement about the proper interpretation of Straight Path's infringement contentions never resolved by the Court.

Cisco apparently *now* urges the Court to adjudicate this issue which the Court expressly declined to rule on during the pendency of the underlying litigation. Courts in this District reject requests for a new adjudication of issues solely for the purposes of a fee motion. *See, Linex Techs., Inc. v. Hewlett-Packard Co.*, 2014 WL 6844821, *4 (N.D. Cal. Sept. 15, 2014); *In re Protegrity Corp.*, 2017 WL 747329, *3 (N. D. Cal., Feb. 27, 2017) ("evidence of the frivolity of the claims must be reasonably clear without requiring a 'mini-trial' on the merits for attorneys' fees purposes") (internal citation omitted). The Court should not now undertake the potentially complex and fact-intensive inquiry Cisco requests, solely for the purpose of considering Cisco's motion for attorneys' fees. Further, as shown above, even if the Court did undertake such an inquiry, it would reveal that Straight Path complied with the Patent Local Rules in identifying Cisco's integrated system as infringing the asserted claims and in explaining its theory of how they were infringed by that system. While Cisco argues that certain handset devices were excluded from the accusation, it offers no suggestion that they function differently with respect to the asserted claims, or would otherwise change the infringement analysis. Indeed, both parties' experts offered unified discussions of the infringement issues in the case without identifying any aspects that differentiated the functioning depending on which handset was used.

## V. CISCO FAILS TO MEET THE FAR HIGHER BAD FAITH BURDEN FOR SECTION 1927 OR THE COURT'S INHERENT POWERS.

The burden to seek fees under Section 1927 or the Court's inherent power requires a much more significant showing than a claim under Section 285. These other theories require a showing of subjective bad faith. Such claims are governed by Ninth Circuit law. *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1246 (Fed. Cir. 2003). Sanctions under Section 1927 "must be supported by a finding of subjective bad faith." *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989). This requires a showing that a frivolous argument was knowingly or

recklessly raised, or that a claim was advanced for the purpose of harassing an opponent. *Id., see also In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996). Sanctions under Section 1927 are an abuse of discretion where an adverse result was not "so obvious in advance that it can be inferred that [counsel] knowingly or recklessly pursued a futile claim." *Morgan v. County of Yolo*, 277 Fed.Appx. 735, 736, 2008 WL 2019591, *1 (9th Cir., May 8, 2008). Sanctions under the Court's inherent power also are only "available if the court specifically finds bad faith or conduct tantamount to bad faith." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). Thus, Cisco must demonstrate more than exceptionality under these doctrines – it must demonstrate subjective bad faith by Straight Path.

### A.    Straight Path Pursued This Case In Good Faith

Cisco's primary arguments for sanctions under Section 1927 or the Court's inherent power mirror Cisco's assertions under Section 285. As set forth above, this case is not exceptional under Section 285, and thus, cannot meet the more exacting standards of subjective bad faith.

In essence, Cisco argues Straight Path's theory of infringement was incorrect and Straight Path subjectively believed it was incorrect and proceeded anyway. Cisco offers no evidence to support such an assertion. As discussed above, Straight Path pursued a theory of infringement based on the language of the Federal Circuit's claim construction in prior proceedings. This Court adopted a different interpretation of the construction, but Straight Path never ignored the construction, nor believed that it was arguing for an application inconsistent with the Federal Circuit's construction.

As set forth in Section III, Straight Path applied the literal language of the Federal Circuit's construction in framing its infringement assertion. It understood that construction to require a query for the on-line status of a second process at the time of the query, but without any limitation on how the server must obtain the information necessary to provide a current response. Straight Path never understood Cisco's system to operate in the same manner as the prior art distinguished in the IPR proceedings, in part because Cisco's system, unlike the prior art, would not return a potentially stale IP address to the querying device.  Ex. B (Cole Infr. Rpt.) at ¶¶ 32-38, 137-138,

144, 147-149; Ex. E (Cole Reply Rpt.) at ¶¶ 47-48, 55; Ex. F (Cole Decl.) at ¶¶ 15-18; Ex. H (Brody Tr.) at 318:5-16, 325:13-326:9, 403:13-21, 415:11-416:11, 435:2-15, 465:8-19.

Cisco argues Straight Path should have known its infringement theory was incorrect as a result of the Federal Circuit's decision in *Samsung Elecs. Co., Ltd. v. Straight Path IP Group, Inc.*, 686 Fed. Appx. 1008 (Fed. Cir. 2017). As an initial matter, *Samsung* provides language Straight Path understood to confirm the merit of its infringement theory: "Straight Path argues, because 'not only is the prior art not designed to keep track of current online status, it is not designed to check online status when respond to a query for a user's IP address.' We agree with Straight Path." *Id.* at 1013. Straight Path understood the Federal Circuit to endorse its view that a system could meet the "is connected" element *either* by tracking *or* by checking online status. In Cisco's systems, the server checks the online status of the second process in response to a query, and Straight Path understood this to be consistent with the Federal Circuit's approach to the issue and to its own claim construction. While this Court ultimately disagreed with Straight Path's understanding and interpretation, that does not establish Straight Path acted in bad faith. Again, Chief Judge Michel states he "considered the arguments why the standards in the case law for establishing waiver or disclaimer of claim scope were not met by statements of counsel during the oral argument in the IPR appeal, to have a reasonable chance of being accepted by the Federal Circuit." Michel Dec., ¶ 4.

Cisco's reliance on *Samsung* to assert bad faith is also unwarranted given the timing of that decision. Cisco seems to argue *Samsung* should have informed Straight Path its claims lacked merit and avoided bringing this action. Straight Path filed the complaint in this matter on June 21, 2016. Dkt. # 1. *Samsung* did not issue until more than a year later, on June 23, 2017. Obviously, *Samsung* could not have influenced Straight Path's decision to pursue the case before the decision issued. When it issued, Straight Path did not conclude that its infringement theory was undermined by the Samsung decision. Quite the opposite, as noted above and in the Fenster Declaration.

Cisco cites the opinion in *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242 (Fed. Cir. 2003) as being informative in this matter. However, *Phonometrics* shares nothing in common with this case. In *Phonometrics*, the Federal Circuit had ruled against the patentee on

noninfringement in five separate cases before the case at issue. Id. at 1243-45.  In each of those five cases, the Federal Circuit affirmed summary judgment grants of non-infringement of the asserted patents, based on claim constructions of multiple different terms. *Id.* The fifth of those cases involved an assertion against a hotel defendant similarly situated to the Westin defendant. *Id.* at 1244. There, the Court clarified a claim construction issue specifically as to the same infringement issue present in the *Westin* case. *Id.*  During appeal of the merits of summary judgment of non-infringement in the *Westin* case, the Federal Circuit itself imposed sanctions on *Phonometrics* for repeating identical arguments that the Federal Circuit had previously rejected. *Id.* at 1244-45, and n.2.[5] The Court in the *Phonometrics v. Westin* case found Phonometrics never even accused Westin of infringing under the construction articulated in multiple prior Federal Circuit decisions. *Id.* at 1245, 1247. Thus, after summary judgment of non-infringement granted and affirmed in five separate cases, including one exactly parallel to the *Westin* case, the plaintiff (where Phonometrics was represented by the same counsel in all but one of the prior unsuccessful appeals) still asserted infringement against Westin without even acknowledging the Federal Circuit's claim construction or articulating a theory of how it could be satisfied. *Id.* at 1247.

This case is nothing like *Phonometrics*. Here, the Federal Circuit issued a claim construction in the context of IPR proceedings. Straight Path subsequently asserted infringement of a system that did not function the same as the prior art at issue in the IPRs, expressly relied on the Federal Circuit's construction, and articulated a theory consistent with both the express language of the construction, and with the Federal Circuit's decisions involving that construction. This Court ultimately rejected Straight Path's interpretation. That does not, however, mean Straight Path acted in bad faith. Again, when Straight Path appealed this Court's ruling, the Federal Circuit did not suggest during oral argument or in any ruling that Straight Path's argument was in any way frivolous, unreasonable, or otherwise improper. *See* Ex. C (Jan. 11, 2019 Appeal Tr.). The Federal Circuit issued no sanctions ruling of any kind (unlike in *Phonometrics*) and made no

---

[5] The *Phonometrics* decision relied on by Cisco was authored by Chief Judge Michel.

suggestion such a finding might be warranted.[6]

Cisco's assertion that Straight Path's infringement contentions against Cisco's UCS systems were in bad faith also lacks support. Cisco characterizes Straight Path's contentions as "willful disobedience" of a Court Order by including in its expert reports the full scope of products Straight Path identified in its infringement contentions. As discussed in Section IV, above, this Court never issued the Order Cisco suggests. *See* Dkt. # 91 (7/20/2017 Hrg. Tr.) at 24:23-25:4. Straight Path did not understand the Court's statement to conclusively address this issue, nor did the Court's subsequent denial of leave to move to strike portions of Straight Path's expert reports do so. The Ninth Circuit declares an order imposing sanctions for purported violation of an ambiguous discovery order is not a "just" order. *Liew v. Breen*, 640 F.3d 1046, 1050 (9th Cir. 1981) (good faith dispute about an order constitutes a substantial justification for alleged failure to comply). Here, Straight Path understood the Court had not ruled on whether the components of the Cisco's UCS systems about which Cisco complains were properly a part of this case or not. Under such circumstances, Straight Path needed to preserve its position by including such products in its expert reports and Cisco fails to demonstrate that this was in any way unreasonable, nor that it in any way multiplied proceedings, since the theory of infringement was common to the system regardless of which handset components were used.

## B. Straight Path's Counsel Pursued This Case In Good Faith

As discussed in the preceding section, Straight Path's arguments in this case were pursued in good faith, based on a reasonable understanding of the applicable claim construction and a literal application of that construction to the accused systems. Straight Path's counsel pursued this case

---

[6] Cisco also suggests that this case is analogous to *Linex Technologies, Inc. v. Hewlett-Packard Co.*, 2014 WL 4616847 (N.D. Cal. Sep 15, 2014). There, before the action at issue, both another District Court, and a neutral opinion from an International Trade Commission staff attorney concluded that the correct construction of a claim term should apply. That construction precluded infringement from standard products that were at issue in both the prior actions and the *Hewlett-Packard* action. Notwithstanding those prior constructions, Linex pursued its claims advocating for a different construction that was rejected for the prior construction that precluded infringement. *Id.* at *3-4. In other words, Linex had received rulings in prior cases that the same technology at issue in the later case did not infringe. Here, Straight Path received a claim construction from the Federal Circuit, and applied it in the manner that Straight Path reasonably understood. The parties here disagreed about how the construction should apply in a manner that was not addressed by either of the two prior Federal Circuit opinions from IPR proceedings.

21

after careful consideration of the available information regarding the accused systems and the claim construction articulated by the Federal Circuit. *See, generally,* Fenster Decl. Straight Path's lead counsel each have more than 20 years of experience litigating patent infringement actions on behalf of both plaintiffs and defendants. *Id.* ¶¶ 1-3; Ledahl Decl., ¶¶ 2-3. Counsel considered the claim construction articulated in the Federal Circuit's *Sipnet* decision involving IPR proceedings, as well as the arguments underlying that decision before initiating this case. Fenster Decl., ¶¶ 5-8, 11-18. Counsel in good faith reasonably concluded the infringement assertions in this case were warranted under the claim construction and that the accused system functions in a different manner than the prior art that was at issue in the IPR proceedings. *Id.* at ¶¶ 15-21, 41. When *Samsung* issued during the pendency of this case, counsel evaluated it and concluded it did not undermine the propriety of the infringement assertion in this case. *Id.* at ¶¶ 12-14. Indeed, Straight Path's counsel concluded, based on explicit language in *Samsung*, it did not negate, and arguably bolstered, Straight Path's claim because the Federal Circuit appeared to endorse the possibility of a server checking to confirm the online status of a second process, just as occurred in Cisco's UCS systems. *Id.* at ¶¶ 9-10, 38-41. Straight Path's counsel never concluded its arguments were non-meritorious. While counsel appreciates the Court held otherwise, counsel reasonably and in good faith believed the arguments it advanced were reasonable. *Id.* at ¶¶ 6, 11, 15-16, 27, 37, 41, 42.

Likewise, as discussed previously, Straight Path's counsel did not understand the Court to have resolved the issue Cisco raises about Straight Path's infringement contentions. Counsel understood Cisco's UCS system to be an integrated product, properly identified in the contentions as discussed in Section IV above.

None of this establishes Straight Path's counsel conducted this litigation in bad faith. While the Court ultimately rejected the theory of infringement Straight Path advanced, counsel never believed its theory was incorrect or unjustified. Cisco's attempt to analogize this case to *Phonometrics* fails as discussed previously. Ultimately, nothing Cisco has identified rises to the level of exceptionality, much less to the subjective bad faith required to impose the sanctions Cisco requests. Further, Cisco's request for a comprehensive award of more than five million dollars

against counsel is entirely unprecedented. Cisco cites no authority suggesting such an award is appropriate.

*Phonometrics*, discussed above, is the only case Cisco cites for this point, and the total award there was less than $25,000. Even where Section 1927 could be applicable, the Supreme Court holds that Section 1927 "provides only for *excess* costs caused by the plaintiffs' attorneys' vexatious behavior and consequent multiplication of the proceedings, and not for the total costs of the litigation." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 756, n. 3 (emphasis in original, internal quotations omitted). Likewise, even in granting attorneys' fees of more than one million dollars, a court in this District held it was not appropriate to impose that amount against counsel and limited its award against counsel to $100,000. *Segan LLC v. Zynga Inc.*, 131 F.Supp.3d 956, 963-65 (N.D. Cal. 2015).

## VI. CISCO FAILS TO JUSTIFY THE AMOUNTS IT SEEKS

As discussed in the preceding sections, Cisco's motion fails to properly identify a basis to award any fee under either Section 285, or the much more stringent standards of Section 1927 or the Court's inherent power. Even if the Court were to conclude otherwise, however, Cisco fails to properly justify its requests under mandatory substantive and procedural requirements.

### A. Cisco Fails To Present Required Lodestar Analysis and Proof

Cisco relies heavily on *Kilopass*. As shown above, *Kilopass* does not support any award here. Cisco further misuses Kilopass by ignoring its mandated substantive and procedural requirements. *See Kilopass Technology, Inc. v. Sidense Corp.*, 82 F.Supp.3d 1154 (N.D Cal. 2015). *Kilopass* declares "The Supreme Court has said that '[t]he 'lodestar' figure has, as its name suggests become the guiding lite of our fee-shifting jurisprudence. [It has] established a 'strong presumption' that the lodestar represents the 'reasonable fee.'" *Id.* at 1164 (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)). *Kilopass* further declares "Ascertaining what constitutes a 'reasonable' fee requires determining 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyers' services.'" *Id.* (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S.

546, 564 (1986)). *Kilopass* went on to hold in connection with the required lodestar analysis, "The party seeking fees bears the initial burden of establishing the hours expended litigating the case and must provide detailed time records documenting the tasks completed and the amount of time spent." *Kilopass*, 82 F.Supp.3d at 1169 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007)).

Cisco does not offer the requisite lodestar analysis. Failing to do so, it fails to establish the requisite basis for its multi-million-dollar fee demand. Cisco provides no evidence of the "hours expended litigating the case," nor any "detailed time records documenting the tasks completed and the amount of time spent." The Wilcox declaration admits attorneys at the Desmarais law firm do not record their time and do not have billing rates. The declaration of Mr. Stacey does not identify any evidence of time expended or billing rates for any attorney from the Baker & Botts firm. Cisco simply asserts its purported monthly payments to the law firms are what it should be awarded. Cisco cites no supporting authority. It only asserts *Kilopass* suggests the Court may consider alternative fee arrangements. Cisco Brief at 18. Cisco mischaracterizes *Kilopass*. In *Kilopass*, the defendant's counsel had a fee arrangement whereby the client paid for hourly services by counsel at 50% of the hourly rate initially, with a further payment at the conclusion of the matter at some multiple of the remaining 50% depending upon the outcome. *Kilopass*, 82 F.Supp.3d at 1164. The statement from the decision on which Cisco relies merely notes the Court may consider a contingent fee agreement as part of the required lodestar analysis (to assess the reasonableness of an hourly rate). *Id.* at 1167-68.[7] *Kilopass* never suggested the Court may do what Cisco asks and instead utterly ignore the lodestar analysis.

Failing to provide requisite analysis and evidence to establish its fees, Cisco fails to carry its burden to justify its demanded award.

### B. Cisco's Cost Requests Are Not Properly Justified

Cisco admits it seeks various non-taxable costs in addition to its request for fees. Non-

---

[7] Indeed, *Kilopass* ultimately rejected a request to adjust the hourly rates based on the contingency bonus possibility as not reflective of prevailing rates for attorneys of similar ability and expertise. *Kilopass*, 82 F.Supp.3d at 1172.

taxable costs are not recoverable under Section 285. *See Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 379 (Fed. Cir. 1994).[8] Cisco's request to include such amounts under Section 285 directly contradicts applicable Federal Circuit precedent.

Cisco also purports to seek such non-taxable costs under the Court's inherent power (requiring a finding of subjective bad faith). But even if the Court could award non-taxable costs, any remedy under either the Court's inherent power or Section 1927 must be limited to the amount of additional expenditures incurred as a result of the alleged multiplicity of proceedings. *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989) (citing *United States v. Blodgett*, 709 F.2d 608, 610-11 (9th Cir. 1983)). Cisco provides no such apportionment and therefore fails to support its request under the applicable case law. As just one example, Cisco suggests Straight Path's infringement contentions somehow multiplied proceedings. Straight Path disputes the merits of this assertion as addressed previously, but Cisco also offers no apportionment to what additional expenditures (if any) it made as a consequence of this alleged multiplication. Thus, Cisco fails to support its request for particular costs (or fees) under either Section 1927 or the Court's inherent power.

## VII. CONCLUSION: CISCO FAILS TO MEET ITS BURDEN TO ESTABLISH ANY BASIS FOR AN AWARD OF FEES OR NON-TAXABLE COSTS

Straight Path pursued this case based upon a reasonable and good faith subjective belief in its merit that was objectively reasonable in light of the facts and circumstances. Cisco's demand for millions of dollars of fees is contrary to governing law and should be denied.

---

[8] Cisco cites *Mathis v. Spears*, 857 F.3d 749, 754 (Fed. Cir. 1988) at page 23 of its brief as support for such amounts under Section 285, but in *Amsted*, 23 F.3d at 376-77, the Federal Circuit recognized the Supreme Court rejected awarding such amounts under Section 285. (citing *West Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83 (1991)).

RUSS, AUGUST & KABAT

1

2 DATED: July 1, 2019

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**RUSS, AUGUST & KABAT**


*/s/ Marc A. Fenster*
Marc A. Fenster, SBN 181067
mfenster@raklaw.com
Brian D. Ledahl SBN 186579
bledahl@raklaw.com
Benjamin T. Wang, SBN 228712
bwang@raklaw.com
12424 Wilshire Boulevard
Twelfth Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Plaintiff
STRAIGHT PATH IP GROUP, INC.

