IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STRAIGHT PATH IP GROUP, INC.,

    Plaintiff,

  v.

CISCO SYSTEMS, INC.,

    Defendant.

STRAIGHT PATH IP GROUP, INC.,

    Plaintiff,

  v.

APPLE INC.,

    Defendant.

No. C 16-03463 WHA
No. C 16-03582 WHA

**ORDER ON MOTIONS FOR ATTORNEY'S FEES AND COSTS AND TO FILE UNDER SEAL**

## INTRODUCTION

In these related actions for patent infringement, defendants move for attorney's fees and costs. For the reasons stated below, the motions are **GRANTED IN PART** and **DENIED IN PART**.

## STATEMENT

This order finds that the shifting sands of the patent owner's delineations of the claimed invention's scope — instigated by its narrowing of scope to avoid invalidity before the Federal Circuit, followed by its broadening of scope to accuse others of infringement in the district

court — render the above-captioned actions "exceptional" within the meaning of Section 285 of Title 35 of the United States Code.

The procedural background of these related actions has been described in prior orders but will be summarized herein (*see* Case No. 16-3582, Dkt. Nos. 61, 78). Plaintiff Straight Path IP Group, Inc. sued defendant Cisco Systems, Inc., alleging infringement of United States Patent Nos. 6,009,469 ("the '469 patent"), 6,108,704 ("the '704 patent"), 6,131,121 ("the '121 patent"), and 6,701,365 ("the '365 patent"). In a related action, Straight Path also sued defendant Apple Inc. for allegedly infringing these four patents plus United States Patent No. 7,149,208 ("the '208 patent").

The patents-in-suit belong to the same family and generally relate to establishing a point-to-point communication link. Specifically, they "disclose a point-to-point Internet communications protocol that enables: (1) a first computer program to query a connection server to determine if a second computer program is currently connected to the network, and (2) if the second computer program is connected, to obtain its existing network address so that the desired point-to-point communication can be established at the time it is sought" (Case Nos. 16-3463, Dkt. No. 1 ¶ 12; 16-3582, Dkt. No. 84 ¶ 12).

Over the past five years, these patents have been put through the judicial wringer. Starting in 2014, Straight Path first filed suit against both defendants (among others) (Case Nos. 14-4302, 14-4312). Shortly after filing suit, Straight Path sought to stay those actions based on pending *inter partes* review proceedings. Soon after a prior order denied the request to stay, Straight Path and both defendants executed a "Standstill Agreement" under which Straight Path agreed not to use the 2014 lawsuit as the basis for claiming pre-suit notice of infringement for purposes of an enhanced damages claim in any future lawsuit (Case No. 16-3582, Dkt. No. 214 at 3–4). Straight Path then voluntarily dismissed the actions without prejudice.

For the next two years (and before Straight Path filed the instant actions), *inter partes* review of the '704, '121, and '469 patents ensued before the Patent Trial and Appeal Board and the United States Court of Appeals for the Federal Circuit. Crucial to the instant motions — and the prior order granting summary judgment of noninfringement for both defendants —

2

those proceedings focused on the "is connected" limitation, as found in representative Claim 1 of the '704 patent (*id.*, Dkt. No. 84-2 at 11:2–23 (emphasis added)):

> A computer program product for use with a computer system, the computer system executing a first process and operatively connectable to a second process and a server over a computer network, the computer program product comprising:
>
> a computer usable medium having program code embodied in the medium, the program code comprising:
>
> program code for transmitting to the server a network protocol address received by the first process following connection to the computer network;
>
> program code for transmitting, to the server, a query as to whether the second process *is connected to the computer network*;
>
> program code for receiving a network protocol address of the second process from the server, when the second process is connected to the computer network; and
>
> program code, responsive to the network protocol address of the second process, for establishing a point-to-point communication link between the first process and the second process over the computer network.

In 2013 and 2014, the Board construed the "is connected to the computer network" limitation during *inter partes* proceedings challenging the '704 patent's validity. Prior art references in play during those proceedings included NetBIOS and WINS. The Board initially found that the broadest reasonable construction of "is connected to the computer network" involved "a processing unit that is 'active and on-line at registration.' " *Sipnet EU S.R.O. v. Straight Path IP Grp., Inc.*, No. IPR2013-00246, 2014 WL 5144564, at *4 (P.T.A.B. Oct. 9, 2014). Based in part on that construction, the Board held that "(1) claims 1–7, 32, and 38–42 [were] anticipated by NetBIOS, (2) claims 1–7 and 32–42 [were] anticipated by WINS, and (3) claims 33–37 [were] obvious over NetBIOS and WINS." *Id.* at *15.

The Federal Circuit reversed. Straight Path argued before the appellate court that the Board had erroneously construed the "is connected" limitation, insisting instead that its claimed invention focused on "the determination of whether a process is currently connected to the

3

computer network, not whether it was previously connected," since "having once registered with a name server is no indication that a computer is actually connected to a computer network or is on-line at the time a particular communication is sought." That is, the crux of the invention, according to Straight Path, was a "temporal focus on the process's on-line status **at the time** the desired communication is sought" — *i.e.*, "at the very instant in time when the first process queries whether the second process is available" (Case No. 16-3463, Dkt. No. 125-9 at 12 (bold in original), 23, 43). During oral argument in *Sipnet*, Attorney James Wodarski (then-counsel for Straight Path) drove this point home by specifically arguing that "critical to the 704 system as opposed to the prior art is . . . when the process goes offline, it has to communicate that to the server.[1] The server is obliged and required to update that status by either deleting that information of that process or flagging it as offline" (Case No. 16-3582, Dkt. No. 169 at 5). In light of the foregoing, the Federal Circuit agreed with Straight Path and construed "is connected to the computer network" as "is connected to the computer network at the time that the query is transmitted to the server." *Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1363 (Fed. Cir. 2015); *see also id.* at 1366 n.2.

In May 2016, the Board applied this construction and upheld the validity of the challenged claims on remand. *See LG Elecs., Inc. v. Straight Path IP Grp., Inc.*, Nos. IPR2015-00196, IPR2015-00198, IPR2015-00209, 2016 WL 2640549, at *5–6, 10–11 (P.T.A.B. May 9, 2016). On appeal, Attorney Wodarski emphasized once again during oral argument that the claimed invention "has to *track whether you are continuing to stay on line*. We either have to — there has to be some mechanism in the system to flag you as off line. . . . The issue in SIPNET and the issue that controls here is that the claim plainly requires that it *track that online status* so that it can [make] the determination *at the time that the query is transmitted to the server*" (*see* Case No. 16-3582, Dkt. No. 131-19 at 17:7–25 (emphasis added)). This temporal aspect, Straight Path once again argued, distinguished the claimed invention from those in the

---

[1] Straight Path was represented by different counsel during the IPR proceedings than in the instant action.

4

1  prior art.  In June 2017, the Federal Circuit agreed with Straight Path and affirmed the Board's
2  finding of validity.

3        Meanwhile, in June 2016, Straight Path — armed with a favorable finding of validity by
4  the Board — filed the instant actions.  In October 2017, both defendants moved for summary
5  judgment of noninfringement as to all asserted patents (with the sole exception of the '208
6  patent in Apple's case) (Case Nos. 16-3463, Dkt. No. 125; 16-3582, Dkt. No. 131).  Those
7  motions hinged on whether the accused products met the "is connected" limitation.

8        In November 2017, an order granted defendants' motions for summary judgment
9  ("summary judgment order") (*see, e.g.*, Case No. 16-3582, Dkt. Nos. 155, 169).  That summary
10 judgment order found that "the invention that Straight Path described to the Federal Circuit
11 requires a server that is able to, *at the very moment in time* that a first process asks, determine
12 whether or not a second process is online by *checking its own database*, which must always
13 remain accurate by continuously *tracking* the online or offline status of endpoint processes so
14 that it can answer this very question" (*id.*, Dkt. No. 169 at 13).  It further found that the
15 undisputed facts showed that because both defendants' products determined the online status
16 *after* the query was transmitted to the server, they did not infringe (*id.*, Dkt. No. 169 at 13, 22).
17 That order also ordered Straight Path and its counsel, the law firm Russ, August & Kabat, to
18 show cause as to why they should not be liable for defendants' attorney's fees under Section
19 285 (*id.*, Dkt. No. 169 at 22).[2]

20       In January 2019, the Federal Circuit affirmed the summary judgment order and
21 subsequently denied Straight Path's petition for panel rehearing and rehearing en banc (*id.*, Dkt.
22 Nos. 203, 212).

23       Defendants now move for attorney's fees and costs under (1) Section 285, (2) Section
24 1927, and (3) the Court's inherent sanctioning authority (*id.*, Dkt. No. 214; 16-3463, Dkt. No.

---

[2] The order to show cause was held in abeyance pending resolution of Straight Path's appeals on the merits of the above-captioned actions (Case Nos. 16-3582, Dkt. No. 185; 16-3463, Dkt. No. 183).

210).[3] Cisco requests $3,840,292.91 in attorney's fees and $1,509,161.46 in litigation costs for a total of $5,349,454.37 (Case No. 16-3463, Dkt. No. 210 at 17). Apple requests $4,571,883.87 in attorney's fees and costs (Case No. 16-3582, Dkt. No. 214 at 3). This order follows full briefing and oral argument, followed by additional discovery and supplemental briefing.

**ANALYSIS**

**1.    MOTIONS FOR ATTORNEY'S FEES AND COSTS.**

An "exceptional case" under Section 285 is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Ibid*. Relevant considerations may include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).

Section 1927 of Title 28, "which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings," grants district courts the authority "to sanction parties or their lawyers for improper conduct." *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). While a showing of bad faith is clearly sufficient under Section 1927, *Wages v. I.R.S.*, 915 F.2d 1230, 1235 (9th Cir. 1990) (citation and internal quotation marks omitted), our court of appeals has suggested that recklessness alone may also suffice. *See Fink*, 239 F.3d at 993; *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010) (" 'Our cases have been less than a model of clarity regarding whether a finding of mere recklessness alone may suffice to impose sanction for attorneys fees' under § 1927." (citation and internal quotation marks omitted)).

---

[3] The motions raise many overlapping arguments and are thus treated together herein unless noted otherwise.

6

Straight Path's duplicitous machinations in telling the Federal Circuit one thing and telling this Court the opposite on a critical point make this an "exceptional case." In sum, this order reaffirms the summary judgment order's prior finding that "the patent owner saved its patents from invalidity by making clear-cut representations to the Federal Circuit — representations that it cannot now disavow in order to prove its infringement case," in holding that the instant actions are exceptional (Case No. 16-3582, Dkt. No. 169 at 1).

Thanks to two IPR proceedings (involving two appeals), one underlying interpretation of the claim language emerged — namely, that the temporal dimension of the "is connected" limitation was key to the claimed invention. As noted in that prior summary judgment order, Straight Path had staked its position in this interpretation in order to escape invalidity.

On appeal of the Board's finding of invalidity in *Sipnet*, Straight Path unequivocally represented to the Federal Circuit that (Case No. 16-3463, Dkt. No. 210-1, Exh. A at 41–42 (citation omitted) (emphasis added)):

> [c]ontrary to the Board's conclusion that "[t]he '704 patent specification and claims do not limit the scope of 'connected to the computer network,'" the language of the claims in fact expressly requires a determination of whether the second process (a computer program) is connected to the computer network *at the instant in time* when the first process (also a computer program) queries whether the second process is connected to the computer network, and therefore available to communicate.
>
> This temporal requirement is consistent with the key purpose of the invention, which, as described in the '704 specification, is to enable "realtime point-to-point communication" between running applications[.]

Attorney Wodarski elaborated on this point during oral argument in *Sipnet* as follows (Case No. 16-3582, Dkt. No. 169 at 6–7):

> Federal Circuit: Is the difference in your invention that the database has to be updated when somebody logs off?
>
> Mr. Wodarski: *Absolutely*. . . .
>
> Federal Circuit: Under . . . the prior art the database may sometimes be inaccurate because something happened which wasn't reflected in the database.
>
> Your view is, *the database must always be accurate and that's the difference between you and the prior art*, correct?

7

> Mr. Wodarski: That's . . . correct, your Honor. We must be accurate. You have to be able to say present or current status. I just —
>
> Federal Circuit: *At the time of the query* and the query —
>
> Mr. Wodarski: Exactly.

Taking all of its prior statements together, there remains no question that Straight Path, having escaped invalidity based on those prior representations in *Sipnet*, sought to escape the consequences of its own representations — *i.e.*, a narrow infringement theory — in the instant actions. In other words, to overcome prior art, Straight Path represented that the claims contain the very limitation it later sought to abandon in asserting infringement against defendants.

In opposing the instant motions, Straight Path rehashes its "track or check" infringement theory. That is, Straight Path argues that it was reasonable to assert then that an accused system can meet the "is connected" limitation by *either* keeping track of current online status *or* checking online status retroactively in light the Federal Circuit's construction, which allegedly did not place any "additional restrictions" (Case No. 16-3582, Dkt. No. 223 at 6). As such, Straight Path asserts that it "understood" the Federal Circuit's construction to include retroactive accuracy (*id.*, Dkt. No. 221 at 6–7). It again seizes upon language in *Samsung* stating that "not only is the prior art not designed to keep track of current online status, it is not designed to check online status when responding to a query for a user's IP address." *Samsung Elecs. Co., Ltd. v. Straight Path IP Grp., Inc.*, 696 F. App'x 1008, 1013 (Fed. Cir. 2017) (citation omitted).

The undersigned judge rejected this slick maneuver in the summary judgment order in finding noninfringement and rejects it again herein (*see id.*, Dkt. No. 169 at 16). In rejecting this argument, the summary judgment order reiterated that Straight Path had "repeatedly told the Federal Circuit that its claimed invention requires precisely that" timing requirement, which point the Federal Circuit in *Sipnet* "went to great pains during oral argument to pin down" (*id.*,

8

1   Dkt. No. 169 at 20). Thus "[h]aving won on invalidity based on those representations, Straight
2   Path [could not] now take a different position for purposes of proving infringement" (*ibid*.).[4]

3        Rejection of Straight Path's infringement theory was particularly appropriate where the
4   infringement theory was one of "breathtaking scope" (*id*., Dkt. No. 169 at 13). Under the "track
5   or check" infringement theory, Straight Path argued that Apple's products, for example,
6   infringed because when a caller dialed a callee's phone number, her phone sent an "Invite
7   Request" message to Apple's server (the claimed "query"). Because the server stored only
8   potentially stale registration information regarding the callee's phone, it did not know whether
9   the callee's phone was currently connected. As such, the server sent an "Invite Push" message
10  to the callee's phone, which caused the phone to ring. If the callee's phone accepted the
11  message — *i.e.*, the callee answered her phone — it sent the accept message back to the server
12  to confirm it was online. According to Straight Path, this was how Apple's server "checked"
13  that the callee "is both presently connected and was connected at the time the query was
14  transmitted to the server." Once the server determined that the callee's phone was online, it set
15  up the point-to-point communication by providing the callee's IP address to the caller (Case No.
16  16-3582, Dkt. No. 221 at 8–9).

17       The essence of this attorney speak is that a callee confirmed that she was online by
18  answering the phone (*see id*., Dkt. No. 169 at 20). As the summary judgment order found,
19  "insofar as Straight Path suggest[ed] it can own systems that 'check online status' " — *i.e.*,
20  confirm online status before an attempt to create a point-to-point connection is made — "based
21  solely on the obvious inference that only an accessible callee can actually answer a call, that
22  suggestion [was] absurd" (*id*., Dkt. No. 169 at 20–21). This capacious "track or check"
23  infringement theory, as interpreted by Straight Path, "rest[ed] on a premise so patently obvious
24  it [could not] possibly be the key to any claimed invention," and its "claim to ownership
25  lapse[d] into absurdity insofar as it attempt[ed] to capture the truism that a second process that

---

[4] On appeal, Straight Path argued that the summary judgment order placed "additional restrictions" (Case No. 16-3582, Dkt. No. 223 at 6). As Apple points out, the Federal Circuit implicitly rejected this argument in affirming the summary judgment order. It may not resurrect the same argument again to show reasonableness.

9

*answers a call* must necessarily have been *accessible at the time of the call*" (*id.*, Dkt. No. 169 at 14, 16). Had Straight Path advocated for such an expansive scope of the claimed invention before the Federal Circuit in *Sipnet* as it did in the instant actions, it is highly doubtful Straight Path would have escaped invalidity in the first instance.

Straight Path further reasserts other arguments already raised before and rejected by the undersigned during the summary judgment proceedings, such as the alleged alignment between its infringement theory and the overall goal of the invention streamlining point-to-point communications (*see id.*, Dkt. No. 169 at 14–15).

Straight Path next blames defendants for "endorsing" its inconsistent infringement theory because they agreed to the Federal Circuit's claim construction without seeking to clarify the mechanism by which the server determines whether a callee "is connected" (*id.*, Dkt. No. 221 at 3, 13). There was no reason, however, for defendants to have sought clarification when the temporally-sensitive "accuracy" requirement remained inherent in *Sipnet's* construction of the "is connected" limitation (*see id.*, Dkt. No. 169 at 21).

Straight Path offers a declaration by Chief Judge Paul Michel (Ret.), whom it consulted prior to oral argument before the United States Federal Circuit on appeal of the summary judgment order over the course of two weeks (Case No. 16-3463, Dkt. No. 212-12 ¶¶ 1–2). He states that he "became convinced that the arguments why the evidence met the standard needed to avoid summary judgment, consistent with the claim construction by the appellate court in its opinion in an appeal from a decision in an IPR, were reasonable" (*id.*, Dkt. No. 212-12 ¶ 3). He further states that he "considered the arguments why the standards in the case law for establishing waiver or disclaimer of claim scope were not met by statements of counsel during the oral arguments in the IPR appeals" (*id.*, Dkt. No. 212-12 ¶ 4). Judge Michel's declaration totaled one page only and gave little to no context for his opinion. Out of respect for Judge Michel, however, a prior order allowed defendants to depose him and submit supplemental briefing (for both parties) to gain further context for his opinion and thus to allow the undersigned to better understand how much weight should be accorded to the declaration (*id.*, Dkt. No. 220).

10

1    Judge Michel testified that his declaration, which he prepared himself, was based on his
2  personal experience working with Straight Path's counsel in preparation for the appellate oral
3  argument, during which he reviewed the summary judgment order and briefs and transcripts
4  from the prior appeals (Case No. 16-3582, Dkt. No. 243-1 at 12:1–13:11, 28:4–20).  His focus,
5  however, remained on the appeal of the summary judgment order and, specifically, whether
6  Straight Path's "track or check" infringement theory could technically fit within the Federal
7  Circuit's claim construction.  But Straight Path did not hatch the new theory supporting its
8  incredibly broad reading in a vacuum.  Insofar as Judge Michel may have understood (after the
9  fact) Straight Path's infringement theory to be reasonable within the four corners of the claim
10 construction, *he did not (and was not hired to) consider how the theory impacted the patents'*
11 *facial validity* (*e.g.*, *id*., Dkt. No. 241-2 at 112–14).  Yet the summary judgment order expressly
12 considered this issue in rejecting Straight Path's theory, as discussed above.[5]  Thus while the
13 undersigned respects Judge Michel's opinion on the matter, under the totality of the
14 circumstances, this order cannot credit the declaration enough weight to sway its finding of
15 exceptionality.[6]

16   At bottom, the record shows that Straight Path pursued an objectively baseless
17 infringement theory against defendants by attempting to renege on explicit representations made
18 to the Federal Circuit — representations made repeatedly in order to preserve validity — which
19 render the instant actions "one[s] that stand[] out from others."  *Octane Fitness*, 572 U.S. at
20 554.  Thus under the totality of the circumstances, this order finds the instant actions
21 exceptional under Section 285.  *See id*., 572 U.S. at 554 n.6 ("Relevant considerations" in
22 finding exceptionality may include "objective unreasonableness . . . and the need in particular
23 circumstances to advance considerations of . . . deterrence." (citation omitted)).

---

[5] And, as defendants point out, Judge Michel's testimony injects new arguments that Straight Path never made prior to its most recent appeal (*e.g.*, Case No. 16-3582, Dkt. No. 214 at 4).  For example, Judge Michel opined that the "track or check" theory could be found in Figure 8 and column 10 of the '704 patent, which Straight Path had never argued before the undersigned or the Federal Circuit.  This order thus does not consider Judge Michel's testimony to the extent it discloses fresh arguments in determining whether the instant actions are exceptional.

[6] Because this order ultimately does not rely on Judge Michel's declaration, defendants' requests to strike the declaration are **DENIED AS MOOT**.

11

Defendants, however, have not sufficiently shown that Straight Path's infringement theory alone amounted to recklessness (even assuming this standard applies) or bad faith warranting sanctions under Section 1927 or the Court's inherent powers. There is no evidence, for example, that Straight Path intended to harass or that it recklessly and vexatiously multiplied proceedings. *See, e.g.*, *In re Girardi*, 611 F.3d at 1061 (9th Cir. 2010) ("[A] finding that the attorneys recklessly raised a frivolous argument which resulted in the multiplication of the proceedings is also sufficient to impose sanctions under § 1927" (citation omitted)). Nor is there evidence of Straight Path's subjective bad faith.

The defendants individually raise additional arguments in support of finding their actions to be exceptional. This order need not reach those points.

\*         \*         \*

While this order finds the above-captioned actions exceptional under Section 285, there is a different problem with respect to defendants' requested fees. In this case, Cisco seeks a total of $5,349,454.37 in attorney's fees and costs and Apple seeks $4,571,883.87. In Apple's case, its requested amount includes fees and costs related to the *ex parte* reexamination proceeding for the '208 patent. But that *ex parte* reexamination proceeding led to the stay of all proceedings in connection with that patent in the instant action (*see* Case No. 16-3582, Dkt. No. 171); took place in a different forum; and had nothing to do with Straight Path's manipulation of the "is connected" limitation, which issue ultimately enabled Apple to prevail fully in the instant action. Apple's fee request well illustrates the evil of satellite litigation over attorney's fees motions. The Court would be inclined to deny Apple's request altogether on account of this overreaching. But in order to avoid any contention that the parties (both Apple and Cisco) were denied fair process, this order will allow Cisco and Apple to resubmit their tally of attorney's fees and costs by **DECEMBER 5 AT NOON** in accordance with the companion order appointing a special master. Defendants must take care to submit only for time and expenses that truly deserve compensation and at billing rates that truly deserve to be compensated. If the special master finds, and the Court agrees, that either fees request includes items that are unreasonably requested, then the Court may not only deduct the disallowed item, but further

deduct three times that amount from the total of what would otherwise be permitted — or may possibly deny relief altogether.

### 2. MOTIONS TO SEAL.

Straight Path and Apple filed administrative motions to file under seal certain exhibits in connection with the motions for attorney's fees. For non-dispositive motions, the "good cause" standard applies and there must be a "particularized showing" that specific harm or prejudice will result if the information is disclosed. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179–80 (9th Cir. 2006).

Straight Path moves to seal portions of certain exhibits pursuant to Cisco's confidentiality designation (Case No. 16-3463, Dkt. No. 211). Cisco explains in its supporting declaration that it only seeks to seal certain portions of Exhibit B to the Ledahl declaration, which portions contain its confidential source code and confidential business information related to certain customers (*id*., Dkt. Nos. 214-1 ¶ 4; 214-2). Good cause has been shown for this narrowly tailored request and thus Straight Path's motion to seal is **GRANTED** to the extent stated above. The motion is otherwise **DENIED**.

Apple also moves to seal an exhibit pursuant to Straight Path's confidentiality designation (Case No. 16-3582, Dkt. No. 240). Straight Path did not file a supporting declaration. Accordingly, Apple's motion to seal is **DENIED**.

The parties shall file unredacted versions of the documents at issue in compliance with this order by **NOVEMBER 27 AT NOON**.

### CONCLUSION

To the extent stated above, Apple and Cisco's motions for attorney's fees are **GRANTED IN PART** and **DENIED IN PART**. Please see the companion order for the next steps.

**IT IS SO ORDERED.**

Dated: November 20, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE