Exhibit E

J Tipton Cole                    CISCO Reply Infringement Report

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| STRAIGHT PATH IP GROUP, INC., Plaintiff, | § § § § § § § § § § § | Case No. 3:16-cv-03463-WA |
| v. | | |
| CISCO SYSTEMS, INC., Defendant. | | |

## JOE TIPTON COLE – RULE 26 REPLY REPORT ON INFRINGEMENT

### I.      ENGAGEMENT AND QUALIFICATIONS

#### A.      Engagement

1.    I, Joe Tipton Cole, have been engaged by Plaintiff Straight Path IP Group,

Inc., in connection with the above-captioned lawsuit to provide my analyses and

opinions on certain technical aspects of this dispute.  On August 31, 2017, I

submitted an expert report in this matter concerning infringement and related

issues ("Infringement Report").  On September 14, 2017, I submitted another

expert report in this matter concerning validity and related issues ("Validity

Report").  I incorporate those reports by reference into this report and reserve the

right to present any of the facts or opinions set forth in those reports as part of

my testimony concerning infringement.

J Tipton Cole                    CISCO Reply Infringement Report

in a patent specification, rather than to the patent claims, is not an appropriate

infringement analysis.

24.    In ¶110, as well as other places, Dr. Brody expresses the opinion that

sending an INVITE message "starts" a phone call and that an IP address of the

callee is not required to make a call.  This opinion is not grounded in language of

the Asserted Claims.  Rather, it appears to be a semantic opinion in service of

Dr. Brody's efforts to distinguish a generalized SIP call from the embodiments

disclosed in the Asserted Patents.  Even if I adopt Dr. Brody's premise (with

which I disagree), Dr. Brody's opinion is incorrect.  Using Dr. Brody's premise, in

Figure 17A of the '469 patent shown in ¶106, the caller webphone also starts a

phone call by sending a message to a server (the message labeled "6

<CONNECT REQ>").  Like in SIP and the Accused Products, the caller

webphone does not know the IP address of the callee webphone when it begins

the call with the CONNECT REQ message.  In rendering his opinion, Dr. Brody

has arbitrarily deemed that a webphone call does not start until after the

CONNECT REQ message.  Dr. Brody provides no explanation for this arbitrary

line drawing and I do not find it to be an accurate comparison with generalized

SIP or the Accused Products.  As I discuss in detail in my Infringement Report,

the INVITE message used by the Accused Products (like the CONNECT REQ

message in the '469 patent) is a request to the UMC (like the connection server)

for the IP address of the second process (the callee webphone in the '469

patent).

Tipton Cole Report                    Page 11                         A E O

J Tipton Cole                    CISCO Reply Infringement Report

these features would operate (or be desirable) without the infringing basic calling

functionalities.

27.      Similarly, I note that a phone without the infringing functionality would be

significantly less useful.  At its core, a phone is for making connections between

a caller and callee.

**VI.      RESPONSE TO NONINFRINGEMENT ANALYSIS (SECTIONS X-XV)**

28.      The accused Cisco SIP-enabled phones are designed to work primarily

with UCM.  Kelly Tr. at 12:24-18:23 (testifying about the difference between

UCM-supporting firmware loads and third-party call control firmware loads);

67:15-20 (Mr. Kelly was not aware of any customer using Cisco phones with a

non-Cisco controller); 96:10-100:25 (the use of third party phones was strongly

discouraged by Cisco through its licensing scheme).  Accordingly, my analysis of

the infringement of Cisco's endpoints in conjunction with UCM is appropriate.

29.      I have analyzed Cisco's implementation of SIP.  As Cisco's own witness

noted, "the SIP protocol can be implemented in many different ways and still be

compliant with the specification."  Rosenberg Tr. at 127:19-128:6.  My opinion

concerns Cisco's implementation of SIP, not a generic abstraction of SIP that Dr.

Brody seems to consider.

30.      Dr. Brody opines in various sections that it was inappropriate for me to

opine that the Cisco 9971 IP Phone was representative of Cisco's other accused

endpoints.  *E.g.*, Brody Report at ¶278.  My opinion was based on the testimony

of Cisco's corporate representative that all its SIP-enabled phones operated

similarly in relevant aspects.  Stormes Tr. at 37:2-15; 104:25-105:14.  I also

Tipton Cole Report                    Page 13                    A E O

J Tipton Cole                    CISCO Reply Infringement Report

==relied on the fact that Cisco produced a single code base to illustrate how the==

==relevant functionality of its SIP-enabled phones operated.  Finally, I note that Dr.==

==Brody does not provide any evidence showing that the relevant features of the==

==other Accused Products work differently than the Cisco 9971 IP Phone.==

31.      Dr. Brody also opines that "comparing user interfaces and contending they

are similar does not demonstrate a similarity of capability, operation and program

code."  Brody Report at ¶¶278, 346.  Dr. Brody does not point to the particular

opinions or analyses he is criticizing or provide any analysis as to why such

comparisons are inappropriate.  However, I note that claims 11 and 22 of the

'704 patent, and claims 3 and 9 of the '469 patent have limitations related to

features of user interfaces.  I am of the opinion that comparing the user

interfaces of Cisco's various endpoints is one of the primary ways of illustrating

their similarity.  Again, Dr. Brody does not offer any opinion as to how the user

interface elements of these claims should have been analyzed.[5]

32.      With respect to claim 39 of the '704 patent, the only opinion offered by Dr.

Brody is that it is not infringed if claim 39 is deemed to be written in means plus

function form.  In ¶472, Dr. Brody provides what appears to an unfinished

sentence that does not provide an opinion:  "The Accused Products do not

---

[5] Dr. Brody also criticizes my opinion because Mr. Kelly testified that certain
phones, such as the 7900 series, are "designed and sold to customers to
operating using only the Skinny protocol."  Brody Report at ¶278.  This opinion is
inconsistent with other portions of Dr. Brody's report (¶134) and incorrectly
summarizes Mr. Kelly testimony.  During the infringement period, the Cisco 7900
series phones were designed and sold by Cisco as supporting both the SIP and
Skinny protocol.  Kelly Tr. at 37:23-40:5.  As the Infringement Report makes
clear, my opinion applies to those phones that include the SIP firmware load
provided by Cisco to its customers, not the Skinny firmware load.

J Tipton Cole                    CISCO Reply Infringement Report

### c.     The Accused Products Satisfy The "Is Connected" Limitation

45.    In ¶159, Dr. Brody opines that the INVITE message is not a query as to whether a second process is connected because online status is not tracked by UCM.  I disagree.  In fact, UCM tracks online status by sending an INVITE message to the second process upon receipt of the query from the first process. As a result of the process I describe in detail in my Infringement Report, UCM confirms that the second process is online and will only transmit a 200 OK if the second process is online.

46.    In ¶160 and variously through the following paragraphs, Dr. Brody opines about "false positives" and "false negatives" with respect to a 200 OK message.[8] Neither of these hypotheticals substantiate Dr. Brody's opinion regarding noninfringement.  Dr. Brody's opinion amounts to an admission that, when operating properly, the Accused Products practice this element of the claim. Indeed, Dr. Brody provides no opinion, evidence or statistics showing how often (if ever) any of the "false" results are encountered by the Accused Products.

47.    I disagree with Dr. Brody's opinion that stale information in the database of the Accused Products creates a "false positives."  This will not result in a false positive.  As described in documents and testimony cited in my Infringement Report, if the information in UCM's database is stale, the first process will not receive a 200 OK because the UCM will not receive a 200 OK from the second process.  With respect to the false positive, I note that this very detailed hypothetical ("callee…accessed via a gateway and the call is forwarded") is

---

[8] I note this opinion is really about element c of claim 1.  I respond to it here because Dr. Brody has included this as an opinion regarding element 1.b.

J Tipton Cole                    CISCO Reply Infringement Report

based on CISCO-SP00496687 at B-32, a document dated from May 2004, prior

to the introduction of support of SIP endpoint calling in UCM.

48.      Dr. Brody opines that the "is connected" limitation is not met because

UCM's database does not contain an indication of online status.  As I discuss

above, Dr. Brody's opinion mischaracterizes my opinion.  It is the combination of

a relatively current database and confirmation by contacting the second process

that satisfies the "is connected" limitation.

49.      In ¶167 and other paragraphs, Dr. Brody poses the hypothetical where a

second process registered and went offline.  While the registration was still valid,

a query was received for the second process.  After the query was received, the

second process comes back online and is able to respond to the query with a

200 OK.  This hypothetical is incomplete.  In my opinion, Dr. Brody's hypothetical

has no real-world counterpart.  If the second process lost its network connection

prior to the query being received, it may have lost its previous IP address.  UCM

could not have reached it when it came back online and the first process would,

accurately, not receive a 200 OK.  If there was no network disconnection event

(perhaps the second process briefly engaged a do not disturb mode), the 200 OK

response would be accurate because the second process was connected to the

network at the time the query was made even if the user had engaged some sort

of privacy setting.  In one version of his hypothetical, Dr. Brody refers to "his

access line was temporarily blocked."  Brody Report at ¶167.  In other versions,

he refers to the callee being "temporarily disconnected."  Brody Report at ¶160.

Again, in this context, I do not know what either these states means.

J Tipton Cole                CISCO Reply Infringement Report

infringe.  Further, Dr. Brody offers no opinion or statistics about how often either of these servers is used.  Indeed, Mr. Stormes testified that using a transcoder is inefficient and only used when necessary.  Stormes Tr. at 31:15-32:14.

54.      In ¶204, Dr. Brody refers to UCM providing transcoding.  UCM providing "media services" is the exceptional case, not the norm.  Indeed, Dr. Brody identifies a non-Cisco transcoder ("Perimeta") in the preceding paragraph (¶203).  Mr. Pearce also testified that the "media helpers are generally separate from UCM."  Pearce Tr. at 78:6-15 (testifying that media helpers are separate boxes or programs from UCM).  Further, Mr. Pearce testified that, where Cisco IP phones are being used, a transcoder is not likely needed.  Pearce Tr. at 82:5-16.  Again, the possibility of certain calls requiring the use of a transcoder does not change my opinion that basic calling using the Accused Products infringes the Asserted Claims.

### B.      The "Server" Claims Are Infringed (Section XIV)

55.      Dr. Brody opines that "the second process/callee phone—not the server (*e.g.*, UCM)—is used to supposedly determine that the caller is online by generating the 200 OK message."  Brody Report at ¶830.  This is a mischaracterization of my opinion.  As I set forth in my Infringement Report, it is the server that determined that a callee is online before a 200 OK responsive message is sent back to the caller.  Dr. Brody misstates the required functionality of the server in his ¶830.  It is not necessary that the UCM "have the functionality to meet '704 Patent, claims 6 and 39, and '365 Claim 3."  Brody Report at ¶830.  The UCM receives the query from the first process and tenders a response that

J Tipton Cole                    CISCO Reply Infringement Report

includes the network protocol address of the second process if the process is

online at the time of the query.   That is what the claim requires.

56.     I am also of the opinion that Dr. Brody's opinion is misplaced because the

claims do not require that the server use any particular method to maintain

information about the online status of the second process.   In claim 3 of the '365

patent, the server must only receive a query and provide a network address or

identifier if the second process is connected to the network.   Claim 39 of the '704

patent similarly does not say anything about how the online status of devices

must be tracked by a server, only that it must.   Finally, claim 6 of the '704 patent

includes similar limitations to claim 3 and adds the limitation that the server must

determine the on-line status of the second process.   Claim 6 does not limit how

that determination is made.

57.     Dr. Brody again repeats his opinion that UCM "forwards" messages

received from a process.   Brody Report at ¶830.   As I opine above, a back-to-

back user agent, UCM actually sends its own messages to the caller and callee

process.   It does not "forward" the messages it receives.

### C.     The Program Code Claims Are Infringed

58.     Throughout his report, Dr. Brody refers to ¶¶831-837 as the entire analysis

supporting his opinion as to why the program code claims are not infringed if they

are found to be subject to means plus function.   Other than a single claim

limitation, Dr. Brody does not provide any evidence or analysis to support his

opinion.   Instead, he simply opines "Mr. Cole repeats this type of inadequate

analysis, failing to identify the algorithm in the accused products as follows."   The

J Tipton Cole                     CISCO Reply Infringement Report

with respect to irrelevant aspects of CommuniGate and ooVoo does not show

how the infringing aspects of the products are not comparable.

Respectfully submitted,

J. Tipton Cole
September 21, 2017