1

2

3

4

5

6               UNITED STATES DISTRICT COURT

7

8             NORTHERN DISTRICT OF CALIFORNIA

9

10  STRAIGHT PATH IP GROUP, INC.,

11          Plaintiff,         No.  C 16-03463 WHA
                          No.  C 16-03582 WHA

12     v.

13  CISCO SYSTEMS, INC.,

14          Defendant.     **ORDER ADOPTING SPECIAL**
                          **MASTER'S REPORT AND**

15                          **RECOMMENDATION FOR**
                          **ATTORNEY'S FEES**

16  STRAIGHT PATH IP GROUP, INC.,

17          Plaintiff,

18     v.

19  APPLE INC.,

20          Defendant.

21                  **INTRODUCTION**

22       This post-merits patent suit has devolved into a protracted fee dispute — "one of the least

23  socially productive types of litigation imaginable," as Justice William Brennan put it.  *Hensley*

24  *v. Eckerhart*, 461 U.S. 424, 442 (1983) (dissenting).  Prior orders found patent owner's

25  exceptional infringement theory entitled defendants to fees and appointed a special master who

26  reviewed billing records, heard arguments, and now recommends an award.  This order

27  **ADOPTS** that reasoned recommendation and finally puts this suit to bed.

28

**STATEMENT**

A prior order details the facts of this suit.  *Straight Path IP Group, Inc. v. Cisco Systems*, 411 F. Supp. 3d 1026 (N.D. Cal. 2019).  Among others, patent owner asserted four patents against Apple and Cisco, United States Patent Nos. 6,009,469 ("the '469 patent"), 6,108,704 ("the '704 patent"), 6,131,121 ("the '121 patent"), and 6,701,365 ("the '365 patent").  The patents described point-to-point Internet communication, including: "(1) a first computer program to query a connection server to determine if a second computer program is currently connected to the network, and (2) if the second computer program is connected, to obtain its existing network address so that the desired point-to-point communication can be established at the time it is sought." *Id.* at 1028.

Patent owner initially sued in 2014, but voluntarily dismissed when third parties challenged the patents in *inter partes* review at the United States Patent Office.  The review focused on the construction of the "is currently connected" aspect of the patents, embodied in the claims as the term "is connected."  Using the broadest reasonable interpretation of the term, the Patent Trial and Appeal Board (PTAB) invalidated all relevant claims as anticipated or obvious.  But the Federal Circuit reversed, agreeing the PTAB had too broadly construed "is connected" and adopting patent owner's narrow interpretation.  *Id.* at 1028–30 (citing *Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1363 (Fed. Cir. 2015)).

On remand in May 2016, the PTAB upheld the claims' validity, employing patent owner's construction of "is connected."  In June 2017, the Federal Circuit affirmed, again agreeing with patent owner's narrow construction.  *Id.* at 1030; *Samsung Elecs. Co. v. Straight Path IP Grp., Inc.*, 696 F. App'x 1008 (Fed. Cir. 2017).

But back in June 2016, armed with the PTAB's favorable finding, patent owner resumed its assertion against Apple and Cisco, filing these suits.  In October 2017, both defendants moved for summary judgment, and a November 2017 order found patent owner's narrow construction of "is connected" before the Federal Circuit precluded its broad infringement theory here.  It bears restating.  After maintaining the claims' validity by arguing *twice* to the Federal Circuit for a narrow interpretation of "is connected," patent owner turned around and

sued Apple and Cisco on a contrary broad interpretation.  Indeed, *during the prosecution of this suit* on the broad interpretation, patent owner advanced its narrow interpretation to the Federal Circuit for the second time.  So, the November 2017 order also directed patent owner to show cause why it should not be liable for attorney's fees under 35 U.S.C. § 285.  411 F. Supp. 3d at 1030.

Following patent owner's unsuccessful appeal, Apple and Cisco moved for fees.  A November 2019 order reaffirmed the exceptionality of patent owner's prosecution of this case under § 285.  But finding defendants' fee requests too high and likely including activity not sufficiently related to patent owner's exceptional prosecution of the "is connected" claims, the order directed the parties to submit their billing requests to a special master on December 5. The order cautioned defendants to "take care to submit only for time and expenses that truly deserve compensation and at billing rates that truly deserve to be compensated," stating that the Court might treble the deductions for requests the special master found unreasonable.  *Id.* at 1035.

A companion order directed Apple and Cisco to:

> [P]rovide the special master a detailed declaration, organized by discrete projects, breaking down all attorney and paralegal time sought to be recovered.  For each project, there must be a detailed description of the work, giving the date, hours expended, attorney name, and task for each work entry, in chronological order.  A "project" means a deposition, a motion, a witness interview, and so forth.  It does not mean generalized statements like "trial preparation" or "attended trial."  It includes discrete items like "prepare supplemental trial brief on issue X."

It then directed that "[a]ll entries for a given project must be presented chronologically one after the other, *i.e.*, uninterrupted by other projects, so that the timeline for each project can be readily grasped."  It also requested justification of each timekeeper's billing rate, a summary chart of that timekeeper's activities, and proof of billing judgment.  Last, the order directed the special master to "identify each item requested that bears little or no relation to the conduct found exceptional herein.  For example, all work on [U.S. Patent No. 7,149,208 ("the '208 patent")] had no connection to the about-face representations at summary judgment made by Straight Path leading to the finding of exceptionality" (Dkt. No. 226).

3

On December 16, the special master held an initial hearing with the parties.  After briefing, he held a hearing on threshold legal issues on February 5 and issued a preliminary report on February 10.  Following February 27 and March 3 hearings, the special master recommended an award of  $2,334,054 to Apple and $1,920,146 to Cisco (Report & Recommendation of special master ("Rpt."), Dkt. No. 232).  Apple would receive nearly all it asked for, with minor deductions taken for certain ambiguous or duplicative time entries.

But Cisco would receive only half because its billing records never conformed to the Court's direction.  The special master explained that Cisco did not pay counsel by the hour, rather it paid a flat-monthly fee.  The special master found Cisco's original billing submission deficient and asked Cisco to resubmit.  Cisco did so, but the special master found the records remained deficient for an ordinary lodestar review.  To be sure, the special master found this alternative billing method compensable under § 285, but the records did not paint a clear picture of counsel's billable activities or clearly delineate between this case and other, non-compensable work for Cisco.  Thus, the special master concluded a 50% reduction would ensure patent owner did not overpay, yet still compensate Cisco for fees actually paid.  Finally, the special master declined to treble the deduction, finding Cisco's noncompliance a product of the alternate billing arrangement and not of bad faith.

Patent owner objects that the special master's awards of fees are too high.  Apple and Cisco urge this Court to adopt the special master's recommendation.  This order follows patent owner's objections, defendants' responses, and a hearing conducted telephonically due to the COVID-19 pandemic.

## ANALYSIS

### 1.   SCOPE OF REVIEW.

Patent owner objects to the special master's recommendation of fees but fails to specify a standard of review this order should apply.  This order will review the special master's legal reasoning *de novo*.  But, as a practicing attorney, the special master's findings of fact regarding reasonable attorney staffing, billing practices, and discovery and case scope, etc., are entitled to

United States District Court
Northern District of California

United States District Court
Northern District of California

deference.  Those findings will not be altered absent showing of specific failure of reasoning or other error.

### 2.   SCOPE OF FEES.

Patent owner complains the special master improperly expanded the scope of awardable fees by reimbursing activities before June 23, 2017, and reimbursing defenses not specifically addressing the "is connected" claim construction.  This view improperly narrows the Court's instruction to the special master, to "determine a reasonable amount to award" and exclude "each item requested that bears little or no relation to the conduct found exceptional herein" (Dkt. No. 226).  The Court directed the special master to award reasonable fees bearing a nexus to the exceptional conduct.  He has.

*First*, defendants are entitled to fees before June 23, 2017.  Patent owner deliberately misreads the prior order to hang the exceptionality specifically on the Federal Circuit's June 23, 2017, interpretation of "is connected."  Not so.  Patent owner argued that narrow construction to the Federal Circuit in March 2015.  It won there, and the PTAB — applying that construction — upheld the claims' validity on remand.  Armed with that favorable validity finding, patent owner filed this case and asserted a contradictory infringement theory.  The sands shifted there, when patent owner filed *this case* which *should never have been brought*. June 23, 2017 marks not the date of exceptionalism, but just another date patent owner doubled down on it.  411 F. Supp. 3d at 1029–30.

*Second*, defendants may recover fees for *all defenses* reasonably pursued or employed against claims involving "is connected."  Section 285 fees reimburse a party forced to defend an exceptional case.  "[W]hen a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury."  *See Mathis v. Spears*, 857 F.2d 749, 753 (Fed. Cir. 1988).  To recover all fees spent defending this case, patent owner would have defendants sit idly and wait for claim construction before waking to argue non-infringement based on "is connected."  Yet patent owner's exceptional claims were the *but for cause* of those fees.  As the special master noted, "[h]ad plaintiff not elected to pursue its exceptional claims, [defendants] would not have incurred these fees" (Rpt. at 12).  Merely because defendants

performed a task does not make it compensable. For example, they may not recover for defenses against the '208 patent, which did not include the "is connected" language. But defendants were entitled to mount a comprehensive defense — including trial preparations — against claims that (again) should not have been brought. So, defendants are entitled to comprehensive fees. What goes around comes around, and not always in expected ways.

### 3.   SPECIFIC OBJECTIONS TO APPLE'S FEE REQUEST.

Aside from challenging the overall scope, patent owner objects only that the special master recommends excessive fees for Apple's prior art review, invalidity contentions, and opening report on invalidity. The argument boils to the complaint that Apple spent more on its invalidity defense than either patent owner's infringement analysis or Apple's own noninfringement defense. This fails to persuade.

*First*, patent owner identifies no specific error in the special master's reasoning and instead appears to rehash arguments already addressed. The special master rejected this objection, explaining that "there is nothing inherently excessive about spending more on one defense than another" (Rpt. at 13). Again, as a practitioner himself, this judgment is entitled to weight. Absent specific, reasoned objections, this order endorses the special master's judgment.

*Second*, patent owner ignores basic burdens of proof. Infringement may be proved by a preponderance; invalidity requires clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. Partnership*, 564 U.S. 91, 95 (2011); *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 758 (Fed. Cir. 1984). The higher burden naturally requires more work. So, of course Apple billed more for its invalidity defenses. That doesn't make those fees excessive.

### 4.   CISCO'S AWARD.

The special master recommended awarding only half Cisco's request for fees, $1,920,146, given its failure to provide billing records in the required form. Though noting its disagreement, Cisco accepts this result. Patent owner, though, objects to paying anything. It argues both that § 285 does not compensate Cisco's alternate fee arrangement and (regardless) that Cisco's failure to submit records adequately supporting a lodestar calculation precludes

6

any award of fees.  The special master already addressed these arguments, finding Cisco's arrangement compensable but halving the fee award to account for the recording failures.

To start, patent owner mistakes the underlying inquiry.  The question isn't one of punishment, either of patent owner or of Cisco.  Section 285 is pragmatic, not spiteful.  As above, Cisco's "compensation shall be equal to the injury." *See Mathis*, 857 F.2d at 753.  The primary question is how much Cisco spent defending patent owner's baseless claims.  This proceeds by determining first, whether § 285 may reimburse Cisco's alternative fee arrangement, and second, whether the records offered here actually satisfy the burden of proof.  Only then will this order consider whether Cisco's apparent failure to provide adequate records warrants further reduction.

*First*, Section 285 does not foreclose reimbursement of Cisco's alternative billing method.  "The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  The requirement of reasonableness specifies the *outcome*, not the mechanism.  The text mandates no specific calculation method and does not foreclose reimbursement of an alternate billing scheme like Cisco's.

Nor does precedent mandate that result.  True, the lodestar method (hours times a reasonable rate) generally guides fee shifting.  And the Supreme Court has "established a 'strong presumption' that the lodestar represents the 'reasonable' fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).  But the lodestar's place as the *preferred* method does not make it the *only* method.  Even the Supreme Court acknowledges this.

The Court of Appeals for the Third Circuit pioneered the lodestar method in the 1970s "after the practice of hourly billing had become widespread."  The lodestar has since become the predominant method for determining fees because it objectively "looks to the prevailing market rates in the relevant community," remains "readily administrable," "permits meaningful judicial review, and produces reasonably predictable results."  But, "[t]he lodestar method was never intended to be conclusive in all circumstances."  It "was adopted in part because it provides a rough approximation of general billing practices, and accordingly, if hourly billing

becomes unusual, an alternative to the lodestar method may have to be found." *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551–53, 556 (2010).

In asking this order to exclude a flat-fee arrangement from reimbursement for reasonable attorney's fees, patent owner essentially argues that such arrangement is presumptively unreasonable. This order declines to so hold. Several of the considerations leading to the adoption of the lodestar method still apply to the flat-fee method. Consider, first, that both methods look to the market. That is, they look to what *practitioners actually charge* in the market for legal representation. Indeed, Cisco's counsel Desmarais LLP has operated on flat-fee arrangements since 2010. And, second, the flat-billing rate remains *what clients actually pay* for legal services. Recall, § 285 fees compensate what was actually and reasonably spent. *See Mathis*, 857 F.2d at 753. Last, as noted, the lodestar was never meant to determine the precise value of an attorney's services. It merely provides "rough approximation of general billing practices." Given adequate records delineating separate matters, flat-rate billing may prove just as effective an approximation of general billing practices. Indeed, as courts and counsel become accustomed to the method, the method may well become as "readily administrable" as the lodestar method. Despite patent owner's protest, this order agrees with the special master that § 285 does not categorically bar reimbursement of Cisco's alternate-fee arrangement.

*Second*, it appears uncontested that the billing records Cisco *did* provide support the recommended award of fees. The special master went back and forth with Cisco to obtain records conforming to the Court's order (Dkt. No. 226). Given the Court ordered billing records delivered to the special master by December 5, he was entitled to disregard any later filed material absent a showing of good cause for delay. FED. R. CIV. P. 16(b)(4). Though he concluded Cisco never actually provided such records, he nevertheless concluded that the records submitted did prove Cisco spent at least $1,920,146 defending compensable claims (Rpt. at 17–19, 25–26). Aside from noting Cisco's burden to prove its actual fees and this Court's discretion to deny a fee motion entirely when presented with an outrageous demand, patent owner does not contend Cisco actually spent (reasonably) less than $1,920,146. So, the

special master's finding that a 50% reduction in fees will address any concern of overcharging patent owner remains unchallenged.

*Third*, this order declines to reduce the special master's recommendation.  Patent owner complains that Cisco's initial billing records, due December 5, were deficient.  When the special master directed Cisco to correct this, the following submissions remained deficient.  Thus, patent owner says, Cisco's dual-failure to comply warrants total denial of its fee request.  But the special master considered these facts.  He spent the three months with Cisco's billing records (at least, what was offered).  He found them inadequate, but he also concluded the inadequacy resulted from Cisco's unique billing structure — *not from bad faith*.

This order affords that factual finding deference, and patent owner specifies no errors this order should correct.  Instead it seeks to relitigate what the special master already found — completely ignoring what all know to be true.  Whatever altruistic motive patent owner holds in others complying with Court direction, patent owner wishes (mostly) to be absolved of fees.  As this Court *already* noted to caution Cisco and Apple, it repeats again.  But this time, "[patent owner's] request well illustrates the evil of satellite litigation over attorney's fees motions."  Discerning no error in the special master's judgment, his recommendation stands.

Last, as above, this order holds patent owner liable for fees over the entire (reasonable) defense to claims that should not have been brought.  So, patent owner's sole remaining complaint is that Cisco overstaffed its depositions.  Cisco admits to sending two attorneys to many depositions, explaining that under counsel's flat-fee billing, sending a junior associate to assist at a deposition provides benefits and no greater cost over sending a paralegal instead.  Regardless, the special master took note of Cisco's deposition staffing in his overall deductions.  Patent owner presents no reason to further reduce the fee on these grounds.

### 5.   APPLE'S FEES ON APPEAL.

The special master found Apple could direct its request for appellate fees (defending the summary judgment order) to the trial court, but also found the request untimely.  Though he recommended reimbursement, should Apple move for (and the Court grant) an extension, no motion has been presented.  No appellate fees are awarded.

6.    TAXABLE COSTS.

The special master found non-taxable costs not permitted by § 285.  No party objected to this finding.  He also directed defendants to present the Court a conforming bill of costs, should they seek reimbursement of taxable costs.  No bills submitted, no taxable costs are awarded.

## CONCLUSION

One month shy of four years old, these suits — which should *never* have been brought — are finally put to rest.  This order ADOPTS the special master's recommended awards.  Given its exceptional prosecution of this suit, STRAIGHT PATH IP GROUP, INC. SHALL PAY APPLE INC. $2,334,054 and SHALL PAY CISCO SYSTEMS, INC. $1,920,146 in attorney's fees.  The Court awaits the parties' joint status updates at 30 DAY intervals until they certify all fees have been paid.

The Court thanks the special master for his 44.5 hours of work performed (as a service to the Court) at $200 per hour, coming to $8,900.  Within 14 DAYS of this order, STRAIGHT PATH IP GROUP, INC. SHALL PAY $4,450, APPLE INC. SHALL PAY $2,225, and CISCO SYSTEMS, INC. SHALL PAY $2,225 to:

> Matthew Borden
> BraunHagey & Borden LLP
> 351 California Street, Suite 10
> San Francisco, CA 94104.

The Court awaits the parties' joint status updates at SEVEN DAY intervals until they certify the special master has been reimbursed in full for his time.  The Court retains jurisdiction to enforce this order.

IT IS SO ORDERED.

Dated:  May 19, 2020.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE